No. 24-20460

# United States Court of Appeals for the Fifth Circuit

TRINSEO EUROPE GMBH,

*Plaintiff-Appellant/Cross-Appellee*

*v.*

KELLOGG BROWN & ROOT, L.L.C.;
STEPHEN HARPER, *also known as* STEVE HARPER;
STEVE HARPER CONSULTING, INCORPORATED;
POLYCARBONATE CONSULTING SERVICES, INCORPORATED,

*Defendants-Appellees/Cross-Appellants*

Appeal from the United States District Court
for the Southern District of Texas
No. 4:20-cv-00478 (Hon. Andrew S. Hanen)

**RECORD EXCERPTS OF APPELLANT/CROSS-APPELLEE
TRINSEO EUROPE GMBH**

Justin R. Braga
JBraga@hinckleyallen.com
Hinckley, Allen & Snyder LLP
650 Elm Street, Suite 500
Manchester, New Hampshire 03101
(603) 545-6106

Eric Grant
grant@hicks-thomas.com
Stewart Hoffer
shoffer@hicks-thomas.com
Hicks Thomas LLP
700 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 547-9100

*Counsel for Plaintiff-Appellant/Cross-Appellee Trinseo Europe GmbH*

# TABLE OF CONTENTS

| | Document | Record Citation | Tab |
|---|---|---|---|
| | Docket Sheet (as of Dec. 4, 2024) | ROA.38721–69 | 1 |
| 57 | Plaintiff's Second Amended Complaint (excerpts) | ROA.700–37, 751–52 | 2 |
| 321 | Jury Verdict | ROA.7545–71 | 3 |
| 410 | Sealed Order [unsealed by this Court] | ROA.38646–93 | 4 |
| 412 | Final Judgment | ROA.8201 | 5 |
| 418 | Plaintiff's Notice of Appeal | ROA.8295–96 | 6 |
| 422 | Defendant Kellogg Brown & Root, LLC's Notice of Cross Appeal | ROA.8307–09 | 7 |
| 423 | [Harper Defendants'] Notice of Cross Appeal | ROA.8310–11 | 8 |
| 450 | Order | ROA.8422–23 | 9 |
| 451 | Amended Permanent Injunction | ROA.8424–30 | 10 |
| 453 | Defendant Kellogg Brown & Root, LLC's Amended Notice of Cross Appeal | Not available | 11 |
| 454 | Plaintiff's Amended Notice of Appeal | Not available | 12 |
| 460 | Harper Defendants' Amended Notice of Cross Appeal | Not available | 13 |

Tab 1

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Houston)
# CIVIL DOCKET FOR CASE #: 4:20-cv-00478
# Internal Use Only

Trinseo, S.A. v. Harper et al
Assigned to: Judge Andrew S Hanen
Demand: $5,000,000,000
Cause: 88:8888 Other Statutory Actions

Date Filed: 02/12/2020
Date Terminated: 09/11/2024
Jury Demand: Both
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Trinseo, S.A.**                    represented by   **Eric Grant**
                                                     Hicks Thomas LLP
                                                     700 Louisiana Street, Suite 2300
                                                     Houston, TX 77002
                                                     713-547-9100
                                                     Fax: 713-547-9150
                                                     Email: grant@hicks-thomas.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Joshua Henry Bauer**
                                                     Reich Binstock LLP
                                                     4265 San Felipe
                                                     Suite 1000
                                                     Houston, TX 77027
                                                     713-622-7271
                                                     Email: jbauer@reichandbinstock.com
                                                     *TERMINATED: 08/19/2021*

                                                     **Stewart Hoffer**
                                                     Hicks Thomas LLP
                                                     700 Louisiana
                                                     Suite 2300
                                                     Houston, TX 77002
                                                     713-547-9138
                                                     Fax: 713-547-9150
                                                     Email: shoffer@hicks-thomas.com
                                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Stephen Harper**                   represented by   **Benjamin Francis Foster**
*also known as*                                       Foster Yarborough PLLC
Steve Harper                                          917 Franklin Street
                                                     Suite 220
                                                     Houston, TX 77002

24-20460.38721

713-331-5254
Fax: 713-513-5202
Email: Ben@fosteryarborough.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phillip Robert Brinson**
Gordon & Rees LLP
1900 West Loop South
Suite 1000
Houston, TX 77027
713-961-3366
Fax: 713-961-3938
Email: prbrinson@grsm.com
*TERMINATED: 10/21/2021*
*LEAD ATTORNEY*

**Alisa Anne Lipski**
Foster Yarborough PLLC
917 Franklin Street
Suite 220
Houston, TX 77002
713-331-5254
Fax: 713-513-5202
Email: alisa@fosteryarborough.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steve Harper Consulting, Inc.**                represented by     **Benjamin Francis Foster**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phillip Robert Brinson**
(See above for address)
*TERMINATED: 10/21/2021*
*LEAD ATTORNEY*

**Alisa Anne Lipski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Polycarbonate Consulting Services, Inc.**     represented by     **Benjamin Francis Foster**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phillip Robert Brinson**
(See above for address)
*TERMINATED: 10/21/2021*
*LEAD ATTORNEY*

**Alisa Anne Lipski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kellogg Brown & Root, LLC**　　　　　represented by　**Geoffrey L Harrison**
Susman Godfrey LLP
1000 Louisiana St
Ste 5100
Houston, TX 77002
713-653-7807
Fax: 713-654-6666
Email: gharrison@susmangodfrey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abigail Claire Noebels**
Susman Godfrey LLP
1000 Louisiana St
Ste 5100
Houston, TX 77002
713-653-7816
Email: anoebels@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Florence T Chen**
Susman Godfrey LLP
1000 Louisiana St
Ste 5100
Houston, TX 77002
713-653-7806
Email: fchen@susmangodfrey.com *(Inactive)*
*ATTORNEY TO BE NOTICED*

**Katherine Elizabeth Drews**
Susman Godfrey, LLP
1000 Louisiana St.
Ste 5100
Houston, TX 77002
713-651-9366
Email: kdrews@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Matthew Colin Behncke**
Susman Godfrey LLP
1000 Louisiana
Ste 5100
Houston, TX 77002-5096
713-653-7805
Email: mbehncke@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Warren Wayne Harris**
Bracewell LLP
711 Louisiana
Ste 2300
Houston, TX 77002-2770
713-221-1490
Fax: 713-221-2199
Email: warren.harris@bracewell.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**William Davis**                            represented by   **Matthew B Allen**
Allen & Nunnally LLP
3701 Kirby Dr.
Suite 1212
Houston, TX 77098
713-955-2217
Email: matt.allen@allen-nunnally.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Polycarbonate Resins Consulting, LLC**     represented by   **Matthew B Allen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Witness**

**Leonard Boyd**                             represented by   **David Lee Harvey Payne**
Payne Powell PLLC
1001-A E. Harmony Road
Ste 191
Fort Collins, CO 80525
713-863-9511
Email: payne@paynepowell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/12/2020 | 1 | COMPLAINT against Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc. (Filing fee $ 400 receipt number 0541-24167196) filed by Trinseo, S.A.. (Attachments: # 1 Civil Cover Sheet)(Hoffer, Stewart) (Entered: 02/12/2020) |
| 02/12/2020 | 2 | Request for Issuance of Summons as to Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc., filed. (Attachments: # 1 Summons Request Harper Consulting, # 2 Summons Request Polycarbonate)(Hoffer, Stewart) (Entered: 02/12/2020) |
| 02/13/2020 | 3 | |

| | | |
|---|---|---|
| | | Summons Issued as to Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc.. Issued summons delivered to plaintiff by NEF, filed. (Attachments: # 1 Summons, # 2 Summons)(rcastro, 4) (Entered: 02/13/2020) |
| 02/13/2020 | 4 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 6/3/2020 at 10:00 AM in Courtroom 704 before Magistrate Judge Frances H Stacy. (Signed by Judge Andrew S Hanen) Parties notified.(ClaudiaGutierrezadi, 4) (Entered: 02/13/2020) |
| 02/19/2020 | 5 | RETURN of Service of SUMMONS Executed as to Stephen Harper served on 2/17/2020, answer due 3/9/2020, filed.(Hoffer, Stewart) (Entered: 02/19/2020) |
| 02/19/2020 | 6 | RETURN of Service of SUMMONS Executed as to Polycarbonate Consulting Services, Inc. served on 2/17/2020, answer due 3/9/2020, filed.(Hoffer, Stewart) (Entered: 02/19/2020) |
| 02/19/2020 | 7 | RETURN of Service of SUMMONS Executed as to Steve Harper Consulting, Inc. served on 2/14/2020, answer due 3/6/2020, filed.(Hoffer, Stewart) (Entered: 02/19/2020) |
| 02/28/2020 | 8 | CERTIFICATE OF INTERESTED PARTIES by Trinseo, S.A., filed.(Hoffer, Stewart) (Entered: 02/28/2020) |
| 03/03/2020 | 9 | CERTIFICATE OF INTERESTED PARTIES by Stephen Harper, filed.(Brinson, Phillip) (Entered: 03/03/2020) |
| 03/09/2020 | 10 | ANSWER to 1 Complaint with Jury Demand by Stephen Harper, filed.(Brinson, Phillip) (Entered: 03/09/2020) |
| 03/09/2020 | 11 | ANSWER to 1 Complaint with Jury Demand by Polycarbonate Consulting Services, Inc., filed.(Brinson, Phillip) (Entered: 03/09/2020) |
| 03/09/2020 | 12 | ANSWER to 1 Complaint with Jury Demand by Steve Harper Consulting, Inc., filed.(Brinson, Phillip) (Entered: 03/09/2020) |
| 04/29/2020 | 13 | JOINT DISCOVERY/CASE MANAGEMENT PLAN by Trinseo, S.A., filed.(Hoffer, Stewart) (Entered: 04/29/2020) |
| 04/29/2020 | 14 | Joint MOTION for Entry of Order re: Agreed Protective Order by Trinseo, S.A., filed. Motion Docket Date 5/20/2020. (Attachments: # 1 Proposed Order Proposed Agreed Protective Order)(Hoffer, Stewart) (Entered: 04/29/2020) |
| 05/18/2020 | 15 | Response Letter to Court re Trinseo PreMotion to Compel by Stephen Harper, Polycarbonate Consulting Services, Inc., filed. (Attachments: # 1 Exhibit A)(Brinson, Phillip) (Entered: 05/18/2020) |
| 05/27/2020 | | ***Set/Reset Scheduling Order and Trial Settings: Trial Term: 9/27/2021. ETT: 10 days. Jury trial. Joinder of Parties due by 10/19/2020 Pltf Expert Report due by 1/17/2021. Deft Expert Report due by 2/17/2021. Discovery due by 5/31/2021. Dispositive Motion Filing due by 7/30/2021. Non-Dispositive Motion Filing due by 7/30/2021. Joint Pretrial Order due by 8/20/2021. Docket Call set for 9/20/2021 at 01:30 PM before Judge Andrew S Hanen. (bwhite, 4) (Entered: 05/27/2020) |
| 05/27/2020 | | conference set for 6/3/2020 is terminated. (bwhite, 4) (Entered: 05/27/2020) |
| 06/01/2020 | 16 | AGREED PROTECTIVE ORDER granting 14 Joint MOTION for Entry of Order re: Agreed Protective Order (Signed by Judge Andrew S Hanen) Parties |

| | | notified.(jdav, 4) (Entered: 06/02/2020) |
|---|---|---|
| 06/02/2020 | 17 | NOTICE of Change of Address by Hicks Thomas LLP, counsel for Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 06/02/2020) |
| 06/03/2020 | 18 | RETURN of Service Executed as to Lester "Chip" Melton on 05/22/20 re: Subpoena for Deposition by Written Questions with Document Requests, filed.(Hoffer, Stewart) (Entered: 06/03/2020) |
| 06/22/2020 | 19 | ORDER. Plaintiff is ordered to file a short motion to compel by July 8, 2020. Defendant shall file a short response to the motion to compel by July 22, 2020. (Signed by Judge Andrew S Hanen) Parties notified. (LaurenWebster, 4) (Entered: 06/22/2020) |
| 07/08/2020 | 20 | NOTICE of Appearance by Joshua H. Bauer on behalf of Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 07/08/2020) |
| 07/08/2020 | 21 | MOTION to Compel Discovery from Defendant Stephen Harper by Trinseo, S.A., filed. Motion Docket Date 7/29/2020. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order)(Hoffer, Stewart) (Entered: 07/08/2020) |
| 07/22/2020 | 22 | RESPONSE to 21 MOTION to Compel Discovery from Defendant Stephen Harper filed by Stephen Harper. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Proposed Order)(Brinson, Phillip) (Entered: 07/22/2020) |
| 07/28/2020 | 23 | REPLY in Support of 21 MOTION to Compel Discovery from Defendant Stephen Harper, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hoffer, Stewart) (Entered: 07/28/2020) |
| 07/29/2020 | 24 | REPLY to 23 Reply in Support of Motion, 22 Response to Motion *Sur-Reply in Support of His Response to Plaintiff's Motion to Compel Discovery*, filed by Stephen Harper. (Brinson, Phillip) (Entered: 07/29/2020) |
| 08/05/2020 | 25 | ORDER granting 21 Motion to Compel. Defendants have 45 days to respond to Plaintiff's Requests. (Signed by Judge Andrew S Hanen) Parties notified. (LaurenWebster, 4) (Entered: 08/05/2020) |
| 08/19/2020 | 26 | RETURN of Service Executed as to William Davis on August 1, 2020 re: Subpoena for Deposition by Written Questions with Document Requests, filed.(Hoffer, Stewart) (Entered: 08/19/2020) |
| 09/22/2020 | 27 | MOTION for In Camera Review and De-Designation of Allegedly Protected Materials by Trinseo, S.A., filed. Motion Docket Date 10/13/2020. (Attachments: # 1 Exhibit 1, # 2 Proposed Order)(Hoffer, Stewart) (Entered: 09/22/2020) |
| 09/24/2020 | 28 | NOTICE of Setting as to 27 MOTION for In Camera Review and De-Designation of Allegedly Protected Materials. Parties notified. Telephone Conference set for 9/30/2020 at 10:00 AM by telephone before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 09/24/2020) |
| 09/25/2020 | 29 | RESPONSE to 27 MOTION for In Camera Review and De-Designation of Allegedly Protected Materials filed by Stephen Harper. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Proposed Order)(Brinson, Phillip) (Entered: 09/25/2020) |
| 09/29/2020 | 30 | ORDER denying as moot 27 Motion.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 09/29/2020) |

| | | |
|---|---|---|
| 09/29/2020 | | (Court only) ***(PRIVATE ENTRY) Deadlines terminated. Parties resolved docket entry 27 ; hearing no longer necessary. (rhawkins) (Entered: 09/29/2020) |
| 01/08/2021 | 31 | RETURN of Service Executed as to Alfred Ochoa, Jr. on 11/11/2020 re: Subpoena for Deposition by Written Questions with Document Requests, filed.(Hoffer, Stewart) (Entered: 01/08/2021) |
| 01/08/2021 | 32 | RETURN of Service Executed as to Bryce Koslan on 11/06/2020 re: Subpoena for Deposition by Written Questions with Document Requests, filed.(Hoffer, Stewart) (Entered: 01/08/2021) |
| 01/08/2021 | 33 | RETURN of Service Executed as to Harry Janke on 12/28/2020 re: Subpoena for Deposition by Written Questions with Document Requests, filed.(Hoffer, Stewart) (Entered: 01/08/2021) |
| 01/08/2021 | 34 | RETURN of Service Executed as to John Osby on 11/07/2020 re: Subpoena for Oral Deposition with Document Requests, filed.(Hoffer, Stewart) (Entered: 01/08/2021) |
| 01/08/2021 | 35 | RETURN of Service Executed as to Michael Spell on 11/07/2020 re: Subpoena for Oral Deposition with Document Requests, filed.(Hoffer, Stewart) (Entered: 01/08/2021) |
| 05/27/2021 | 36 | DESIGNATION OF EXPERT WITNESS LIST by Trinseo, S.A., filed. (Attachments: # 1 Exhibit CV of Gerardo Duane Jr., # 2 Exhibit CV of Thomas Pastore)(Hoffer, Stewart) (Entered: 05/27/2021) |
| 06/07/2021 | 37 | Amended DESIGNATION OF EXPERT WITNESS LIST by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Hoffer, Stewart) (Entered: 06/07/2021) |
| 07/15/2021 | 38 | RETURN of Service Executed as to Roger Dale Coday on 06/28/21 re: Subpoena, Notice and Deposition on Written Questions with Requests for Documents, filed.(Hoffer, Stewart) (Entered: 07/15/2021) |
| 07/31/2021 | 39 | Opposed MOTION for Leave to File First Amended Complaint by Trinseo, S.A., filed. Motion Docket Date 8/23/2021. (Attachments: # 1 Exhibit 1-First Amended Complaint, # 2 Proposed Order)(Hoffer, Stewart) (Entered: 07/31/2021) |
| 08/06/2021 | 40 | NOTICE of Setting. Parties notified. Miscellaneous Hearing set for 8/10/2021 at 10:00 AM by telephone before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 08/06/2021) |
| 08/06/2021 | 41 | MOTION for Philip Robert Brinson to Withdraw as Attorney by Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc., filed. Motion Docket Date 8/27/2021. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Proposed Order)(Brinson, Phillip) (Entered: 08/06/2021) |
| 08/10/2021 | | Minute Entry for proceedings held before Judge Andrew S Hanen. MISCELLANEOUS HEARING held on 8/10/2021. The Court heard the argument of the parties on several discovery issues and further discussed consolidation of this case with a similar case before Judge Hittner. The parties will confer about the possibility of consolidating the case and advise the Court by 8/31/2021. In the meantime, the Court terminates all pending trial settings. A new scheduling order will issue when appropriate. Appearances: Phillip Robert Brinson, Dalia Rivera, |

| | | Stewart Hoffer, Matthew Allen, Jeff Harrison.(Court Reporter: N. Forrest), filed.(rhawkins) (Entered: 08/10/2021) |
|---|---|---|
| 08/10/2021 | | September 20, 2021 docket call is terminated. A new scheduling order will be entered at a later date, if appropriate. (rhawkins) (Entered: 08/10/2021) |
| 08/11/2021 | 42 | Unopposed MOTION for Joshua H. Bauer to Withdraw as Attorney by Trinseo, S.A., filed. Motion Docket Date 9/1/2021. (Attachments: # 1 Proposed Order)(Hoffer, Stewart) (Entered: 08/11/2021) |
| 08/11/2021 | 43 | ORDER (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 08/11/2021) |
| 08/19/2021 | 44 | ORDER granting 42 Motion to Withdraw as Attorney. Attorney Joshua Henry Bauer terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 08/19/2021) |
| 08/30/2021 | 45 | RETURN of Service Executed as to Lorraine N. Sopp, CPA on 08/24/21 re: Subpoena; Notice of Deposition on Written Questions w/ Exhibits, filed.(Hoffer, Stewart) (Entered: 08/30/2021) |
| 09/30/2021 | 46 | ORDER granting 39 Motion for Leave to File First Amended Complaint.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 10/01/2021) |
| 09/30/2021 | 47 | AMENDED COMPLAINT against All Defendants filed by Trinseo, S.A..(jdav, 4) (Entered: 10/01/2021) |
| 10/14/2021 | 48 | First AMENDED ANSWER to 47 Amended Complaint/Counterclaim/Crossclaim etc. with Jury Demand by Steve Harper Consulting, Inc., filed. (Brinson, Phillip) (Entered: 10/14/2021) |
| 10/14/2021 | 49 | First AMENDED ANSWER to 47 Amended Complaint/Counterclaim/Crossclaim etc. with Jury Demad by Stephen Harper, filed. (Brinson, Phillip) (Entered: 10/14/2021) |
| 10/14/2021 | 50 | First AMENDED ANSWER to 47 Amended Complaint/Counterclaim/Crossclaim etc. with Jury Demand by Polycarbonate Consulting Services, Inc., filed. (Brinson, Phillip) (Entered: 10/14/2021) |
| 10/15/2021 | 51 | RESPONSE to 41 MOTION for Philip Robert Brinson to Withdraw as Attorney filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 10/15/2021) |
| 10/21/2021 | 52 | ORDER granting 41 Motion to Withdraw as Attorney. Attorney Phillip Robert Brinson terminated..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 10/22/2021) |
| 11/11/2021 | 53 | RETURN of Service Executed as to Polymetrics Technology, LLC on 11/03/2021 re: Subpoena, Notice and Deposition on Written Questions with Requests for Documents, filed.(Hoffer, Stewart) (Entered: 11/11/2021) |
| 11/11/2021 | 54 | RETURN of Service Executed as to Samuel A. Ogoe on 11/06/21 re: Subpoena, Notice of Deposition with Document Requests, filed.(Hoffer, Stewart) (Entered: 11/11/2021) |
| 11/29/2021 | 55 | Unopposed MOTION for Leave to File Second Amended Complaint by Trinseo, S.A., filed. Motion Docket Date 12/20/2021. (Attachments: # 1 Exhibit 1-Pltf Second Amd Complaint)(Hoffer, Stewart) (Entered: 11/29/2021) |

| 01/11/2022 | 56 | ORDER granting 55 Motion for Leave to File Amended Complaint.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 01/12/2022) |
|---|---|---|
| 01/11/2022 | 57 | Second AMENDED COMPLAINT against All Defendants filed by Trinseo, S.A..(jdav, 4) (Entered: 01/12/2022) |
| 01/12/2022 | 58 | Amended DESIGNATION OF EXPERT WITNESS LIST by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Hoffer, Stewart) (Entered: 01/12/2022) |
| 02/01/2022 | 59 | ANSWER to 57 Amended Complaint/Counterclaim/Crossclaim etc. with Jury Demand by Kellogg Brown & Root, LLC, filed.(Harrison, Geoffrey) (Entered: 02/01/2022) |
| 02/15/2022 | 60 | NOTICE of Appearance by Benjamin F. Foster on behalf of Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc., filed. (Foster, Benjamin) (Entered: 02/15/2022) |
| 02/15/2022 | 61 | ANSWER to 57 Amended Complaint/Counterclaim/Crossclaim etc. with Jury Demand by Stephen Harper, filed.(Foster, Benjamin) (Entered: 02/15/2022) |
| 02/15/2022 | 62 | ANSWER to 57 Amended Complaint/Counterclaim/Crossclaim etc. with Jury Demand by Polycarbonate Consulting Services, Inc., filed.(Foster, Benjamin) (Entered: 02/15/2022) |
| 02/15/2022 | 63 | ANSWER to 57 Amended Complaint/Counterclaim/Crossclaim etc. with Jury Demand by Steve Harper Consulting, Inc., filed.(Foster, Benjamin) (Entered: 02/15/2022) |
| 02/16/2022 | 64 | ORDER TO CONSOLIDATE CASES: Lead Case No. 4:20cv0478 and Member Case No. 4:20cv4051. These cases are consolidated under case no. 4:20cv0478. All prior deadlines and hearings are CANCELLED. Parties to submit a proposed agreed upon schedule by February 25, 2022 and to consult upon a protective order. (Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 02/16/2022) |
| 02/25/2022 | 65 | Agreed MOTION to Amend by Kellogg Brown & Root, LLC, filed. Motion Docket Date 3/18/2022. (Attachments: # 1 Proposed Order)(Harrison, Geoffrey) (Entered: 02/25/2022) |
| 02/28/2022 | 66 | AGREED AMENDED SCHEDULING ORDER re: 65 Agreed MOTION to Amend. Mediation to be completed by 1/23/2023, Deft Expert Report due by 6/29/2022., Discovery due by 11/11/2022., Dispositive Motion Filing due by 12/23/2022., New Parties to be added by 5/15/2021, Joint Pretrial Order due by 3/6/2023., Non-Dispositive Motion Filing due by 12/23/2022., Pltf Expert Report due by 4/30/2022., Final Pretrial Conference set for 4/4/2023 at 01:30 PM in Courtroom 9C before Judge Andrew S Hanen, Jury Trial set for 4/10/2023 at 09:00 AM in Courtroom 9C before Judge Andrew S Hanen)(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/02/2022) |
| 03/14/2022 | 67 | AMENDED ANSWER to 57 Amended Complaint/Counterclaim/Crossclaim etc. with Jury Demand by William Davis, Polycarbonate Resins Consulting, LLC, filed. (Allen, Matthew) (Entered: 03/14/2022) |
| 03/22/2022 | 68 | Joint MOTION for Entry of Order re: Agreed Protective Order by Kellogg Brown & Root, LLC, filed. Motion Docket Date 4/12/2022. (Attachments: # 1 Exhibit Proposed Protective Order)(Harrison, Geoffrey) (Entered: 03/22/2022) |

| 03/28/2022 | 69 | AGREED PROTECTIVE ORDER granting 68 Joint MOTION for Entry of Order re: Agreed Protective Order (Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/28/2022) |
|---|---|---|
| 03/28/2022 | 70 | AGREED PROTECTIVE ORDER (Signed by Judge Andrew S Hanen) Parties notified.(olindor, 4) (Entered: 03/29/2022) |
| 05/02/2022 | 71 | NOTICE of Change of Address by Foster Yarborough PLLC and Benjamin F. Foster, counsel for Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc., filed. (Foster, Benjamin) (Entered: 05/02/2022) |
| 06/29/2022 | 72 | DESIGNATION OF EXPERT WITNESS LIST by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Harrison, Geoffrey) (Entered: 06/29/2022) |
| 06/29/2022 | 73 | DESIGNATION OF EXPERT WITNESS LIST by William Davis, Polycarbonate Resins Consulting, LLC, filed.(Allen, Matthew) (Entered: 06/29/2022) |
| 06/29/2022 | 74 | DESIGNATION OF EXPERT WITNESS LIST by Stephen Harper, Steve Harper Consulting, Inc., filed.(Foster, Benjamin) (Entered: 06/29/2022) |
| 07/06/2022 | 75 | RETURN of Service Executed as to Vaughan M. Nace on 06/06/2022 re: Subpoena, Notice and Deposition on Written Questions with Requests for Documents, filed.(Hoffer, Stewart) (Entered: 07/06/2022) |
| 07/29/2022 | 76 | NOTICE of Appearance by Katherine E. Drews on behalf of Kellogg Brown & Root, LLC, filed. (Drews, Katherine) (Entered: 07/29/2022) |
| 07/29/2022 | 77 | *SEALED* SEALED MOTION *KBR's Motion for Summary Judgment* by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix, # 2 Proposed Order) (Harrison, Geoffrey) (Entered: 07/29/2022) |
| 07/29/2022 | 78 | REDACTION to 77 SEALED MOTION *KBR's Motion for Summary Judgment* by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix, # 2 Proposed Order)(Harrison, Geoffrey) (Entered: 07/29/2022) |
| 08/05/2022 | 79 | JOINDER in 77 SEALED MOTION *KBR's Motion for Summary Judgment* , filed by Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc.. (Foster, Benjamin) (Entered: 08/05/2022) |
| 08/15/2022 | 80 | Unopposed MOTION for Extension of Time to File Response and Replies to Defendants' Motion for Summary Judgment and Joinder Therein by Trinseo, S.A., filed. Motion Docket Date 9/6/2022. (Attachments: # 1 Proposed Order)(Hoffer, Stewart) (Entered: 08/15/2022) |
| 08/22/2022 | 82 | ORDER granting 80 Motion for Extension of Time to File Response and Replies to Defendants' Motion for Summary Judgment and Joinder Therein. Plaintiff shall file its Response to Defendants' Motions for Summary Judgment no later than September 1, 2022. Defendants shall file their Replies, if any, no later than September 22, 2022.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 08/24/2022) |
| 08/23/2022 | 81 | *SEALED* SEALED MOTION *Joinder and Supplement to KBR's Motion for Summary Judgment* by William Davis, Polycarbonate Resins Consulting, LLC, filed. (Allen, Matthew) (Entered: 08/23/2022) |
| 08/25/2022 | 83 | |

| | | |
|---|---:|---|
| | | Unopposed MOTION for Leave to File Excess Pages by Trinseo, S.A., filed. Motion Docket Date 9/15/2022. (Hoffer, Stewart) (Entered: 08/25/2022) |
| 08/26/2022 | 84 | PROPOSED ORDER *Granting Plaintiff's Unopposed Motion for Leave to Exceed Page Limits for Responses to Motions for Summary Judgment (Doc. Nos. 77-79)* re: 83 Unopposed MOTION for Leave to File Excess Pages, filed.(Hoffer, Stewart) (Entered: 08/26/2022) |
| 09/01/2022 | 85 | ORDER granting 83 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(gkelner, 4) (Entered: 09/01/2022) |
| 09/01/2022 | 86 | MOTION to Exclude KBR's Inadmissible Summary Judgment Evidence by Trinseo, S.A., filed. Motion Docket Date 9/22/2022. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Proposed Order)(Hoffer, Stewart) (Entered: 09/01/2022) |
| 09/01/2022 | 87 | *SEALED* SEALED EXHIBITS *5 to Plaintiff's Objections to and Rule 37 Motion to Exclude KBR's Inadmissible Summary Judgment Evidence* re: 86 MOTION to Exclude KBR's Inadmissible Summary Judgment Evidence by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 09/01/2022) |
| 09/01/2022 | 88 | *SEALED* SEALED RESPONSE *in Opposition to Defendant KBR's Motion for Summary Judgment* re: 77 SEALED MOTION *KBR's Motion for Summary Judgment* by Trinseo, S.A., filed. (Attachments: # 1 Appendix in Support of Response, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit B-1, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit E-1, # 9 Exhibit E-2, # 10 Exhibit E-3, # 11 Exhibit E-4, # 12 Exhibit E-5, # 13 Exhibit E-6, # 14 Exhibit E-7, # 15 Exhibit E-8, # 16 Exhibit E-9, # 17 Exhibit E-10, # 18 Exhibit E-11, # 19 Exhibit E-12, # 20 Exhibit E-13, # 21 Exhibit E-14, # 22 Exhibit E-15, # 23 Exhibit E-16, # 24 Exhibit E-17, # 25 Exhibit E-18, # 26 Exhibit E-19, # 27 Exhibit E-20, # 28 Exhibit E-21, # 29 Exhibit E-22, # 30 Exhibit E-23, # 31 Exhibit E-24, # 32 Exhibit E-25, # 33 Exhibit E-26, # 34 Exhibit E-27, # 35 Exhibit E-28, # 36 Exhibit E-29, # 37 Exhibit E-30, # 38 Exhibit E-31, # 39 Exhibit E-32, # 40 Exhibit E-33, # 41 Exhibit E-34, # 42 Exhibit E-35, # 43 Exhibit E-36, # 44 Exhibit F, # 45 Exhibit G, # 46 Exhibit H, # 47 Exhibit I, # 48 Exhibit J, # 49 Exhibit J-1, # 50 Exhibit K, # 51 Exhibit K-1, # 52 Exhibit K-2, # 53 Exhibit K-3, # 54 Exhibit K-4, # 55 Exhibit K-5, # 56 Exhibit K-6, # 57 Exhibit K-7, # 58 Exhibit K-8, # 59 Exhibit K-9, # 60 Exhibit L, # 61 Exhibit M, # 62 Proposed Order) (Hoffer, Stewart) (Entered: 09/01/2022) |
| 09/01/2022 | 89 | *SEALED* RESPONSE in Opposition to 77 SEALED MOTION *KBR's Motion for Summary Judgment*, filed by Trinseo, S.A.. (Attachments: # 1 Appendix in Support of Response, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit B-1, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit E-1, # 9 Exhibit E-2, # 10 Exhibit E-3, # 11 Exhibit E-4, # 12 Exhibit E-5, # 13 Exhibit E-6, # 14 Exhibit E-7, # 15 Exhibit E-8, # 16 Exhibit E-9, # 17 Exhibit E-10, # 18 Exhibit E-11, # 19 Exhibit E-12, # 20 Exhibit E-13, # 21 Exhibit E-14, # 22 Exhibit E-15, # 23 Exhibit E-16, # 24 Exhibit E-17, # 25 Exhibit E-18, # 26 Exhibit E-19, # 27 Exhibit E-20, # 28 Exhibit E-21, # 29 Exhibit E-22, # 30 Exhibit E-23, # 31 Exhibit E-24, # 32 Exhibit E-25, # 33 Exhibit E-26, # 34 Exhibit E-27, # 35 Exhibit E-28, # 36 Exhibit E-29, # 37 Exhibit E-30, # 38 Exhibit E-31, # 39 Exhibit E-32, # 40 Exhibit E-33, # 41 Exhibit E-34, # 42 Exhibit E-35, # 43 Exhibit E-36, # 44 Exhibit F, # 45 Exhibit G, # 46 Exhibit H, # 47 Exhibit I, # 48 Exhibit J, # 49 Exhibit J-1, # 50 Exhibit K, # 51 Exhibit K-1, # 52 Exhibit K-2, # 53 Exhibit K-3, # 54 Exhibit K-4, # 55 Exhibit K-5, # 56 Exhibit K-6, # 57 Exhibit K-7, # 58 Exhibit K-8, # 59 Exhibit K-9, # 60 Exhibit L, # 61 Exhibit M, # 62 Proposed Order)(Hoffer, Stewart) (Entered: |

| | | 09/01/2022) |
|---|---|---|
| 09/01/2022 | 90 | *SEALED* SEALED RESPONSE *in Opposition to the Harper Defendants' Joinder in Defendant KBR's Motion for Summary Judgment* re: 79 Joinder by Trinseo, S.A., filed. (Attachments: # 1 Appendix in Support of Response, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit B-1, # 5 Exhibit C, # 6 Exhibit C-1, # 7 Exhibit C-2, # 8 Exhibit C-3, # 9 Exhibit C-4, # 10 Exhibit C-5, # 11 Exhibit C-6, # 12 Exhibit C-7, # 13 Exhibit C-8, # 14 Exhibit C-9, # 15 Exhibit C-10, # 16 Exhibit C-11, # 17 Exhibit C-12, # 18 Exhibit C-13, # 19 Exhibit C-14, # 20 Exhibit C-15, # 21 Exhibit C-16, # 22 Exhibit C-17, # 23 Exhibit C-18, # 24 Exhibit D, # 25 Exhibit E, # 26 Exhibit F, # 27 Exhibit G, # 28 Exhibit H, # 29 Exhibit I, # 30 Exhibit J, # 31 Proposed Order) (Hoffer, Stewart) (Entered: 09/01/2022) |
| 09/01/2022 | 91 | RESPONSE to 79 Joinder *Response in Opposition to Harper Defendants' Joinder in Defendant KBR's Motion for Summary Judgment*, filed by Trinseo, S.A.. (Attachments: # 1 Appendix in Support of Response, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit B-1, # 5 Exhibit C, # 6 Exhibit C-1, # 7 Exhibit C-2, # 8 Exhibit C-3, # 9 Exhibit C-4, # 10 Exhibit C-5, # 11 Exhibit C-6, # 12 Exhibit C-7, # 13 Exhibit C-8, # 14 Exhibit C-9, # 15 Exhibit C-10, # 16 Exhibit C-11, # 17 Exhibit C-12, # 18 Exhibit C-13, # 19 Exhibit C-14, # 20 Exhibit C-15, # 21 Exhibit C-16, # 22 Exhibit C-17, # 23 Exhibit C-18, # 24 Exhibit D, # 25 Exhibit E, # 26 Exhibit F, # 27 Exhibit G, # 28 Exhibit H, # 29 Exhibit I, # 30 Exhibit J, # 31 Proposed Order)(Hoffer, Stewart) (Entered: 09/01/2022) |
| 09/07/2022 | 92 | Opposed MOTION to Seal Exhibit Filed by KBR in Violation of Court's Agreed Protective Order (Doc. No. 70) by Trinseo, S.A., filed. Motion Docket Date 9/28/2022. (Attachments: # 1 Exhibit 1, # 2 Proposed Order)(Hoffer, Stewart) (Entered: 09/07/2022) |
| 09/13/2022 | 93 | RESPONSE to 92 Opposed MOTION to Seal Exhibit Filed by KBR in Violation of Court's Agreed Protective Order (Doc. No. 70) filed by Kellogg Brown & Root, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5 - Filed Under Seal)(Harrison, Geoffrey) (Entered: 09/13/2022) |
| 09/13/2022 | 94 | *SEALED* SEALED EXHIBITS *Exhibit 5 to KBR's Response to Plaintiff's Expedited Motion to Seal* re: 93 Response to Motion, by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Exhibit 5 - Under Seal) (Harrison, Geoffrey) (Entered: 09/13/2022) |
| 09/13/2022 | 95 | *SEALED* SEALED RESPONSE *in Opposition to the Davis Defendants' Joinder in and Supplement to KBR's Motion for Summary Judgment* re: 81 SEALED MOTION *Joinder and Supplement to KBR's Motion for Summary Judgment* by Trinseo, S.A., filed. (Attachments: # 1 Appendix of Exhibits in Support of Response, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit B-1, # 5 Exhibit B-2, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Proposed Order) (Hoffer, Stewart) (Entered: 09/13/2022) |
| 09/13/2022 | 96 | RESPONSE in Opposition to 81 SEALED MOTION *Joinder and Supplement to KBR's Motion for Summary Judgment*, filed by Trinseo, S.A.. (Attachments: # 1 Appendix of Exhibits in Support of Response, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit B-1, # 5 Exhibit B-2, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Proposed Order)(Hoffer, Stewart) (Entered: 09/13/2022) |
| 09/16/2022 | 97 | Unopposed MOTION for Extension of Time Deadlines for KBR's and the Harper Defendants' Replies in Support of Summary Judgment and KBR's Response to the |

| | | |
|---|---|---|
| | | Motion to Exclude Certain Evidence by Kellogg Brown & Root, LLC, filed. Motion Docket Date 10/7/2022. (Attachments: # 1 Proposed Order)(Harrison, Geoffrey) (Entered: 09/16/2022) |
| 09/19/2022 | 98 | ORDER granting 97 Motion to Extend Deadlines for KBR's and the Harper Defendants' Replies and Support of Summary Judgment and KBR's Response to the Motion to Exclude Certain Evidence. Responses due by 10/18/2022. Replies due by 10/3/2022.(Signed by Judge Andrew S Hanen) Parties notified.(kpicota, 4) (Entered: 09/20/2022) |
| 10/03/2022 | 99 | *SEALED* SEALED REPLY *KBR's and the Harper Defendants' Reply in Support of KBR's Motion for Summary Judgment* re: 77 SEALED MOTION *KBR's Motion for Summary Judgment* by Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix) (Harrison, Geoffrey) (Entered: 10/03/2022) |
| 10/03/2022 | 100 | REDACTION to 99 Sealed Response, by Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix)(Harrison, Geoffrey) (Entered: 10/03/2022) |
| 10/03/2022 | 101 | *SEALED* SEALED RESPONSE re: 86 MOTION to Exclude KBR's Inadmissible Summary Judgment Evidence by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix, # 2 Proposed Order) (Harrison, Geoffrey) (Entered: 10/03/2022) |
| 10/03/2022 | 102 | REDACTION to 101 Sealed Response by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix, # 2 Proposed Order)(Harrison, Geoffrey) (Entered: 10/03/2022) |
| 10/04/2022 | 103 | SEALED REPLY re: 81 SEALED MOTION *Joinder and Supplement to KBR's Motion for Summary Judgment* by William Davis, Polycarbonate Resins Consulting, LLC, filed. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 4) (Allen, Matthew) (Entered: 10/04/2022) |
| 10/18/2022 | 104 | REPLY in Support of 86 MOTION to Exclude KBR's Inadmissible Summary Judgment Evidence, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 10/18/2022) |
| 10/18/2022 | 105 | *SEALED* SEALED SURREPLY *in Opposition to Motions for Summary Judgment Filed by All Defendants* re: 77 SEALED MOTION *KBR's Motion for Summary Judgment*, 81 SEALED MOTION *Joinder and Supplement to KBR's Motion for Summary Judgment*, 78 Redacted Document, 79 Joinder by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1) (Hoffer, Stewart) (Entered: 10/18/2022) |
| 10/18/2022 | 106 | REPLY to 77 SEALED MOTION *KBR's Motion for Summary Judgment*, 81 SEALED MOTION *Joinder and Supplement to KBR's Motion for Summary Judgment*, 78 Redacted Document, 79 Joinder *Surreply in Opposition to Motions for Summary Judgment Filed by All Defendants*, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit 1)(Hoffer, Stewart) (Entered: 10/18/2022) |
| 10/27/2022 | 107 | NOTICE of Appearance by Alisa Lipski on behalf of Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc., filed. (Lipski, Alisa) (Entered: 10/27/2022) |
| 10/28/2022 | 108 | SURREPLY to 86 MOTION to Exclude KBR's Inadmissible Summary Judgment Evidence, filed by Kellogg Brown & Root, LLC. (Attachments: # 1 |

| | | Appendix)(Harrison, Geoffrey) (Entered: 10/28/2022) |
|---|---|---|
| 10/28/2022 | 109 | *SEALED* MOTION for Oral Hearing re: 77 SEALED MOTION *KBR's Motion for Summary Judgment*, 86 MOTION to Exclude KBR's Inadmissible Summary Judgment Evidence by Kellogg Brown & Root, LLC, filed. Motion Docket Date 11/18/2022. (Attachments: # 1 Proposed Order)(Harrison, Geoffrey) (Entered: 10/28/2022) |
| 11/11/2022 | 110 | NOTICE of Appearance by Abigail C. Noebels on behalf of Kellogg Brown & Root, LLC, filed. (Noebels, Abigail) (Entered: 11/11/2022) |
| 11/21/2022 | 111 | Opposed MOTION Challenging Defendant KBR's Designations Under Agreed Protective Order (Doc. No. 70) by Trinseo, S.A., filed. Motion Docket Date 12/12/2022. (Attachments: # 1 Exhibit 1, # 2 Proposed Order)(Hoffer, Stewart) (Entered: 11/21/2022) |
| 11/30/2022 | 112 | Agreed MOTION to Modify Certain Pretrial Dates as to 66 Order,, by Kellogg Brown & Root, LLC, filed. Motion Docket Date 12/21/2022. (Attachments: # 1 Proposed Order)(Harrison, Geoffrey) (Entered: 11/30/2022) |
| 12/01/2022 | 113 | Supplemental DESIGNATION OF EXPERT WITNESS LIST by Trinseo, S.A., filed.(Hoffer, Stewart) (Entered: 12/01/2022) |
| 12/01/2022 | 114 | SECOND AMENDED SCHEDULING ORDER granting 112 Agreed MOTION to Modify Certain Pretrial Dates as to 66 Order. Trial Term: 9 DAYS. Mediation due by 3/10/2023. Dispositive Motion Filing due by 1/11/2023. Non-Dispositive Motion Filing due by 1/11/2023. Joint Pretrial Order due by 3/13/2023. Final Pretrial Conference set for 4/4/2023 at 01:30 PM in Courtroom 9D before Judge Andrew S Hanen. Jury Trial set for 4/10/2023 at 09:00 AM in Courtroom 9D before Judge Andrew S Hanen(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 12/03/2022) |
| 12/05/2022 | 115 | NOTICE of Appearance by Matthew Behncke on behalf of Kellogg Brown & Root, LLC, filed. (Behncke, Matthew) (Entered: 12/05/2022) |
| 12/05/2022 | 116 | NOTICE of Appearance by Florence Chen on behalf of Kellogg Brown & Root, LLC, filed. (Chen, Florence) (Entered: 12/05/2022) |
| 12/20/2022 | 117 | STIPULATION re: Trinseo's Motion Challenging KBR's Designations is Denied as Moot by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Proposed Order)(Chen, Florence) (Entered: 12/20/2022) |
| 12/21/2022 | 118 | ORDER denying as moot 111 Opposed MOTION Challenging Defendant KBR's Designations Under Agreed Protective Order.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 12/22/2022) |
| 01/10/2023 | 119 | NOTICE of Setting. Parties notified. Discovery Hearing set for 1/13/2023 at 10:00 AM by telephone before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 01/10/2023) |
| 01/11/2023 | 120 | *SEALED* SEALED MOTION *Plaintiff's Motion to Exclude Certain Opinions and Testimony of Defendant KBR's Liability Expert Gary Hewitt* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order) (Hoffer, Stewart) (Entered: 01/11/2023) |
| 01/11/2023 | 121 | MOTION to Exclude Certain Opinions and Testimony of Defendant KBR's Liability Expert Gary Hewitt (REDACTED) by Trinseo, S.A., filed. Motion Docket |

| | | |
|---|---|---|
| | | Date 2/1/2023. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order)(Hoffer, Stewart) (Entered: 01/11/2023) |
| 01/11/2023 | 122 | MOTION Motion for Pretrial Ruling on the Admissibility of Certain Evidence by Trinseo, S.A., filed. Motion Docket Date 2/1/2023. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Proposed Order)(Hoffer, Stewart) (Entered: 01/11/2023) |
| 01/11/2023 | 123 | Opposed MOTION to Take Judicial Notice of Adjudicative Facts and Foreign Law by Trinseo, S.A., filed. Motion Docket Date 2/1/2023. (Attachments: # 1 Proposed Order)(Hoffer, Stewart) (Entered: 01/11/2023) |
| 01/11/2023 | 124 | MOTION to Exclude Certain Opinions and Testimony of Defendants' Expert Michael Kratochwill by Trinseo, S.A., filed. Motion Docket Date 2/1/2023. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order)(Hoffer, Stewart) (Entered: 01/11/2023) |
| 01/11/2023 | 125 | *SEALED* SEALED MOTION *to Exclude the Opinions of Thomas Pastore* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix, # 2 Proposed Order) (Harrison, Geoffrey) (Entered: 01/11/2023) |
| 01/11/2023 | 126 | REDACTION to 125 SEALED MOTION *to Exclude the Opinions of Thomas Pastore* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix, # 2 Proposed Order)(Harrison, Geoffrey) (Entered: 01/11/2023) |
| 01/11/2023 | 127 | *SEALED* SEALED MOTION *Motion to Exclude the Opinions of Jerry Duane* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix Part 1, # 2 Appendix Part 2, # 3 Appendix Part 3, # 4 Appendix Part 4, # 5 Proposed Order) (Harrison, Geoffrey) (Entered: 01/11/2023) |
| 01/11/2023 | 128 | REDACTION to 127 SEALED MOTION *Motion to Exclude the Opinions of Jerry Duane* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix, # 2 Proposed Order)(Harrison, Geoffrey) (Entered: 01/11/2023) |
| 01/11/2023 | 129 | *SEALED* SEALED MOTION *KBR's Motion for Summary Judgment on Trinseo's Alleged Trade Secrets and Common Law Claims* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix Part 1, # 2 Appendix Part 2, # 3 Appendix Part 3, # 4 Appendix Part 4, # 5 Appendix Part 5, # 6 Appendix Part 6, # 7 Appendix Part 7, # 8 Proposed Order) (Harrison, Geoffrey) (Entered: 01/11/2023) |
| 01/12/2023 | 130 | REDACTION to 129 SEALED MOTION *KBR's Motion for Summary Judgment on Trinseo's Alleged Trade Secrets and Common Law Claims* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix Part 1, # 2 Appendix Part 2, # 3 Appendix Part 3, # 4 Appendix Part 4, # 5 Proposed Order)(Harrison, Geoffrey) (Entered: 01/12/2023) |

| | | |
|---|---|---|
| 01/12/2023 | | Discovery Hearing set for 1/13/2023 at 10:00 AM is terminated. The Court will reset at a later time, if appropriate. (rhawkins) (Entered: 01/12/2023) |
| 02/01/2023 | 131 | RESPONSE in Opposition to 123 Opposed MOTION to Take Judicial Notice of Adjudicative Facts and Foreign Law, filed by Kellogg Brown & Root, LLC. (Attachments: # 1 Appendix)(Chen, Florence) (Entered: 02/01/2023) |
| 02/01/2023 | 132 | *SEALED* SEALED RESPONSE *in Opposition* re: 123 Opposed MOTION to Take Judicial Notice of Adjudicative Facts and Foreign Law by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix) (Chen, Florence) (Entered: 02/01/2023) |
| 02/01/2023 | 133 | *SEALED* SEALED RESPONSE re: 122 MOTION Motion for Pretrial Ruling on the Admissibility of Certain Evidence by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix Part 1 of 2, # 2 Appendix Part 2 of 2) (Harrison, Geoffrey) (Entered: 02/01/2023) |
| 02/01/2023 | 134 | REDACTION to 133 Sealed Response by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix)(Harrison, Geoffrey) (Entered: 02/01/2023) |
| 02/03/2023 | 137 | *SEALED* Sealed ORDER. Copies provided to all attorneys of record via USPS, filed. (jdav, 4) (Entered: 02/07/2023) |
| 02/03/2023 | 138 | *SEALED* Sealed ORDER. Copies provided to all attorneys of record via USPS, filed. (jdav, 4) (Entered: 02/07/2023) |
| 02/03/2023 | | (Court only) ***Motion(s) terminated: 81 SEALED MOTION *Joinder and Supplement to KBR's Motion for Summary Judgment*. (rhawkins) (Entered: 03/29/2023) |
| 02/06/2023 | 135 | MOTION to Exclude Portions of Defendants' Summary Judgment Evidence by Trinseo, S.A., filed. Motion Docket Date 2/27/2023. (Attachments: # 1 Appendix of Unpublished Authorities, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Proposed Order)(Hoffer, Stewart) (Entered: 02/06/2023) |
| 02/06/2023 | 136 | NOTICE *of Change of Firm Name and Contact Information* by William Davis, Polycarbonate Resins Consulting, LLC, filed. (Allen, Matthew) (Entered: 02/06/2023) |
| 02/08/2023 | | (Court only) Set/Cleared Flags. STAYED flag set. (jdav, 4) (Entered: 02/08/2023) |
| 02/08/2023 | 139 | *SEALED* SEALED RESPONSE re: 125 SEALED MOTION *to Exclude the Opinions of Thomas Pastore* by Trinseo, S.A., filed. (Attachments: # 1 Appendix, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit 1, # 17 Exhibit 2, # 18 Exhibit 3, # 19 Exhibit 4, # 20 Exhibit 5, # 21 Exhibit 6, # 22 Exhibit 7, # 23 Exhibit 8, # 24 Exhibit 9, # 25 Exhibit 10, # 26 Exhibit 11, # 27 Exhibit 12, # 28 Exhibit 13, # 29 Exhibit 14, # 30 Exhibit 15, # 31 Exhibit 16, # 32 Exhibit 17, # 33 Proposed Order) (Hoffer, Stewart) (Entered: 02/08/2023) |
| 02/08/2023 | 140 | RESPONSE in Opposition to 125 SEALED MOTION *to Exclude the Opinions of Thomas Pastore*, filed by Trinseo, S.A.. (Attachments: # 1 Appendix, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit 1, # 17 Exhibit 2, # 18 |

24-20460.38736

| | | |
|---|---|---|
| | | Exhibit 3, # <u>19</u> Exhibit 4, # <u>20</u> Exhibit 5, # <u>21</u> Exhibit 6, # <u>22</u> Exhibit 7, # <u>23</u> Exhibit 8, # <u>24</u> Exhibit 9, # <u>25</u> Exhibit 10, # <u>26</u> Exhibit 11, # <u>27</u> Exhibit 12, # <u>28</u> Exhibit 13, # <u>29</u> Exhibit 14, # <u>30</u> Exhibit 15, # <u>31</u> Exhibit 16, # <u>32</u> Exhibit 17, # <u>33</u> Proposed Order)(Hoffer, Stewart) (Entered: 02/08/2023) |
| 02/08/2023 | <u>141</u> | RESPONSE in Opposition to <u>127</u> SEALED MOTION *Motion to Exclude the Opinions of Jerry Duane*, filed by Trinseo, S.A.. (Attachments: # <u>1</u> Appendix, # <u>2</u> Exhibit A, # <u>3</u> Exhibit B, # <u>4</u> Exhibit C, # <u>5</u> Exhibit D, # <u>6</u> Exhibit E, # <u>7</u> Exhibit F, # <u>8</u> Exhibit G, # <u>9</u> Exhibit H, # <u>10</u> Exhibit I, # <u>11</u> Exhibit J, # <u>12</u> Exhibit K, # <u>13</u> Exhibit L, # <u>14</u> Exhibit M, # <u>15</u> Exhibit N, # <u>16</u> Exhibit O, # <u>17</u> Exhibit P, # <u>18</u> Exhibit Q, # <u>19</u> Exhibit R, # <u>20</u> Exhibit S, # <u>21</u> Exhibit T, # <u>22</u> Exhibit U, # <u>23</u> Exhibit V, # <u>24</u> Exhibit W, # <u>25</u> Exhibit 1, # <u>26</u> Exhibit 2, # <u>27</u> Exhibit 3, # <u>28</u> Exhibit 4, # <u>29</u> Exhibit 5, # <u>30</u> Exhibit 6, # <u>31</u> Exhibit 7, # <u>32</u> Exhibit 8, # <u>33</u> Exhibit 9A, # <u>34</u> Exhibit 9B, # <u>35</u> Exhibit 10, # <u>36</u> Exhibit 11, # <u>37</u> Exhibit 12, # <u>38</u> Exhibit 13, # <u>39</u> Exhibit 14, # <u>40</u> Exhibit 15, # <u>41</u> Proposed Order)(Hoffer, Stewart) (Entered: 02/08/2023) |
| 02/08/2023 | <u>142</u> | *SEALED* SEALED EXHIBITS *to Plaintiff's Response to Defendants Motion to Exclude Some of the Opinions of Jerry Duane* re: <u>141</u> Response in Opposition to Motion,,, by Trinseo, S.A., filed. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 4, # <u>3</u> Exhibit 5, # <u>4</u> Exhibit 6, # <u>5</u> Exhibit 8, # <u>6</u> Exhibit 9A, # <u>7</u> Exhibit 9B, # <u>8</u> Exhibit 10, # <u>9</u> Exhibit 11, # <u>10</u> Exhibit 14) (Hoffer, Stewart) (Entered: 02/08/2023) |
| 02/08/2023 | <u>143</u> | *SEALED* SEALED RESPONSE *PART 1 OF 2 - Plaintiff's Response to Defendants' Second Motion for Summary Judgment* re: <u>129</u> SEALED MOTION *KBR's Motion for Summary Judgment on Trinseo's Alleged Trade Secrets and Common Law Claims* by Trinseo, S.A., filed. (Attachments: # <u>1</u> Appendix, # <u>2</u> Exhibit A, # <u>3</u> Exhibit B, # <u>4</u> Exhibit C, # <u>5</u> Exhibit D, # <u>6</u> Exhibit E, # <u>7</u> Exhibit F, # <u>8</u> Exhibit G, # <u>9</u> Exhibit H, # <u>10</u> Exhibit I, # <u>11</u> Exhibit J, # <u>12</u> Exhibit K, # <u>13</u> Exhibit L, # <u>14</u> Exhibit M, # <u>15</u> Exhibit N, # <u>16</u> Exhibit O, # <u>17</u> Exhibit P, # <u>18</u> Exhibit 1, # <u>19</u> Exhibit 2, # <u>20</u> Exhibit 3, # <u>21</u> Exhibit 4, # <u>22</u> Exhibit 5, # <u>23</u> Exhibit 6, # <u>24</u> Exhibit 7, # <u>25</u> Exhibit 8, # <u>26</u> Exhibit 9, # <u>27</u> Exhibit 10, # <u>28</u> Exhibit 11, # <u>29</u> Exhibit 12, # <u>30</u> Exhibit 13, # <u>31</u> Exhibit 14, # <u>32</u> Exhibit 15) (Hoffer, Stewart) (Entered: 02/08/2023) |
| 02/08/2023 | <u>144</u> | *SEALED* SEALED RESPONSE *PART 2 OF 2 - Plaintiff's Response to Defendants' Second Motion for Summary Judgment* re: <u>129</u> SEALED MOTION *KBR's Motion for Summary Judgment on Trinseo's Alleged Trade Secrets and Common Law Claims* by Trinseo, S.A., filed. (Attachments: # <u>1</u> Exhibit 16, # <u>2</u> Exhibit 17, # <u>3</u> Exhibit 18, # <u>4</u> Exhibit 20, # <u>5</u> Exhibit 21, # <u>6</u> Exhibit 22, # <u>7</u> Exhibit 23, # <u>8</u> Exhibit 24, # <u>9</u> Exhibit 25, # <u>10</u> Exhibit 26, # <u>11</u> Exhibit 27, # <u>12</u> Exhibit 28, # <u>13</u> Exhibit 29, # <u>14</u> Exhibit 30, # <u>15</u> Exhibit 31, # <u>16</u> Exhibit 32, # <u>17</u> Exhibit 33, # <u>18</u> Exhibit 34, # <u>19</u> Exhibit 35, # <u>20</u> Exhibit 36, # <u>21</u> Exhibit 37, # <u>22</u> Exhibit 38, # <u>23</u> Exhibit 39, # <u>24</u> Exhibit 40, # <u>25</u> Exhibit 41, # <u>26</u> Exhibit 42, # <u>27</u> Exhibit 43, # <u>28</u> Exhibit 44, # <u>29</u> Exhibit 45, # <u>30</u> Exhibit 46, # <u>31</u> Exhibit 47, # <u>32</u> Exhibit 48, # <u>33</u> Exhibit 49, # <u>34</u> Exhibit 50, # <u>35</u> Exhibit 51, # <u>36</u> Exhibit 52, # <u>37</u> Exhibit 53, # <u>38</u> Exhibit 54, # <u>39</u> Exhibit 55, # <u>40</u> Proposed Order) (Hoffer, Stewart) (Entered: 02/08/2023) |
| 02/08/2023 | <u>145</u> | RESPONSE in Opposition to <u>129</u> SEALED MOTION *KBR's Motion for Summary Judgment on Trinseo's Alleged Trade Secrets and Common Law Claims*, filed by Trinseo, S.A.. (Attachments: # <u>1</u> Appendix, # <u>2</u> Exhibit A, # <u>3</u> Exhibit B, # <u>4</u> Exhibit C, # <u>5</u> Exhibit D, # <u>6</u> Exhibit E, # <u>7</u> Exhibit F, # <u>8</u> Exhibit G, # <u>9</u> Exhibit H, # <u>10</u> Exhibit I, # <u>11</u> Exhibit J, # <u>12</u> Exhibit K, # <u>13</u> Exhibit L, # <u>14</u> Exhibit M, # <u>15</u> |

24-20460.38737

| | | |
|---|---|---|
| | | Exhibit N, # <u>16</u> Exhibit O, # <u>17</u> Exhibit P, # <u>18</u> Exhibit 1, # <u>19</u> Exhibit 2, # <u>20</u> Exhibit 3, # <u>21</u> Exhibit 4, # <u>22</u> Exhibit 5, # <u>23</u> Exhibit 6, # <u>24</u> Exhibit 7, # <u>25</u> Exhibit 8, # <u>26</u> Exhibit 9, # <u>27</u> Exhibit 10, # <u>28</u> Exhibit 11, # <u>29</u> Exhibit 12, # <u>30</u> Exhibit 13, # <u>31</u> Exhibit 14, # <u>32</u> Exhibit 15, # <u>33</u> Exhibit 16, # <u>34</u> Exhibit 17, # <u>35</u> Exhibit 18, # <u>36</u> Exhibit 19, # <u>37</u> Exhibit 20, # <u>38</u> Exhibit 21, # <u>39</u> Exhibit 22, # <u>40</u> Exhibit 23, # <u>41</u> Exhibit 24, # <u>42</u> Exhibit 25, # <u>43</u> Exhibit 26, # <u>44</u> Exhibit 27, # <u>45</u> Exhibit 28, # <u>46</u> Exhibit 29, # <u>47</u> Exhibit 30, # <u>48</u> Exhibit 31, # <u>49</u> Exhibit 32, # <u>50</u> Exhibit 33, # <u>51</u> Exhibit 34, # <u>52</u> Exhibit 35, # <u>53</u> Exhibit 36, # <u>54</u> Exhibit 37, # <u>55</u> Exhibit 38, # <u>56</u> Exhibit 39, # <u>57</u> Exhibit 40, # <u>58</u> Exhibit 41, # <u>59</u> Exhibit 42, # <u>60</u> Exhibit 43, # <u>61</u> Exhibit 44, # <u>62</u> Exhibit 45, # <u>63</u> Exhibit 46, # <u>64</u> Exhibit 47, # <u>65</u> Exhibit 48, # <u>66</u> Exhibit 49, # <u>67</u> Exhibit 50, # <u>68</u> Exhibit 51, # <u>69</u> Exhibit 52, # <u>70</u> Exhibit 53, # <u>71</u> Exhibit 54, # <u>72</u> Exhibit 55, # <u>73</u> Proposed Order)(Hoffer, Stewart) (Entered: 02/08/2023) |
| 02/08/2023 | <u>146</u> | *SEALED* SEALED RESPONSE re: <u>120</u> SEALED MOTION *Plaintiff's Motion to Exclude Certain Opinions and Testimony of Defendant KBR's Liability Expert Gary Hewitt* by Kellogg Brown & Root, LLC, filed. (Attachments: # <u>1</u> Appendix, # <u>2</u> Proposed Order) (Harrison, Geoffrey) (Entered: 02/08/2023) |
| 02/08/2023 | <u>147</u> | REDACTION to <u>146</u> Sealed Response, by Kellogg Brown & Root, LLC, filed. (Attachments: # <u>1</u> Appendix, # <u>2</u> Proposed Order)(Harrison, Geoffrey) (Entered: 02/08/2023) |
| 02/08/2023 | <u>148</u> | *SEALED* SEALED RESPONSE re: <u>124</u> MOTION to Exclude Certain Opinions and Testimony of Defendants' Expert Michael Kratochwill by Kellogg Brown & Root, LLC, filed. (Attachments: # <u>1</u> Appendix, # <u>2</u> Proposed Order) (Harrison, Geoffrey) (Entered: 02/08/2023) |
| 02/08/2023 | <u>149</u> | REDACTION to <u>148</u> Sealed Response by Kellogg Brown & Root, LLC, filed. (Attachments: # <u>1</u> Appendix, # <u>2</u> Proposed Order)(Harrison, Geoffrey) (Entered: 02/08/2023) |
| 02/09/2023 | <u>150</u> | *SEALED* SEALED REPLY *in Support of Motion to Take Judicial Notice* re: <u>123</u> Opposed MOTION to Take Judicial Notice of Adjudicative Facts and Foreign Law by Trinseo, S.A., filed. (Attachments: # <u>1</u> Exhibit 1) (Hoffer, Stewart) (Entered: 02/09/2023) |
| 02/09/2023 | <u>151</u> | REPLY in Support of <u>123</u> Opposed MOTION to Take Judicial Notice of Adjudicative Facts and Foreign Law, filed by Trinseo, S.A.. (Attachments: # <u>1</u> Exhibit 1)(Hoffer, Stewart) (Entered: 02/09/2023) |
| 02/10/2023 | <u>152</u> | NOTICE of Appearance by Stephen M. Loftin on behalf of Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 02/10/2023) |
| 02/10/2023 | <u>153</u> | NOTICE of Appearance by Eric Grant on behalf of Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 02/10/2023) |
| 02/10/2023 | <u>154</u> | NOTICE of Appearance by Kasi Chadwick on behalf of Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 02/10/2023) |
| 02/10/2023 | <u>155</u> | NOTICE of Setting. Parties notified. Discovery Hearing set for 2/15/2023 at 10:00 AM By telephone before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 02/10/2023) |
| 02/10/2023 | <u>156</u> | REPLY in Support of <u>122</u> MOTION Motion for Pretrial Ruling on the Admissibility of Certain Evidence, filed by Trinseo, S.A.. (Hoffer, Stewart) |

| | | (Entered: 02/10/2023) |
|---|---|---|
| 02/14/2023 | 157 | NOTICE of Resetting. Parties notified. Discovery Hearing set for 2/23/2023 at 10:00 AM by telephone before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 02/14/2023) |
| 02/16/2023 | 158 | *SEALED* SEALED SURREPLY *in Opposition to Trinseo's* re: 123 Opposed MOTION to Take Judicial Notice of Adjudicative Facts and Foreign Law by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Harrison, Geoffrey) (Entered: 02/16/2023) |
| 02/16/2023 | 159 | REDACTION to 158 Sealed Response, by Kellogg Brown & Root, LLC, filed.(Harrison, Geoffrey) (Entered: 02/16/2023) |
| 02/19/2023 | 160 | *SEALED* SEALED SURREPLY re: 122 MOTION Motion for Pretrial Ruling on the Admissibility of Certain Evidence by Kellogg Brown & Root, LLC, filed. (Harrison, Geoffrey) (Entered: 02/19/2023) |
| 02/19/2023 | 161 | REDACTION to 160 Sealed Response by Kellogg Brown & Root, LLC, filed.(Harrison, Geoffrey) (Entered: 02/19/2023) |
| 02/23/2023 | | (Court only) Set/Cleared Flags. Stayed flag cleared as inadvertently set. (rhawkins) (Entered: 02/23/2023) |
| 02/23/2023 | 162 | AO 435 TRANSCRIPT REQUEST by Plaintiff Trinseo/Stewart Hoffer for Transcript of Telephonic Discovery Hearing on 2/23/23 before Judge Hanen. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Kathy Metzger, filed. (Hoffer, Stewart) (Entered: 02/23/2023) |
| 02/23/2023 | | Minute Entry for proceedings held before Judge Andrew S Hanen. DISCOVERY HEARING held on 2/23/2023. The Court heard argument of the parties on the various discovery issues and made rulings on the Court. Further briefing is due 3/15/2023 with any responses due 3/31/2023. Appearances: Matthew B Allen, Benjamin Francis Foster, Alisa Anne Lipski, Geoffrey L Harrison, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Stewart Hoffer.(Court Reporter: K. Metzger), filed.(rhawkins) (Entered: 02/23/2023) |
| 02/24/2023 | 163 | AO 435 TRANSCRIPT REQUEST by Geoffrey L. Harrison for Transcript of Discovery hearing on 2/23/2023 before Judge Hanen. 3-Day turnaround requested. Court Reporter/Transcriber: Kathy Metzger, filed. (Harrison, Geoffrey) (Entered: 02/24/2023) |
| 02/25/2023 | 164 | TRANSCRIPT re: Discovery Hearing held on 02/23/2023 before Judge Andrew S Hanen. Court Reporter/Transcriber K. Metzger. Ordering Party Stewart Hoffer Release of Transcript Restriction set for 5/26/2023., filed. (Metzger, Katherine) (Entered: 02/25/2023) |
| 02/27/2023 | 165 | Notice of Filing of Official Transcript as to 164 Transcript. Party notified, filed. (RachelWillborg, 4) (Entered: 02/27/2023) |
| 02/27/2023 | 166 | ORDER regarding the parties' discovery issues.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 02/27/2023) |
| 02/27/2023 | 167 | *SEALED* SEALED RESPONSE re: 135 MOTION to Exclude Portions of Defendants' Summary Judgment Evidence by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix, # 2 Proposed Order) (Harrison, Geoffrey) (Entered: 02/27/2023) |

| | | |
|---|---|---|
| 02/27/2023 | 168 | REDACTION to 167 Sealed Response by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix, # 2 Proposed Order)(Harrison, Geoffrey) (Entered: 02/27/2023) |
| 03/01/2023 | 169 | REPLY in Support of 124 MOTION to Exclude Certain Opinions and Testimony of Defendants' Expert Michael Kratochwill, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 03/01/2023) |
| 03/01/2023 | 170 | SEALED REPLY *in Support of* re: 120 SEALED MOTION *Plaintiff's Motion to Exclude Certain Opinions and Testimony of Defendant KBR's Liability Expert Gary Hewitt* by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 03/01/2023) |
| 03/01/2023 | 171 | REPLY in Support of 121 MOTION to Exclude Certain Opinions and Testimony of Defendant KBR's Liability Expert Gary Hewitt (REDACTED), filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 03/01/2023) |
| 03/01/2023 | 172 | *SEALED* SEALED REPLY re: 129 SEALED MOTION *KBR's Motion for Summary Judgment on Trinseo's Alleged Trade Secrets and Common Law Claims* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Harrison, Geoffrey) (Entered: 03/01/2023) |
| 03/01/2023 | 173 | REDACTION to 172 Sealed Response, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed.(Harrison, Geoffrey) (Entered: 03/01/2023) |
| 03/01/2023 | 174 | *SEALED* SEALED REPLY re: 125 SEALED MOTION *to Exclude the Opinions of Thomas Pastore* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Harrison, Geoffrey) (Entered: 03/01/2023) |
| 03/01/2023 | 175 | REDACTION to 174 Sealed Response, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed.(Harrison, Geoffrey) (Entered: 03/01/2023) |
| 03/01/2023 | 176 | *SEALED* SEALED REPLY re: 127 SEALED MOTION *Motion to Exclude the Opinions of Jerry Duane* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Harrison, Geoffrey) (Entered: 03/01/2023) |
| 03/01/2023 | 177 | REDACTION to 176 Sealed Response, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed.(Harrison, Geoffrey) (Entered: 03/01/2023) |
| 03/08/2023 | 178 | *SEALED* SEALED SURREPLY *In Opposition to Trinseo's Motion to Exclude Certain Testimony of KBR's Liability Expert Gary Hewitt* re: 170 Sealed Response by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix) (Harrison, Geoffrey) (Entered: 03/08/2023) |
| 03/08/2023 | 179 | RESPONSE to 170 Sealed Response *KBR's Sur-reply In Opposition to Trinseo's Motion to Exclude Certain Testimony of KBR's Liability Expert Gary Hewitt*, filed |

24-20460.38740

| | | |
|---|---|---|
| | | by Kellogg Brown & Root, LLC. (Attachments: # 1 Appendix Redacted Appendix)(Harrison, Geoffrey) (Entered: 03/08/2023) |
| 03/09/2023 | 180 | *SEALED* SEALED REPLY *Trinseo Reply to KBR Response to Trinseo Motion to Exclude Some Summary Judgment Evidence* re: 167 Sealed Response, 135 MOTION to Exclude Portions of Defendants' Summary Judgment Evidence by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 03/09/2023) |
| 03/09/2023 | 181 | *SEALED* SEALED EXHIBITS *Exhibit 1 to Trinseo Reply to KBR Response to Trinseo Motion to Exclude Some Summary Judgment Evidence* re: 180 Sealed Response, by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 03/09/2023) |
| 03/09/2023 | 182 | REPLY to Response to 135 MOTION to Exclude Portions of Defendants' Summary Judgment Evidence, filed by Trinseo, S.A.. (Attachments: # 1 Appendix, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5)(Hoffer, Stewart) (Entered: 03/09/2023) |
| 03/16/2023 | 183 | *SEALED* SEALED SURREPLY re: 135 MOTION to Exclude Portions of Defendants' Summary Judgment Evidence by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix) (Harrison, Geoffrey) (Entered: 03/16/2023) |
| 03/16/2023 | 184 | REDACTION to 183 Sealed Response by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix)(Harrison, Geoffrey) (Entered: 03/16/2023) |
| 03/16/2023 | 185 | *SEALED* SEALED MOTION *KBR's Brief Explaining the Relevance of Modifications to Trinseo's Alleged Trade Secrets Including Product Formulations* re: 166 Order by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix, # 2 Proposed Order) (Harrison, Geoffrey) (Entered: 03/16/2023) |
| 03/16/2023 | 186 | REDACTION to 185 SEALED MOTION *KBR's Brief Explaining the Relevance of Modifications to Trinseo's Alleged Trade Secrets Including Product Formulations* re: 166 Order by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Appendix, # 2 Proposed Order)(Harrison, Geoffrey) (Entered: 03/16/2023) |
| 03/21/2023 | 187 | SURREPLY to 125 SEALED MOTION *to Exclude the Opinions of Thomas Pastore*, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 03/21/2023) |
| 03/21/2023 | 188 | SURREPLY to 127 SEALED MOTION *Motion to Exclude the Opinions of Jerry Duane*, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 03/21/2023) |
| 03/21/2023 | 189 | *SEALED* SEALED SURREPLY *in Opposition to Defendants' Second Motion for Summary Judgment* re: 129 SEALED MOTION *KBR's Motion for Summary Judgment on Trinseo's Alleged Trade Secrets and Common Law Claims* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1) (Hoffer, Stewart) (Entered: 03/21/2023) |
| 03/21/2023 | 190 | SURREPLY to 129 SEALED MOTION *KBR's Motion for Summary Judgment on Trinseo's Alleged Trade Secrets and Common Law Claims*, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit 1)(Hoffer, Stewart) (Entered: 03/21/2023) |
| 03/28/2023 | 191 | ORDER. The Court finds all four documents in question to be privileged. (Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/29/2023) |
| 03/31/2023 | 192 | SEALED RESPONSE re: 185 SEALED MOTION *KBR's Brief Explaining the Relevance of Modifications to Trinseo's Alleged Trade Secrets Including Product Formulations* re: 166 Order by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11) (Hoffer, Stewart) |

24-20460.38741

| | | |
|---|---|---|
| | | (Entered: 03/31/2023) |
| 03/31/2023 | 193 | RESPONSE in Opposition to 185 SEALED MOTION *KBR's Brief Explaining the Relevance of Modifications to Trinseo's Alleged Trade Secrets Including Product Formulations re: 166 Order*, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11)(Hoffer, Stewart) (Entered: 03/31/2023) |
| 04/03/2023 | | (Court only) ***(PRIVATE ENTRY) Deadlines terminated. New schedule to be entered. (rhawkins) (Entered: 04/03/2023) |
| 04/07/2023 | 194 | *SEALED* SEALED RESPONSE *Defendants' Reply in Support of their Brief Explaining the Relevance of Modifications to Trinseo's Alleged Trade Secrets* re: 193 Response in Opposition to Motion, by Kellogg Brown & Root, LLC, filed. (Harrison, Geoffrey) (Entered: 04/07/2023) |
| 04/07/2023 | 195 | REDACTION to 194 Sealed Response, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Harrison, Geoffrey) (Entered: 04/07/2023) |
| 04/27/2023 | 196 | *SEALED* SEALED SURREPLY *In Opposition to Defendants Brief Explaining the Relevance of Modifications to Trinseos Alleged Trade Secrets Including Product Formulations* re: 194 Sealed Response, by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 04/27/2023) |
| 04/27/2023 | 197 | SURREPLY to 185 SEALED MOTION *KBR's Brief Explaining the Relevance of Modifications to Trinseo's Alleged Trade Secrets Including Product Formulations re: 166 Order*, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Hoffer, Stewart) (Entered: 04/27/2023) |
| 05/02/2023 | 198 | SCHEDULING ORDER. Joint Pretrial Order due by 12/4/2023. Pretrial Conference set for 1/4/2024 at 09:00 AM in Courtroom 9D before Judge Andrew S Hanen. Jury Trial set for 1/8/2024 at 09:00 AM in Courtroom 9D before Judge Andrew S Hanen(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 05/02/2023) |
| 05/30/2023 | 199 | NOTICE of Setting. Parties notified. Discovery Hearing set for 6/2/2023 at 10:00 AM by telephone before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 05/30/2023) |
| 05/30/2023 | 200 | NOTICE of Resetting. Parties notified. Discovery Hearing set for 6/9/2023 at 02:00 PM by telephone before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 05/30/2023) |
| 06/01/2023 | 201 | NOTICE of Resetting. Parties notified. Discovery Hearing set for 6/16/2023 at 10:00 AM by telephone before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 06/01/2023) |
| 06/16/2023 | | Minute Entry for proceedings held before Judge Andrew S Hanen. DISCOVERY HEARING held on 6/16/2023. The Court heard arguments of the parties regarding several discovery disputes and made rulings on the record. Appearances: Matthew B Allen, Benjamin Francis Foster, Katherine Elizabeth Drews, Matthew Colin Behncke, Florence T Chen, Stewart Hoffer. Order to follow.(Court Reporter: K. |

| | | |
|---|---|---|
| | | Miller), filed.(rhawkins) (Entered: 06/16/2023) |
| 06/16/2023 | 202 | ORDER regarding discovery issues. (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 06/16/2023) |
| 06/21/2023 | 203 | AO 435 TRANSCRIPT REQUEST by Plaintiff Trinseo / Stewart Hoffer for Transcript of Discovery Hearing; June 16, 2023; Judge Hanen. 3-Day turnaround requested. Court Reporter/Transcriber: Kathleen Miller, filed. (Hoffer, Stewart) (Entered: 06/21/2023) |
| 06/22/2023 | 204 | AO 435 TRANSCRIPT REQUEST by Florence T. Chen for Transcript of Discovery Hearing on 6/16/23 before Judge Hanen. 3-Day turnaround requested. Court Reporter/Transcriber: Kathleen Miller, filed. (Chen, Florence) (Entered: 06/22/2023) |
| 06/26/2023 | 205 | TRANSCRIPT re: Discovery Hearing, Telephonic held on June 16, 2023 before Judge Andrew S Hanen. Court Reporter/Transcriber Kathleen Miller. Ordering Party Stewart Hoffer Release of Transcript Restriction set for 9/25/2023., filed. (Miller, Kathleen) (Entered: 06/26/2023) |
| 06/27/2023 | 206 | Notice of Filing of Official Transcript as to 205 Transcript,. Party notified, filed. (DarleneHansen, 4) (Entered: 06/27/2023) |
| 07/05/2023 | 207 | Opposed MOTION for Reconsideration of 202 Order by Trinseo, S.A., filed. Motion Docket Date 7/26/2023. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Proposed Order)(Hoffer, Stewart) (Entered: 07/05/2023) |
| 07/26/2023 | 208 | *SEALED* Opposed SEALED RESPONSE re: 207 Opposed MOTION for Reconsideration of 202 Order by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12) (Harrison, Geoffrey) (Entered: 07/26/2023) |
| 07/26/2023 | 209 | REDACTION to 208 Sealed Response,, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(Harrison, Geoffrey) (Entered: 07/26/2023) |
| 08/04/2023 | 210 | REPLY in Support of 207 Opposed MOTION for Reconsideration of 202 Order, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 08/04/2023) |
| 08/11/2023 | 211 | *SEALED* SEALED SURREPLY re: 207 Opposed MOTION for Reconsideration of 202 Order by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix) (Harrison, Geoffrey) (Entered: 08/11/2023) |
| 08/11/2023 | 212 | REDACTION to 211 Sealed Response, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed.(Harrison, Geoffrey) (Entered: 08/11/2023) |

| Date | No. | Description |
|---|---|---|
| 10/03/2023 | 213 | ORDER granting in part and denying in part 92 Motion to Seal. Tab 13 of Docket Entry No. 78 is hereby sealed.(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 10/04/2023) |
| 10/03/2023 | 214 | ORDER denying without prejudice 123 Motion To Take Judicial Notice of Adjudicative Facts and Foreign Law..(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 10/04/2023) |
| 10/04/2023 | 215 | ORDER granting in part and denying in part 122 Motion.(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 10/05/2023) |
| 10/04/2023 | 216 | ORDER granting in part and denying in part 124 Motion to Exclude Certain Opinions and Testimony of Defendants' Expert Michael Kratochwill.(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 10/05/2023) |
| 10/04/2023 | 217 | ORDER granting in part and denying in part 127 Motion to Exclude the Opinions of Jerry Duane..(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 10/05/2023) |
| 10/16/2023 | | (Court only) ***Motion(s) terminated: 109 MOTION for Oral Hearing re: 77 SEALED MOTION *KBR's Motion for Summary Judgment*, 86 MOTION to Exclude KBR's Inadmissible Summary Judgment Evidence as moot. (RhondaHawkins) (Entered: 10/16/2023) |
| 10/27/2023 | 218 | RETURN of Service Executed as to Murray Viard on October 18, 2023 re: Trial Subpoena, filed.(Hoffer, Stewart) (Entered: 10/27/2023) |
| 10/27/2023 | 219 | RETURN of Service Executed as to Robert Stodghill on October 14, 2023 re: Trial Subpoena, filed.(Hoffer, Stewart) (Entered: 10/27/2023) |
| 10/27/2023 | 220 | RETURN of Service Executed as to Peter D. Pavlechko. Ph.d. on October 14, 2023 re: Trial Subpoena, filed.(Hoffer, Stewart) (Entered: 10/27/2023) |
| 10/27/2023 | 221 | RETURN of Service Executed as to Chun Chin "Tom" Hsu on October 12, 2023 re: Trial Subpoena, filed.(Hoffer, Stewart) (Entered: 10/27/2023) |
| 10/27/2023 | 222 | RETURN of Service Executed as to Corporate Representative(s) of Mustang International, Inc. nka Wood Group USA, Inc. on October 11, 2023 re: Trial Subpoena, filed.(Hoffer, Stewart) (Entered: 10/27/2023) |
| 11/30/2023 | 223 | ORDER granting in part and denying in part 120 Sealed Motion. ; granting in part and denying in part 121 Motion to Exclude.(Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 11/30/2023) |
| 11/30/2023 | 224 | ORDER granting in part and denying in part 125 Sealed Motion as to thomas Pastore.(Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 11/30/2023) |
| 11/30/2023 | 225 | ORDER granting in part and denying in part 135 Motion to Exclude regarding summary judgment evidence..(Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 11/30/2023) |
| 12/04/2023 | 226 | Proposed Voir Dire Questions(Harrison, Geoffrey) (Entered: 12/04/2023) |
| 12/04/2023 | 227 | Witness List by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc.(Harrison, Geoffrey) (Entered: 12/04/2023) |

| 12/04/2023 | 228 | Joint Proposed Pretrial Order by Trinseo, S.A. (Attachments: # 1 Exhibit 1 - Pltf Trial Exhibit List, # 2 Exhibit 2 - Pltf Trial Witness List, # 3 Exhibit 3 - Pltf Prop Voir Dire Questions, # 4 Exhibit 4 - Pltf Prop Jury Charge, # 5 Exhibit 6 - Pltf REDACTED Memorandum of Law 1, # 6 Exhibit 6 - Ex 1 to Pltf Memo of Law 1, # 7 Exhibit 6 - Ex 2 to Pltf Memo of Law 1, # 8 Exhibit 6 - Ex 3 to Pltf Memo of Law 1, # 9 Exhibit 7 - Pltf Memorandum of Law 2, # 10 Exhibit 8 - Pltf Memorandum of Law 3, # 11 Exhibit 9 - Pltf Memorandum of Law 4, # 12 Exhibit 10 - Pltf Memorandum of Law 5, # 13 Exhibit 11 - Pltf Memorandum of Law 6)(Hoffer, Stewart) (Entered: 12/04/2023) |
|---|---|---|
| 12/04/2023 | 229 | *SEALED* SEALED MOTION *Plaintiff's Motion in Limine* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1 to Plaintiff Motion in Limine) (Hoffer, Stewart) (Entered: 12/04/2023) |
| 12/04/2023 | 230 | MOTION In Limine *REDACTED Plaintiff's Motion in Limine* by Trinseo, S.A., filed. Motion Docket Date 12/26/2023. (Attachments: # 1 Exhibit 1 to Pltf Mot in Limine)(Hoffer, Stewart) (Entered: 12/04/2023) |
| 12/04/2023 | 231 | Exhibit List by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc.(Harrison, Geoffrey) (Entered: 12/04/2023) |
| 12/04/2023 | 232 | *SEALED* SEALED DOCUMENT *Plaintiff's Memorandum of Law 1* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1 to Pltf Memorandum of Law 1, # 2 Exhibit 2 to Pltf Memorandum of Law 1, # 3 Exhibit 3 to Pltf Memorandum of Law 1) (Hoffer, Stewart) (Entered: 12/04/2023) |
| 12/04/2023 | 233 | Proposed Jury Charge by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc.(Harrison, Geoffrey) (Entered: 12/04/2023) |
| 12/04/2023 | 234 | TRIAL BRIEF *Plaintiff's REDACTED Memorandum of Law 1* by Trinseo, S.A. (Attachments: # 1 Exhibit 1 to Pltf Memorandum of Law, # 2 Exhibit 2 to Pltf Memorandum of Law 1, # 3 Exhibit 3 to Pltf Memorandum of Law 1)(Hoffer, Stewart) (Entered: 12/04/2023) |
| 12/04/2023 | 235 | MOTION to Allow Expert Witnesses to Observe and Consider Evidence Presented at Trial by Trinseo, S.A., filed. Motion Docket Date 12/26/2023. (Attachments: # 1 Proposed Order)(Hoffer, Stewart) (Entered: 12/04/2023) |
| 12/04/2023 | 236 | *SEALED* SEALED MOTION *Defendants' Motions in Limine* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix, # 2 Proposed Order) (Harrison, Geoffrey) (Entered: 12/04/2023) |
| 12/04/2023 | 237 | REDACTION to 236 SEALED MOTION *Defendants' Motions in Limine* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Appendix, # 2 Proposed Order)(Harrison, Geoffrey) (Entered: 12/04/2023) |
| 12/12/2023 | 238 | ORDER granting in part and denying in part 129 Sealed Motion..(Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 12/12/2023) |
| 12/13/2023 | 239 | |

| | | |
|---|---|---|
| | | EMERGENCY MOTION, MOTION for Entry of Order re: for Relief from Inadvertent Publication of Docket No. 238( Motion Docket Date 1/3/2024.) by Trinseo, S.A., filed. (Attachments: # 1 Proposed Order)(Hoffer, Stewart) (Entered: 12/13/2023) |
| 12/13/2023 | 240 | Amended Exhibit List by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc.(Harrison, Geoffrey) (Entered: 12/13/2023) |
| 12/13/2023 | 241 | RETURN of Service Executed as to Bryce Koslan on 11/18/2023 re: Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action, filed.(Harrison, Geoffrey) (Entered: 12/13/2023) |
| 12/13/2023 | 242 | RETURN of Service Executed as to Joshua Levy on 12/04/2023 re: Subpoena to Testify at a Deposition in a Civil Action, filed.(Harrison, Geoffrey) (Entered: 12/13/2023) |
| 12/13/2023 | 243 | RETURN of Service Executed as to Leonard Boyd on 12/7/2023 re: Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action, filed.(Harrison, Geoffrey) (Entered: 12/13/2023) |
| 12/13/2023 | 244 | RETURN of Service Executed as to Bryce B. Koslan on 11/21/2023 re: Trial Subpoena, filed.(Hoffer, Stewart) (Entered: 12/13/2023) |
| 12/14/2023 | 245 | ORDER granting 239 Motion for Emergency; granting 239 Motion for Entry of Order.(Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 12/14/2023) |
| 12/15/2023 | 246 | NOTICE of Setting. Parties notified. Discovery Hearing set for 12/19/2023 at 10:30 AM in Courtroom 9D before Judge Andrew S Hanen, filed. (RhondaHawkins) (Entered: 12/15/2023) |
| 12/19/2023 | 247 | AO 435 TRANSCRIPT REQUEST by Stewart Hoffer for Transcript of Discovery Hearing on 12/19/23 before Judge Hanen. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (Hoffer, Stewart) (Entered: 12/19/2023) |
| 12/19/2023 | 248 | AO 435 TRANSCRIPT REQUEST by Florence T. Chen for Transcript of Discovery Hearing on 12/19/23 before Judge Hanen. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (Chen, Florence) (Entered: 12/19/2023) |
| 12/19/2023 | | Minute Entry for proceedings held before Judge Andrew S Hanen. DISCOVERY HEARING held on 12/19/2023. The Court heard argument of counsel on various discovery disputes and made rulings on the record. Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Stewart Hoffer, Stephen Loftin, Mirranda Granchi.(Court Reporter: G. Dye), filed.(RhondaHawkins) (Entered: 12/19/2023) |
| 12/21/2023 | 249 | ORDER regarding Discovery disputes.(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 12/21/2023) |
| 12/22/2023 | 250 | TRANSCRIPT re: Discovery hearing held on December 19, 2023, before Judge Andrew S Hanen. Court Reporter/Transcriber Dye. Release of Transcript Restriction set for 3/21/2024., filed. (Dye, Gayle) (Entered: 12/22/2023) |

| | | |
|---|---|---|
| 12/22/2023 | 251 | OBJECTIONS , *Optional Completeness Designations, and Counter-Designations to Trinseo's Deposition Designations*, filed by Kellogg Brown & Root, LLC. (Harrison, Geoffrey) (Entered: 12/22/2023) |
| 12/22/2023 | 252 | Amended Exhibit List by Trinseo, S.A.(Hoffer, Stewart) (Entered: 12/22/2023) |
| 12/22/2023 | 253 | OBJECTIONS *Plaintiff's Objections to Defendants' Deposition Page-Line Designations for Trial*, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 12/22/2023) |
| 12/22/2023 | 254 | Plaintiff's Counter-Designations to Defendants' Deposition Page-Line Designations for Trial by Trinseo, S.A., filed.(Hoffer, Stewart) (Entered: 12/22/2023) |
| 12/26/2023 | 255 | Notice of Filing of Official Transcript as to 250 Transcript. Party notified, filed. (ShannonHolden, 4) (Entered: 12/26/2023) |
| 12/28/2023 | 256 | SEALED RESPONSE *Defendants' Response to Plaintiff's Motion in Limine No. 2 [ECF 228-9]* re: 228 Proposed Pretrial Order,, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Exhibit 1) (Noebels, Abigail) (Entered: 12/28/2023) |
| 12/28/2023 | 257 | REDACTION to 256 Sealed Response, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Exhibit 1)(Noebels, Abigail) (Entered: 12/28/2023) |
| 12/28/2023 | 258 | RESPONSE to 228 Proposed Pretrial Order,, *Plaintiff's Pre-Trial Brief on Prejudgment Interest [ECF 228-12]*, filed by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc.. (Behncke, Matthew) (Entered: 12/28/2023) |
| 12/28/2023 | 259 | SEALED RESPONSE *Defendants' Response to Plaintiff's Motion in Limine Nos. 4 and 5 on the Absence of Evidence of Lost Profits and Unjust Enrichment* re: 228 Proposed Pretrial Order,, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Noebels, Abigail) (Entered: 12/28/2023) |
| 12/28/2023 | 260 | REDACTION to 259 Sealed Response, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Noebels, Abigail) (Entered: 12/28/2023) |
| 12/28/2023 | 261 | SEALED RESPONSE *Defendant's Response to Plaintiff's Motion in Limine No. 1 [ECF 232, ECF 229, ECF 228-5]* re: 228 Proposed Pretrial Order,, by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Harrison, Geoffrey) (Entered: 12/28/2023) |
| 12/28/2023 | 262 | SEALED RESPONSE *Defendant's Response to Plaintiff's Memorandum of Law No. 4* re: 228 Proposed Pretrial Order,, by Kellogg Brown & Root, LLC, filed. (Harrison, Geoffrey) (Entered: 12/28/2023) |
| 12/28/2023 | 263 | REDACTION to 261 Sealed Response, by Kellogg Brown & Root, LLC, filed. |

24-20460.38747

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Errata 3)(Harrison, Geoffrey) (Entered: 12/28/2023) |
| 12/28/2023 | 264 | REDACTION to 262 Sealed Response by Kellogg Brown & Root, LLC, filed.(Harrison, Geoffrey) (Entered: 12/28/2023) |
| 12/28/2023 | 265 | RESPONSE to 237 Redacted Document, *Plaintiff's Response to Defendants' Motion in Limine*, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Hoffer, Stewart) (Entered: 12/28/2023) |
| 12/28/2023 | 266 | SEALED RESPONSE *Defendants' Response to Plaintiff's Brief Regarding the Jury's Role in Assessing Unjust Enrichment Damages and Exemplary Damages [ECF 228-13]* re: 228 Proposed Pretrial Order,, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Harrison, Geoffrey) (Entered: 12/28/2023) |
| 12/28/2023 | 267 | REDACTION to 266 Sealed Response, by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed.(Harrison, Geoffrey) (Entered: 12/28/2023) |
| 12/28/2023 | 268 | SEALED RESPONSE *[ECF 229]* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Harrison, Geoffrey) (Entered: 12/28/2023) |
| 12/28/2023 | 269 | REDACTION to 268 Sealed Response by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed.(Harrison, Geoffrey) (Entered: 12/28/2023) |
| 12/29/2023 | 270 | OBJECTIONS to 251 Objections *Plaintiff's Objections to Defendants' Counter-Deposition Page-Line Designations for Trial*, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 12/29/2023) |
| 12/29/2023 | 271 | Objections to Trinseo's First Amended Exhibit List by Kellogg Brown & Root, LLC, filed.(Harrison, Geoffrey) (Entered: 12/29/2023) |
| 12/29/2023 | 272 | OBJECTIONS to 254 Document *KB's Objections to Trinseo's Counter-Designations*, filed by Kellogg Brown & Root, LLC. (Harrison, Geoffrey) (Entered: 12/29/2023) |
| 12/31/2023 | 273 | Opposed SEALED MOTION *Plaintiff's Motion to Exclude Defendants Use of or Testimony About Demonstrative Models and (2) for Additional Relief for Violation of Agreed Protective Order* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order) (Hoffer, Stewart) (Entered: 12/31/2023) |
| 12/31/2023 | 274 | Opposed MOTION to Exclude REDACTED Motion to Exclude Defendants Use of or Testimony About Demonstrative Models and (2) for Additional Relief for Violation of Agreed Protective Order (sealed version at Doc. 273) by Trinseo, S.A., filed. Motion Docket Date 1/22/2024. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order)(Hoffer, Stewart) (Entered: 12/31/2023) |
| 01/02/2024 | 275 | Amended Exhibit List by Trinseo, S.A.(Hoffer, Stewart) # 1 PX001, # 2 PX002, # 3 PX003, # 4 PX004 # 5 PX007, # 6 PX009, # 7 PX013, # 8 PX016, # 9 PX017, # |

10 PS031 # 11 PX035, # 12 PX036, # 13 PX042, # 14 PX044, # 15 PX045, # 16 PX048, # 17 PX053, # 18 PX056) # 19 PX058, # 20 PX072, # 21 PX079, # 22 PX083, # 23 PX090, # 24 PX091, # 25 PX092 # 26 PX100, # 27 PX112, # 28 PX113, # 29 PX147, # 30 PX150, # 31 PX159 # 32 PX167, # 33 PX171, # 34 PX177, # 35 PX179, # 36 PX183, # 37 PX187, # 38 PX189, # 39 PX194 # 40 PX195, # 41 PX201, # 42 PX202, # 43 PX203, # 44 PX206, # 45 PX207, # 46 PX210, # 47 PX212, # 48 PX220, # 49 PX265, # 50 PX272, # 51 PX306, # 52 PX311, # 53 PX366, # 54 PX381, # 55 PX390) # 56 PX403, # 57 PX407, # 58 PX426, # 59 PX434, # 60 PX436, # 61 PX437, # 62 PX442, # 63 PX443, # 64 PX446, # 65 PX447, # 66 PX451, # 67 PX455, # 68 PX456, # 69 PX459, # 70 PX460) # 71 PX462, # 72 PX463, # 73 PX464, # 74 PX469, # 75 PX476, # 76 PX478, # 77 PX498, # 78 PX499 # 79 PX501, # 80 PX502, # 81 PX504, # 82 PX505, # 83 PX506, # 84 PX536) # 85 PX006, #(86) PX008, # 87 PX010, # 88 PX012, # 89 PX014 # 90 PX015, # 91 PX018, # 92 PX019, # 93 PX020, # 94 PX021, # 95 PX022, # 96 PX023, # 97 PX024) # 98 PX025, # 99 PX026, # 100 PX027, # 101 PX028, # 102 PX029, # 103 PX030, # 104 PX032, # 105 PX033 # 106 PX034r, # 107 PX037, # 108 PX038 pages 1-25, # 109 PX038 pages 26-50pm, # 110 PX038 pages 51-75 pm, # 111 PX038 76-100, # 112 PX038 pages 101-125pm, # 113 PX038 pages 126-150, # 114 PX038 151-175, # 115 PX038 pages 176-200pm # 116 PX038 201-226, # 117 PX038 227-265 # 118 PX039, # 119 PX040, # 120 PX043, # 121 PX046, # 122 PX047, # 123 PX049, # 124 PX050 24: # 125 PX051, # 126 PX052 # 127 PX057 PAGES 1-25, # 128 PX057-2, # 129 PX057-3, # 130 PX057-4, # 131 PX059, # 132 PX060 # 133 PX061, # 134 PX063, # 135 PX064, # 136 PX066, # 137 PX067, # 138 PX068, # 139 PX069, # 140 PX070, # 141 PX071, # 142 PX073, # 143 PX074, # 144 PX075, # 145 PX078, # 146 PX080 # 147 PX074, # 148 PX075, # 149 PX078, # 150 PX080, # 151 PX081, # 152 PX082, # 153 PX085, # 154 PX086, # 155 PX087, # 156 PX088, # 157 PX089, # 158 PX093, # 159 PX094 # 160 PX095, # 161 PX096, # 162 PX098, # 163 PX099, # 164 PX101, # 165 PX102, # 166 PX103, # 167 PX104, # 168 PX105, # 169 PX106, # 170 PX107, # 171 PX108, # 172 PX109, # 173 PX110, # 174 PX111, # 175 PX114, # 176 PX115, # 177 PX116 # 178 PX117, # 179 PX118, # 180 PX119, # 181 PX120, # 182 PX121, # 183 PX122, # 184 PX123, # 185 PX124, # 186 PX125, # 187 PX126, # 188 PX127, # 189 PX128, # 190 PX129, # 191 PX130, # 192 PX131, # 193 PX132, # 194 PX133, # 195 PX134, # 196 PX135, # 197 PX136, # 198 PX138, # 199 PX139, # 200 PX140 # 201 PX141, # 202 PX142, # 203 PX143, # 204 PX144, # 205 PX145, # 206 PX146, # 207 PX148, # 208 PX151, # 209 PX153, # 210 PX154, # 211 PX156, # 212 PX157, # 213 PX158, # 214 PX160, # 215 PX161, # 216 PX162, # 217 PX163, # 218 PX164, # 219 PX165, # 220 PX166, # 221 PX168, # 222 PX169, # 223 PX170 # 224 PX172, # 225 PX174, # 226 PX175, # 227 PX176, # 228 PX178, # 229 PX180, # 230 PX181, # 231 PX182, # 232 PX184, # 233 PX185, # 234 PX188, # 235 PX192, # 236 PX193, # 237 PX196, # 238 PX197, # 239 PX198, # 240 PX199, # 241 PX200 # 242 PX204, # 243 PX205, # 244 PX208, # 245 PX209, # 246 PX211, # 247 PX213, # 248 PX214, # 249 PX215, # 250 PX216, # 251 PX217, # 252 PX218, # 253 PX219, # 254 PX221, # 255 PX222, # 256 PX224, # 257 PX225, # 258 PX226, # 259 PX227, # 260 PX228, # 261 PX229, # 262 PX234, # 263 PX235, # 264 PX236, # 265 PX237, # 266 PX238, # 267 PX240 # 268 PX241, # 269 PX242, # 270 PX243, # 271 PX244, # 272 PX245, # 273 PX246, # 274 PX247, # 275 PX248, # 276 PX249, # 277 PX251, # 278 PX252, # 279 PX253, # 280 PX254, # 281 PX255, # 282 PX256, # 283 PX257, # 284 PX258, # 285 PX260 # 286 PX261, # 287 PX262, # 288 PX264, # 289 PX266, # 290 PX267, # 291 PX268, # 292 PX269, # 293 PX270, # 294 PX271, # 295 PX273, # 296 PX274, # 297 PX275 # 298 PX276, # 299 PX277, # 300 PX278 #

24-20460.38749

| | | |
|---|---|---|
| | | 301 PX279, # 302 PX280, # 303 PX281, # 304 PX282, # 305 PX283, # 306 PX284, # 307 PX285, # 308 PX286, # 309 PX287, # 310 PX288, # 311 PX289, # 312 PX290, # 313 PX291, # 314 PX292, # 315 PX293, # 316 PX294, # 317 PX295, # 318 PX296, # 319 PX297, # 320 PX298, # 321 PX299, # 322 PX300 # 323 PX301, # 324 PX302, # 325 PX303, # 326 PX304, # 327 PX305, # 328 PX307, # 329 PX308, # 330 PX309 # 331 PX310, # 332 PX310A, # 333 PX312, # 334 PX313, # 335 PX314, # 336 PX315, # 337 PX316, # 338 PX317, # 339 PX318, # 340 PX319, # 341 PX320, # 342 PX321, # 343 PX323, # 344 PX325, # 345 PX326, # 346 PX327, # 347 PX328, # 348 PX329, # 349 PX330, # 350 PX331, # 351 PX332, # 352 PX333, # 353 PX334, # 354 PX335: # 355 PX336, # 356 PX337, # 357 PX338, # 358 PX339, # 359 PX340, # 360 PX341, # 361 PX342, # 362 PX343, # 363 PX334, # 364 PX335, # 365 PX344, # 366 PX345, # 367 PX346, # 368 PX347, # 369 PX348, # 370 PX349, # 371 PX350 # 372 PX351, # 373 PX352, # 374 PX353, # 375 PX354, # 376 PX355, # 377 PX356, # 378 PX357, # 379 PX358, # 380 PX359, # 381 PX360, # 382 PX361, # 383 PX362, # 384 PX363, # 385 PX364, # 386 PX365, # 387 PX367, # 388 PX368, # 389 PX369, # 390 PX370 # 391 PX371, # 392 PX372, # 393 PX373, # 394 PX374, # 395 PX375, # 396 PX376, # 397 PX377, # 398 PX378, # 399 PX379, # 400 PX380, # 401 PX382, # 402 PX383, # 403 PX385, # 404 PX388, # 405 PX389, # 406 PX391, # 407 PX392, # 408 PX393, # 409 PX394, # 410 PX395, # 411 PX396, # 412 PX397, # 413 PX398, # 414 PX399, # 415 PX400 # 416 PX401, # 417 PX402, # 418 PX404, # 419 PX405, # 420 PX406, # 421 PX408, # 422 PX410, # 423 PX412, # 424 PX413, # 425 PX414, # 426 PX415 # 427 PX416R, # 428 PX417, # 429 PX418, # 430 PX419, # 431 PX420, # 432 PX421, # 433 PX422, # 434 PX423, # 438 PX424, # 439 PX425, # 440 PX427, # 441 PX428, # 442 PX429, # 443 PX430 #(444) PX431, # 445 PX432, # 446 PX433, # 447 PX435, # 448 PX448, # 449 PX450 # 450 PX452, # 451 PX453, # 452 PX454, # 453 PX457, # 454 PX461, # 455 PX465, # 456 PX466, # 457 (p.38770) PX467, # 458 PX468, # 459 PX471, # 460 PX472, # 461 PX473, # 462 PX474, # 463 PX477, # 464 PX479, # 465 PX481, # 466 PX482, # 467 PX483, # 468 PX484, # 469 PX485, # 470 PX487, # 471 PX488, # 472 PX489, # 473 PX492 # 474 PX493, # 475 PX494, # 476 PX495, # 477 PX496, # 478 PX497, # 479 PX503, # 480 PX508, # 481 PX509, # 482 PX510, # 483 PX511, # 484 PX512, # 485 PX513, # 486 PX514, # 487 PX515, # 488 PX516, # 489 PX517, # 490 PX518, # 491 PX519 # 492 PX520r, # 493 PX521, # 494 PX522, # 495 PX523, # 496 PX524, # 497 PX525, # 498 PX526, # 499 PX527, # 500 PX528, # 501 PX529, # 502 PX530, # 503 PX531, # 504 PX532, # 505 PX533, # 506 PX534, # 507 PX535 # 508 PX537, # 509 PX538, # 510 PX539 # 511 PX540, # 512 PX541, # 513 PX542, # 514 PX543, # 515 PX544, # 516 PX545, # 517 PX546, # 518 PX547, # 519 PX548, # 520 PX549, # 521 PX550, # 522 PX551, # 523 PX552, # 524 PX553, # 525 PX554, # 526 PX556, # 527 PX557) (jld4). (Entered: 01/02/2024) |
| 01/03/2024 | 276 | OBJECTIONS to 252 Exhibit List *KBR's Objections to Trinseo's First Amended Exhibit List*, filed by Kellogg Brown & Root, LLC. (Harrison, Geoffrey) (Entered: 01/03/2024) |
| 01/03/2024 | 277 | SEALED RESPONSE re: 273 Opposed SEALED MOTION *Plaintiff's Motion to Exclude Defendants Use of or Testimony About Demonstrative Models and (2) for Additional Relief for Violation of Agreed Protective Order* by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5) (Harrison, Geoffrey) (Entered: 01/03/2024) |

24-20460.38750

| 01/03/2024 | 278 | OBJECTIONS to 240 Exhibit List *Plaintiff Trinseo's Revised Objections to Defendants' Proposed Trial Exhibits*, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 01/03/2024) |
|---|---|---|
| 01/04/2024 | 279 | AO 435 TRANSCRIPT REQUEST by Florence Chen for Transcript of 1/4/2024 pretrial conference - Judge Hanen, 1/5/2024 pretrial conference - Judge Hanen, 1/8/2024 trial through the end of trial - Judge Hanen. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Lanie Smith, filed. (Chen, Florence) (Entered: 01/04/2024) |
| 01/04/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. Final PRETRIAL CONFERENCE held on 1/4/2024. The Court heard argument of counsel on various pretrial matters and made rulings on the record. Plaintiff's exhibits and objections were considered and rulings made on the record. Continuation of Final Pretrial Conference set for 1/5/2024 at 01:00 PM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Stewart Hoffer.(Court Reporter: L. Smith), filed.(RhondaHawkins) (Entered: 01/04/2024) |
| 01/04/2024 | 280 | AO 435 TRANSCRIPT REQUEST by Plaintiff Trinseo / Stewart Hoffer for Transcript of Pretrial Conference (01/04/2024); Pretrial Conference Day 2 (01/05/2024); Trial (each day of trial from 01/08/2024 through end of trial). Realtime turnaround requested. Court Reporter/Transcriber: Lanie Smith, filed. (Hoffer, Stewart) (Entered: 01/04/2024) |
| 01/05/2024 | 281 | MOTION to Quash Trial Subpoena by Leonard Boyd, filed. Motion Docket Date 1/26/2024. (Attachments: # 1 Proposed Order)(Payne, David) (Entered: 01/05/2024) |
| 01/05/2024 | 282 | Amended Exhibit List by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc.(Harrison, Geoffrey) # 1 DX 0003, # 2 DX 0004, # 3 DX 0005, # 4 DX 0006, # 5 DX 0007, # 6 DX 0010, # 7 DX 0011, # 8 DX 0017, # 9 DX 0019, # 10 DX 0023, # 11 DX 0024, # 12 DX 0025, # 13 DX 0026, # 14 DX 0032, # 15 DX 0033, # 16 DX 0037 # 17 DX 0038, # 18 DX 0040, # 19 DX 0042, # 20 DX 0044) # 21 DX 0045, # 22 DX 0048, # 23 DX 0052, # 24 DX 0055, # 25 DX 0063, # 26 DX 0064, # 27 DX 0065, # 28 DX 0068, # 29 DX 0084, # 30 DX 0086, # 31 DX 0087, # 32 DX 0089, # 33 DX 0105, # 34 DX 0106, # 35 DX 0137, # 36 DX 0142, # 37 DX 0144, # 38 DX 0146, # 39 DX 0147, # 40 DX 0150) (jld4). (Entered: 01/05/2024) |
| 01/05/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. Continuation of Final PRETRIAL CONFERENCE held on 1/5/2024. The Court heard arguments and objections to exhibits. Jury Trial set for 1/8/2024 at 09:30 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Stewart Hoffer.(Court Reporter: L. Smith), filed.(RhondaHawkins) (Entered: 01/06/2024) |
| 01/05/2024 | 457 (p.38770) | Defendants Trial EXHIBITS re: 282 Exhibit List,,, (Attachments: # 1 DX 0185, # 2 DX 0202, # 3 DX 0225, # 4 DX 0231, # 5 DX 0237, # 6 DX 0241, # 7 DX 0242, # 8 DX 0243, # 9 DX 0244, # 10 DX 0254, # 11 DX 0257, # 12 DX 0291, # 13 DX 0298, # 14 DX 0303, # 15 DX 0305, # 16 DX 0309, # 17 DX 0311, # 18 DX 0332, # 19 DX 0340, # 20 DX 0384, # 21 DX 0402, # 22 DX 0419, # 23 DX 0437, # 24 |

DX 0452, # 25 DX 0481, # 26 DX 0486, # 27 DX 0489, # 28 DX 0495) # 29 DX
0503, # 30 DX 0506, # 31 DX 0512, # 32 DX 0558, # 33 DX 0570, # 34 DX 0571,
# 35 DX 0576, # 36 DX 0584, # 37 DX 0586, # 38 DX 0587, # 39 DX 0619, # 40
DX 0621, # 41 DX 0635, # 42 DX 0646, # 43 DX 0663, # 44 DX 0675, # 45 DX
0680, # 46 DX 0691, # 47 DX 0743, # 48 DX 0770, # 49 DX 0773, # 50 DX 0799
# 51 DX 0811, # 52 DX 0827, # 53 DX 0828, # 54 DX 0849, # 55 DX 0864, # 56
DX 0872, # 57 DX 0922, # 58 DX 0928, # 59 DX 0969, # 60 DX 0972, # 61 DX
0991, # 62 DX 0995) # 63 DX 1002, # 64 DX 1003, # 65 DX 1005, # 66 DX 1007,
# 67 DX 1010, # 68 DX 1011, # 69 DX 1014, # 70 DX 1022, # 71 DX 1029, # 72
DX 1035, # 73 DX 1101, # 74 DX 1102, # 75 DX 1103, # 76 DX 1119, # 77 DX
1120, # 78 DX 1131, # 79 DX 1150, # 80 DX 1156, # 81 DX 1157, # 82 DX 1158,
# 83 DX 1187, # 84 DX 1222, # 85 DX 1223, # 86 DX 1224, # 87 DX 1225, # 88
DX 1226, # 89 DX 1227, # 90 DX 1228, # 91 DX 1229, # 92 DX 1230, # 93 DX
1231, # 94 DX 1232, # 95 DX 1233, # 96 DX 1234, # 97 DX 1235, # 98 DX 1236,
# 99 DX 1237, # 100 DX 1238, # 101 DX 1239 # 102 DX 1240, # 103 DX 1241, #
104 DX 1242, # 105 DX 1243, # 106 DX 1244, # 107 DX 1245, # 108 DX 1246, #
109 DX 1247, # 110 DX 1248, # 111 DX 1249, # 112 DX 1250, # 113 DX 1251, #
114 DX 1252, # 115 DX 1253, # 116 DX 1254, # 117 DX 1255, # 118 DX 1256, #
119 DX 1257, # 120 DX 1258, # 121 DX 1259, # 122 DX 1260, # 123 DX 1261, #
124 DX 1263, # 125 DX 1264, # 126 DX 1265, # 127 DX 1266, # 128 DX 1268) #
129 DX 1387, # 130 DX 1389, # 131 DX 1391, # 132 DX 1398, # 133 DX 1399, #
134 DX 1400, # 135 DX 1408, # 136 DX 1409, # 137 DX 1414, # 138 DX 1416) #
139 DX 0014, # 140 DX 0015, # 141 DX 0018, # 142 DX 0020, # 143 DX 0021, #
144 DX 0022, # 145 DX 0027, # 146 DX 0028, # 147 DX 0027) (jld4). (Entered:
12/04/2024)

| | | |
|---|---|---|
| 01/07/2024 | 283 | TIMING ORDER (Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 01/07/2024) |
| 01/08/2024 | 284 | NOTICE of Appearance by Warren W. Harris and Walter A. Simons on behalf of Kellogg Brown & Root, LLC, filed. (Harris, Warren) (Entered: 01/08/2024) |
| 01/08/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. FIRST day of JURY TRIAL held on 1/8/2024. The Court and the parties discussed a couple of preliminary issues. Voir dire conducted. Jury chosen, seated and sworn. Preliminary Instructions read to the jury. Opening statements of the parties. Jury released for the day. The Court and parties further discussed objections to exhibits. Continuation of Jury Trial set for 1/9/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer.(Court Reporter: L. Smith/N. Forrest), filed.(RhondaHawkins) (Entered: 01/08/2024) |
| 01/09/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. SECOND day of JURY TRIAL held on 1/9/2024. Testimony of Plaintiff's witness #1 Gerald O. Duane, Jr. Jury released for the day. Further argument of counsel regarding exhibits with rulings on made on the record. Continuation of Jury Trial set for 1/10/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen. Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer.(Court Reporter: L. Smith/N. Forrest), filed.(RhondaHawkins) (Entered: 01/09/2024) |
| 01/09/2024 | | |

| | | ***Set/Reset Hearings: Jury Trial set for 1/10/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen (RhondaHawkins) (Entered: 01/09/2024) |
|---|---|---|
| 01/10/2024 | 285 | ORDER pertaining to deposition designations. (Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 01/10/2024) |
| 01/10/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. THIRD day of JURY TRIAL held on 1/10/2024. Several issues discussed with counsel. Continued testimony of Plaintiffs witness #1 Gerald O. Duane, Jr. Defendants' exhibit 1411 admitted. Jury released for the day. Continuation of Jury Trial set for 1/11/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen. Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer.(Court Reporter: L. Smith/N. Forrest), filed.(RhondaHawkins) (Entered: 01/10/2024) |
| 01/11/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. FOURTH day of JURY TRIAL held on 1/11/2024. Continuation of testimony of Plaintiffs witness #1 Gerold O. Duane, Jr. Testimony of Plaintiffs witness #2 Stephen Harper. Continuation of Jury Trial set for 1/12/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer.(Court Reporter: L. Smith/N. Forrest), filed.(RhondaHawkins) (Entered: 01/11/2024) |
| 01/12/2024 | 286 | TRIAL BRIEF *Plaintiff's Trial Brief Regarding the Jury Charge* by Trinseo, S.A.(Hoffer, Stewart) (Entered: 01/12/2024) |
| 01/12/2024 | 287 | ORDER regarding deposition excerpts for Leonard Boyd (Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 01/12/2024) |
| 01/12/2024 | | Minute EntryFIFTH day of JURY TRIAL held on 1/12/2024 before Judge Andrew S Hanen. Continuation of testimony of Plaintiff's witness #2 Stephen Harper. Testimony of Plaintiff's witness #3 Francis Tsang. Defendants' exhibit 1412 admitted. Continuation of Jury Trial set for 1/16/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer.(Court Reporter: L. Smith/N. Forrest), filed.(RhondaHawkins) (Entered: 01/12/2024) |
| 01/14/2024 | 288 | RESPONSE to 286 Trial Brief *Regarding the Jury Charge*, filed by Kellogg Brown & Root, LLC. (Harris, Warren) (Entered: 01/14/2024) |
| 01/15/2024 | 289 | NOTICE OF RESETTING for Jury Trial set for January 16, 2024 at 12:00 noon., filed. PLEASE NOTE CHANGE IS TO TIME ONLY. (JoanDavenport, 4) (JoanDavenport, 4). (Entered: 01/15/2024) |
| 01/16/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. SIXTH day of JURY TRIAL held on 1/16/2024. The Court admitted Plaintiff's exhibits 535, 537, 539 as redacted in place of the originals of these exhibits. Continuation of testimony of Plaintiff's witness #3 Francis Tsang. Plaintiff's exhibit 164 admitted. Testimony of Plaintiffs witness #4 Eric Wong. Plaintiff's exhibit 257 admitted. Testimony of Plaintiff's witness #5 Chun-Chin Tom Hsu. Defendants' Exhibit 1073 admitted. Jury released for the day. Jury Trial set for 1/17/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, |

| | | |
|---|---|---|
| | | Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer.(Court Reporter: N. Forrest), filed.(RhondaHawkins) (Entered: 01/16/2024) |
| 01/17/2024 | 290 | ORDER regarding depositions of Levy, Marten, and Melton. (Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 01/17/2024) |
| 01/17/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. SEVENTH day of JURY TRIAL held on 1/17/2024. Testimony of Plaintiff's witness #6 Scott Moore. Plaintiff's exhibit 551 admitted. Defendant's exhibit 906 admitted. Testimony of Plaintiff's witness #7 Thomas Pastore. Jury released for the day. Defendant's exhibits 1261, 1263, 1268, 1409 admitted. Continuation of Jury Trial set for 1/18/2024 at 07:30 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer.(Court Reporter: L. Smith/N. Forrest), filed.(RhondaHawkins) (Entered: 01/17/2024) |
| 01/18/2024 | 291 | ORDER regarding deposition of Ogoe(Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 01/18/2024) |
| 01/18/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. EIGHTH day of JURY TRIAL held on 1/18/2024. Hearing held outside the presence of the jury. Hearing testimony of Plaintiff's witness #7 Thomas Pastore. Hearing exhibits admitted for limited purpose. Testimony of Plaintiff's witness #8 Angelo Chacles. Video deposition testimony of Plaintiff's witness #9 Lester Chip Melton. Jury released for the day. Discussion with parties regarding the Charge. Jury Trial set for 1/19/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer.(Court Reporter: L. Smith/N. Forrest), filed.(RhondaHawkins) (Entered: 01/18/2024) |
| 01/19/2024 | 292 | MOTION for *Rule 50(a) Judgment as a Matter of Law* Judgment by Stephen Harper, filed. Motion Docket Date 2/9/2024. (Foster, Benjamin) (Entered: 01/19/2024) |
| 01/19/2024 | 293 | MOTION for *Judgment as a Matter of Law* Judgment by Kellogg Brown & Root, LLC, filed. Motion Docket Date 2/9/2024. (Harrison, Geoffrey) (Entered: 01/19/2024) |
| 01/19/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. NINTH day of JURY TRIAL held on 1/19/2024. Parties argued several matters before the Court. Continuation of video testimony of Plaintiff's witness #9 Lester "Chip" Melton. Testimony of Plaintiff's witness #10 Gary Machetta. Defendant's exhibit 1413 admitted. Plaintiff rests. Video testimony of Defendants' witness #1 Marc Nace. The Court heard argument of counsel regarding Defendants' Motions for Judgment as a Matter of Law and will take the matter under advisement. Video testimony of Defendants' witness Duane Priddy. Jury released for the day. Continuation of Jury Trial set for 1/22/2024 at 8:30 AM. Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer.(Court Reporter: L. Smith/N. Forrest), filed.(RhondaHawkins) Modified on 1/19/2024 (RhondaHawkins, 4). (Entered: 01/19/2024) |

| 01/19/2024 | | ***Set/Reset Deadlines/Hearings: Jury Trial set for 1/22/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen (RhondaHawkins) (Entered: 01/19/2024) |
|---|---|---|
| 01/21/2024 | 294 | TRIAL BRIEF *Plaintiff's Supplemental Brief Regarding the Jury Charge* by Trinseo, S.A.(Grant, Eric) (Entered: 01/21/2024) |
| 01/21/2024 | 295 | MOTION Judgment as a Matter of Law by William Davis, Polycarbonate Resins Consulting, LLC, filed. Motion Docket Date 2/12/2024. (Allen, Matthew) (Entered: 01/21/2024) |
| 01/22/2024 | 296 | ORDER regarding deposition of Koslan.(Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 01/22/2024) |
| 01/22/2024 | 297 | Proposed Jury Charge by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc.(Harris, Warren) (Entered: 01/22/2024) |
| 01/22/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. TENTH day of JURY TRIAL held on 1/22/2024. Video testimony of Defendants' witness #3 Peter Pavlechko, witness #4 Lee Walko. Testimony of Defendants' witness #5 Steve Pringle. Video testimony of Defendants' witness #6 Richard Marten, witness #7 Jim Harrington. Recall of Plaintiff's witness #8 Angelo Chacles. Video testimony of Defendants' witness #8 Leonard Boyd, witness #9 Mitch Biondi, witness #10 Bryce Koslan. Jury released for the day. The Court held the charging conference with the parties and made rulings on the record. Continuation of Jury Trial set for 1/23/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer, Eric Grant.(Court Reporter: L. Smith/N. Forrest), filed.(RhondaHawkins) (Entered: 01/23/2024) |
| 01/23/2024 | 298 | TRIAL BRIEF *Plaintiff's Second Supplemental Brief Regarding the Jury Charge* by Trinseo, S.A.(Grant, Eric) (Entered: 01/23/2024) |
| 01/23/2024 | 299 | Proposed Jury Charge by William Davis, Stephen Harper(Foster, Benjamin) (Entered: 01/23/2024) |
| 01/23/2024 | 300 | AMENDED 293 MOTION, MOTION Judgment as a Matter of Law( Motion Docket Date 2/13/2024.) by Kellogg Brown & Root, LLC, filed. (Harris, Warren) (Entered: 01/23/2024) |
| 01/23/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. ELEVENTH day of JURY TRIAL held on 1/23/2024. Testimony of Defendants' witness #11 Gary Hewitt. Defendants' Exhibit 1416 admitted. Testimony of Defendants' witness #12 David Leathers. Defendants rest. Further argument of the parties regarding the Charge. Plaintiff's motion for judgment as a matter of law overruled. Defendants' motion for judgment as a matter of law overruled. Continuation of Jury Trial set for 1/24/2024 at 09:00 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer, Eric Grant.(Court Reporter: L. Smith/N. Forrest), filed.(RhondaHawkins) (Entered: 01/23/2024) |
| 01/24/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. TWELFTH day of JURY TRIAL held on 1/24/2024. Charge read to the Jury. Closing arguments by |

| | | |
|---|---|---|
| | | the parties. Jury begins deliberations. Jury Note 1 and response. Jury Note 2 which the Court and parties will address on next day of trial. Continuation of Jury Trial set for 1/25/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer, Eric Grant.(Court Reporter: L. Smith), filed.(RhondaHawkins) (Entered: 01/24/2024) |
| 01/24/2024 | 301 | Certification of Trial Exhibits (RhondaHawkins) (Entered: 01/31/2024) |
| 01/25/2024 | | Minute EntryTHIRTEENTH day of JURY TRIAL held on 1/25/2024 for proceedings held before Judge Andrew S Hanen. Continued jury deliberations. Jury Note 3 and response. Jury Notes 4 and 5, no response required. Jury Note 6 and response. Jury released for the day. Continuation of Jury Trial set for 1/26/2024 at 08:30 AM in Courtroom 9D before Judge Andrew S Hanen Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer, Eric Grant.(Court Reporter: L. Smith), filed.(RhondaHawkins) (Entered: 01/26/2024) |
| 01/26/2024 | | Minute Entry for proceedings held before Judge Andrew S Hanen. FOURTEENTH day of JURY TRIAL held on 1/26/2024. Continued jury deliberations. Jury Notes 8, 9 with responses. Jury Note 10. A verdict was reached and announced to the parties. The Jury was released from further service. Appearances: Matthew B Allen, Benjamin Francis Foster, Geoffrey L Harrison, Katherine Elizabeth Drews, Abigail Claire Noebels, Matthew Colin Behncke, Florence T Chen, Warren Wayne Harris, Stewart Hoffer, Eric Grant.(Court Reporter: N. Forrest), filed.(RhondaHawkins) (Entered: 01/26/2024) |
| 01/26/2024 | 302 | Court's Exhibit List (RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 303 | Jury Charge(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 304 | Jury Note No. 1 (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 305 | Court's Response to Jury Note No. 1(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 306 | Jury Note No. 2 (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 307 | Court's Response to Jury Note No. 2(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 308 | Jury Note No. 3 (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 309 | Court's Response to Jury Note No. 3(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 310 | Jury Note No. 4 (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 311 | Jury Note No. 5 (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 312 | Jury Note No. 6 (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |

| 01/26/2024 | 313 | Court's Response to Jury Note No. 6(RhondaHawkins) (Entered: 01/31/2024) |
|---|---|---|
| 01/26/2024 | 314 | Jury Note No. 7 (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 315 | Court's Response to Jury Note No. 7(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 316 | Jury Note No. 8 (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 317 | Court's Response to Jury Note No. 8(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 318 | Jury Note No. 9 (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 319 | Court's Response to Jury Note No. 9(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 320 | Jury Note No. 10 (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |
| 01/26/2024 | 321 | JURY VERDICT (Attachments: # 1 Unredacted attachment)(RhondaHawkins) (Entered: 01/31/2024) |
| 02/01/2024 | 322 | MOTION for Leave to File Excess Pages by Kellogg Brown & Root, LLC, filed. Motion Docket Date 2/22/2024. (Attachments: # 1 Proposed Order)(Harrison, Geoffrey) (Entered: 02/01/2024) |
| 02/02/2024 | 323 | Certification of Withdrawal of Trial Exhibits by Trinseo, S.A.(RhondaHawkins) (Entered: 02/06/2024) |
| 02/14/2024 | 324 | Certification of Withdrawal of Trial Exhibits by William Davis, Stephen Harper, Kellogg Brown & Root, LLC, Polycarbonate Consulting Services, Inc., Polycarbonate Resins Consulting, LLC, Steve Harper Consulting, Inc.(RhondaHawkins) (Entered: 02/14/2024) |
| 02/27/2024 | 325 | ORDER granting 322 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 02/27/2024) |
| 03/01/2024 | 326 | SEALED MOTION *KBR's Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings* by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Proposed Order) (Harrison, Geoffrey) (Entered: 03/01/2024) |
| 03/01/2024 | 327 | REDACTION to 326 SEALED MOTION *KBR's Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings* by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Proposed Order)(Harrison, Geoffrey) (Entered: 03/01/2024) |
| 03/06/2024 | 328 | Opposed SEALED MOTION *for Entry of Final Judgment against Defendants Kellogg Brown & Root, LLC and the Harper Defendants* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 3, # 2 Exhibit 4, # 3 Exhibit 5) (Hoffer, Stewart) (Entered: 03/06/2024) |
| 03/06/2024 | 329 | Opposed MOTION for *REDACTED Motion for Entry of Final Judgment Against Defendants Kellogg Brown & Root, LLC and the Harper Defendants* Judgment by Trinseo, S.A., filed. Motion Docket Date 3/27/2024. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Proposed Order)(Hoffer, Stewart) (Entered: 03/06/2024) |

| | | |
|---|---|---|
| 03/06/2024 | 330 | Opposed SEALED MOTION *for Entry of Permanent Injunction Against Defendants Kellogg Brown & Root, LLC and the Harper Defendants AND FOR Appointment of Independent Monitor* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Hoffer, Stewart) (Entered: 03/06/2024) |
| 03/06/2024 | 331 | Opposed MOTION for Entry of Order re: Entry of Permanent Injunction Against Defendants Kellogg Brown & Root, LLC and the Harper Defendants AND FOR Appointment of Independent Monitor by Trinseo, S.A., filed. Motion Docket Date 3/27/2024. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Proposed Order)(Hoffer, Stewart) (Entered: 03/06/2024) |
| 03/14/2024 | 332 | ORDER denying 207 Motion for Reconsideration.(Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 03/14/2024) |
| 03/14/2024 | 333 | SEALED MOTION *Motion for Judgment as a Matter of Law under Rule 50(b) and Motion for Judgment on Partial Findings of Law under Rule 52(c)* by Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc., filed. (Foster, Benjamin) (Entered: 03/14/2024) |
| 03/14/2024 | 334 | MOTION for *Motion for Judgment as a Matter of Law under Rule 50(b) and Motion for Judgment on Partial Findings of Law under Rule 52(c)* Judgment by Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc., filed. Motion Docket Date 4/4/2024. (Foster, Benjamin) (Entered: 03/14/2024) |
| 03/17/2024 | 335 | Transcript (Sealed) of proceedings held on held on 1/8/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 336 | Transcript (Sealed) of proceedings held on held on 1/9/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 337 | Transcript (Sealed) of proceedings held on held on 1/10/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 338 | Transcript (Sealed) of proceedings held on held on 1/11/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 339 | Transcript (Sealed) of proceedings held on held on 1/12/24., filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 340 | Transcript (Sealed) of proceedings held on held on 1/12/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 341 | Transcript (Sealed) of proceedings held on held on 1/16/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 342 | Transcript (Sealed) of proceedings held on held on 1/17/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 343 | Transcript (Sealed) of proceedings held on held on 1/17/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) |

| | | (Entered: 03/17/2024) |
|---|---|---|
| 03/17/2024 | 344 | Transcript (Sealed) of proceedings held on held on 1/18/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 345 | Transcript (Sealed) of proceedings held on held on 1/19/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 346 | Transcript (Sealed) of proceedings held on held on 1/22/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 347 | Transcript (Sealed) of proceedings held on held on 1/23/24., filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/17/2024 | 348 | Transcript (Sealed) of proceedings held on held on 1/26/24. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC, filed. (Forrest, Nichole) (Entered: 03/17/2024) |
| 03/25/2024 | 349 | STIPULATION re: Joint Stipulation Regarding Post-Verdict Motions Briefing Schedule by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 03/25/2024) |
| 04/02/2024 | 350 | SEALED MOTION *FOR NEW TRIAL OR REMITTITUR* by Kellogg Brown & Root, LLC, filed. (Harrison, Geoffrey) (Entered: 04/02/2024) |
| 04/02/2024 | 351 | REDACTION to 350 SEALED MOTION *FOR NEW TRIAL OR REMITTITUR* by Kellogg Brown & Root, LLC, filed. (Harrison, Geoffrey) (Entered: 04/02/2024) |
| 04/11/2024 | 352 | Opposed MOTION for Leave to File Excess Pages by Trinseo, S.A., filed. Motion Docket Date 5/2/2024. (Attachments: # 1 Proposed Order) (Hoffer, Stewart) (Entered: 04/11/2024) |
| 04/11/2024 | 353 | ORDER granting 349 Joint Stipulation Regarding Post-Verdict Motions Briefing Schedule. (Signed by Judge Andrew S Hanen) Parties notified. (jld4) (Entered: 04/11/2024) |
| 04/11/2024 | 354 | SEALED RESPONSE re: 326 SEALED MOTION *KBR's Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1) (Hoffer, Stewart) (Entered: 04/11/2024) |
| 04/11/2024 | 355 | RESPONSE in Opposition to 326 SEALED MOTION *KBR's Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings*, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit 1) (Hoffer, Stewart) (Entered: 04/11/2024) |
| 04/15/2024 | 356 | STIPULATION re: Agreed Amended Stipulation Regarding Post-Verdict Motions Briefing Schedule by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 04/15/2024) |
| 04/15/2024 | 357 | SEALED RESPONSE re: 330 Opposed SEALED MOTION *for Entry of Permanent Injunction Against Defendants Kellogg Brown & Root, LLC and the Harper Defendants AND FOR Appointment of Independent Monitor* by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Exhibit 1, # 2 Proposed Order) (Harrison, Geoffrey) (Entered: 04/15/2024) |

| 04/15/2024 | <u>358</u> | REDACTION to <u>357</u> Sealed Response, by Kellogg Brown & Root, LLC, filed. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Proposed Order) (Harrison, Geoffrey) (Entered: 04/15/2024) |
|---|---|---|
| 04/15/2024 | <u>359</u> | SEALED RESPONSE re: <u>328</u> Opposed SEALED MOTION *for Entry of Final Judgment against Defendants Kellogg Brown & Root, LLC and the Harper Defendants* by Kellogg Brown & Root, LLC, filed. (Attachments: # <u>1</u> Proposed Order) (Harrison, Geoffrey) (Entered: 04/15/2024) |
| 04/15/2024 | <u>360</u> | REDACTION to <u>359</u> Sealed Response, by Kellogg Brown & Root, LLC, filed. (Attachments: # <u>1</u> Proposed Order) (Harrison, Geoffrey) (Entered: 04/15/2024) |
| 04/15/2024 | <u>361</u> | RESPONSE to Motion for Entry of Final Judgment and Motion for Entry of Permanent Injunction by William Davis, filed. (Allen, Matthew) Modified on 4/16/2024 (bli4). (Entered: 04/15/2024) |
| 04/18/2024 | <u>362</u> | RESPONSE in Opposition to <u>328</u> Opposed SEALED MOTION *for Entry of Final Judgment against Defendants Kellogg Brown & Root, LLC and the Harper Defendants*, filed by Stephen Harper, Steve Harper Consulting, Inc.. (Foster, Benjamin) (Entered: 04/18/2024) |
| 04/18/2024 | <u>363</u> | RESPONSE in Opposition to <u>330</u> Opposed SEALED MOTION *for Entry of Permanent Injunction Against Defendants Kellogg Brown & Root, LLC and the Harper Defendants AND FOR Appointment of Independent Monitor*, filed by Stephen Harper, Steve Harper Consulting, Inc.. (Foster, Benjamin) (Entered: 04/18/2024) |
| 04/23/2024 | <u>364</u> | STIPULATION re: Joint Stipulated Briefing Schedule Regarding KBR's Alternative Motion for New Trial and Remittitur (Doc. No. 350) by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 04/23/2024) |
| 04/26/2024 | <u>365</u> | Transcript (Sealed) of proceedings held on held on 1/4/2024. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | <u>366</u> | Transcript (Sealed) of proceedings held on held on 1/5/2024. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | <u>367</u> | Transcript (Sealed) of proceedings held on held on 1/8/24. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | <u>368</u> | Transcript (Sealed) of proceedings held on held on 1/9/24. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | <u>369</u> | Transcript (Sealed) of proceedings held on held on 1/10/2024. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | <u>370</u> | Transcript (Sealed) of proceedings held on held on 1/11/2024. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | <u>371</u> | Transcript (Sealed) of proceedings held on held on 1/12/2024. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | <u>372</u> | Transcript (Sealed) of proceedings held on held on 1/17/24. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | <u>373</u> | Transcript (Sealed) of proceedings held on held on 1/18/2024. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |

| 04/26/2024 | 374 | Transcript (Sealed) of proceedings held on held on 1/19/24. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
|---|---|---|
| 04/26/2024 | 375 | Transcript (Sealed) of proceedings held on held on 1/22/2024. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | 376 | Transcript (Sealed) of proceedings held on held on 1/23/24. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | 377 | Transcript (Sealed) of proceedings held on held on 1/24/24. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | 378 | Transcript (Sealed) of proceedings held on held on 1/25/24. Court Reporter/Transcriber Lanie Smith, filed. (LanieSmith, 4) (Entered: 04/26/2024) |
| 04/26/2024 | 379 | SEALED RESPONSE re: 333 SEALED MOTION *Motion for Judgment as a Matter of Law under Rule 50(b) and Motion for Judgment on Partial Findings of Law under Rule 52(c)* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1-Cumulative Transcript) (Hoffer, Stewart) (Entered: 04/26/2024) |
| 04/26/2024 | 380 | RESPONSE in Opposition to 333 SEALED MOTION *Motion for Judgment as a Matter of Law under Rule 50(b) and Motion for Judgment on Partial Findings of Law under Rule 52(c)*, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit 1) (Hoffer, Stewart) (Entered: 04/26/2024) |
| 04/26/2024 | 381 | SEALED RESPONSE re: 350 SEALED MOTION *FOR NEW TRIAL OR REMITTITUR* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1-Cumulative Transcript) (Hoffer, Stewart) (Entered: 04/26/2024) |
| 04/26/2024 | 382 | RESPONSE in Opposition to 350 SEALED MOTION *FOR NEW TRIAL OR REMITTITUR*, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit 1-Cumulative Transcript) (Hoffer, Stewart) (Entered: 04/26/2024) |
| 05/01/2024 | 383 | REPLY to Response to 361 MOTION for Permanent Injunction, 328 Opposed SEALED MOTION *for Entry of Final Judgment against Defendants Kellogg Brown & Root, LLC and the Harper Defendants*, filed by Trinseo, S.A.. (Grant, Eric) (Entered: 05/01/2024) |
| 05/02/2024 | 384 | SEALED REPLY *in Support of* re: 326 SEALED MOTION *KBR's Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings* by Kellogg Brown & Root, LLC, filed. (Harrison, Geoffrey) (Entered: 05/02/2024) |
| 05/02/2024 | 385 | REDACTION to 384 Sealed Response by Kellogg Brown & Root, LLC, filed. (Harrison, Geoffrey) (Entered: 05/02/2024) |
| 05/06/2024 | 386 | Unopposed MOTION for Leave to File 30-Page Reply in Support of its JMOL (in reply to Trinseos unauthorized 59-page response brief) by Kellogg Brown & Root, LLC, filed. Motion Docket Date 5/28/2024. (Attachments: # 1 Proposed Order Proposed Order Granting KBRs Unopposed Motion for Permission to File a 30-Page Reply in Support of its JMOL (in reply to Trinseos unauthorized 59-page response brief)) (Drews, Katherine) (Entered: 05/06/2024) |
| 05/06/2024 | 387 | SEALED REPLY *in Support of* re: 330 Opposed SEALED MOTION *for Entry of Permanent Injunction Against Defendants Kellogg Brown & Root, LLC and the Harper Defendants AND FOR Appointment of Independent Monitor* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1-Excerpts of Cumulative Transcript, # 2 |

| | | |
|---|---|---|
| | | Exhibit 2-Aspen Tech Hittner Inj) (Hoffer, Stewart) (Entered: 05/06/2024) |
| 05/06/2024 | 388 | REPLY in Support of 330 Opposed SEALED MOTION *for Entry of Permanent Injunction Against Defendants Kellogg Brown & Root, LLC and the Harper Defendants AND FOR Appointment of Independent Monitor*, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit 1-Excerpts from Cumulative Transcript, # 2 Exhibit 2-Aspen Tech Hittner Inj) (Hoffer, Stewart) (Entered: 05/06/2024) |
| 05/06/2024 | 389 | SEALED REPLY *in Support of* re: 328 Opposed SEALED MOTION *for Entry of Final Judgment against Defendants Kellogg Brown & Root, LLC and the Harper Defendants* by Trinseo, S.A., filed. (Attachments: # 1 Exhibit 1-Excerpt from Cumulative Transcript) (Hoffer, Stewart) (Entered: 05/06/2024) |
| 05/06/2024 | 390 | REPLY in Support of 328 Opposed SEALED MOTION *for Entry of Final Judgment against Defendants Kellogg Brown & Root, LLC and the Harper Defendants*, filed by Trinseo, S.A.. (Attachments: # 1 Exhibit 1-Excerpt from Cumulative Transcript) (Hoffer, Stewart) (Entered: 05/06/2024) |
| 05/09/2024 | 391 | REPLY to Response to 328 Opposed SEALED MOTION *for Entry of Final Judgment against Defendants Kellogg Brown & Root, LLC and the Harper Defendants*, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 05/09/2024) |
| 05/13/2024 | 392 | SEALED REPLY *in Support of KBR's Motion for New Trial or Remittitur* re: 382 Response in Opposition to Motion by Kellogg Brown & Root, LLC, filed. (Harrison, Geoffrey) (Entered: 05/13/2024) |
| 05/13/2024 | 393 | REDACTION to 392 Sealed Response by Kellogg Brown & Root, LLC, filed. (Harrison, Geoffrey) (Entered: 05/13/2024) |
| 05/17/2024 | 394 | STIPULATION re: Harper Defendants Post Trial Breifing by Stephen Harper, filed. (Foster, Benjamin) (Entered: 05/17/2024) |
| 05/20/2024 | 395 | STIPULATION re: Amended Sur-Reply Deadlines by Kellogg Brown & Root, LLC, filed. (Drews, Katherine) (Entered: 05/20/2024) |
| 05/20/2024 | 396 | SEALED REPLY *Stephen Harper, Steve Harper Consulting, Inc. and Polycarbonate Consulting Services, Inc.s Reply in Support of the Harper Defendants Renewed Motion for Judgment As a Matter of Law.* re: 333 SEALED MOTION *Motion for Judgment as a Matter of Law under Rule 50(b) and Motion for Judgment on Partial Findings of Law under Rule 52(c)* by Stephen Harper, filed. (Foster, Benjamin) (Entered: 05/20/2024) |
| 05/20/2024 | 397 | REPLY in Support of 334 MOTION for *Motion for Judgment as a Matter of Law under Rule 50(b) and Motion for Judgment on Partial Findings of Law under Rule 52(c)* Judgment, filed by Stephen Harper. (Foster, Benjamin) (Entered: 05/20/2024) |
| 05/21/2024 | 398 | ORDER granting 386 Motion for Leave to File.(Signed by Judge Andrew S Hanen) Parties notified. (jld4) (Entered: 05/22/2024) |
| 05/22/2024 | 399 | SEALED SURREPLY re: 326 SEALED MOTION *KBR's Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings* by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 05/22/2024) |
| 05/22/2024 | 400 | SURREPLY to 326 SEALED MOTION *KBR's Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings*, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 05/22/2024) |

| 05/27/2024 | [401](#) | First SEALED SURREPLY *Against Trinseo's Motion for Injunction and Independent Monitor* by Kellogg Brown & Root, LLC, filed. (Drews, Katherine) (Entered: 05/27/2024) |
|---|---|---|
| 05/27/2024 | [402](#) | SURREPLY to [330](#) Opposed SEALED MOTION *for Entry of Permanent Injunction Against Defendants Kellogg Brown & Root, LLC and the Harper Defendants AND FOR Appointment of Independent Monitor*, filed by Kellogg Brown & Root, LLC. (Drews, Katherine) (Entered: 05/27/2024) |
| 05/27/2024 | [403](#) | First SEALED SURREPLY *Against Trinseo's Motion for Entry of Judgment* by Kellogg Brown & Root, LLC, filed. (Drews, Katherine) (Entered: 05/27/2024) |
| 05/27/2024 | [404](#) | SURREPLY to [328](#) Opposed SEALED MOTION *for Entry of Final Judgment against Defendants Kellogg Brown & Root, LLC and the Harper Defendants*, filed by Kellogg Brown & Root, LLC. (Drews, Katherine) (Entered: 05/27/2024) |
| 05/28/2024 | [405](#) | SURREPLY to [330](#) Opposed SEALED MOTION *for Entry of Permanent Injunction Against Defendants Kellogg Brown & Root, LLC and the Harper Defendants AND FOR Appointment of Independent Monitor*, [331](#) Opposed MOTION for Entry of Order re: Entry of Permanent Injunction Against Defendants Kellogg Brown & Root, LLC and the Harper Defendants AND FOR Appointment of Independent Monitor, filed by Stephen Harper, Polycarbonate Consulting Services, Inc., Steve Harper Consulting, Inc.. (Foster, Benjamin) (Entered: 05/28/2024) |
| 05/28/2024 | [406](#) | SEALED SURREPLY *to Harper Defendants'* re: [333](#) SEALED MOTION *Motion for Judgment as a Matter of Law under Rule 50(b) and Motion for Judgment on Partial Findings of Law under Rule 52(c)* by Trinseo, S.A., filed. (Attachments: # [1](#) Exhibit 1) (Hoffer, Stewart) (Entered: 05/28/2024) |
| 05/28/2024 | [407](#) | SURREPLY to [333](#) SEALED MOTION *Motion for Judgment as a Matter of Law under Rule 50(b) and Motion for Judgment on Partial Findings of Law under Rule 52(c)*, filed by Trinseo, S.A.. (Attachments: # [1](#) Exhibit 1) (Hoffer, Stewart) (Entered: 05/28/2024) |
| 05/28/2024 | [408](#) | SEALED SURREPLY *in Opposition of KBR's* re: [350](#) SEALED MOTION *FOR NEW TRIAL OR REMITTITUR* by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 05/28/2024) |
| 05/28/2024 | [409](#) | SURREPLY to [350](#) SEALED MOTION *FOR NEW TRIAL OR REMITTITUR*, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 05/28/2024) |
| 09/11/2024 | [410](#) | Sealed ORDER. Copies provided to Counsel of record, filed. (rsh4) (Entered: 09/11/2024) |
| 09/11/2024 | [411](#) | PERMANENT INJUNCTION (Signed by Judge Andrew S Hanen) Parties notified. (rsh4) (Entered: 09/11/2024) |
| 09/11/2024 | [412](#) | FINAL JUDGMENT. Case terminated on 9/11/2024(Signed by Judge Andrew S Hanen) Parties notified. (rsh4) (Entered: 09/11/2024) |
| 10/03/2024 | [413](#) | SEALED MOTION *to Suspend or Modify Injunction in Part Pending Appeal, or Alternatively to Temporarily Suspend or Modify Injunction in Part* by Kellogg Brown & Root, LLC, filed. (Attachments: # [1](#) Affidavit Declaration of Raj Gandhi) (Harrison, Geoffrey) (Entered: 10/03/2024) |
| 10/03/2024 | [414](#) | |

| | | |
|---|---|---|
| | | REDACTION to 413 SEALED MOTION *to Suspend or Modify Injunction in Part Pending Appeal, or Alternatively to Temporarily Suspend or Modify Injunction in Part* by Kellogg Brown & Root, LLC, filed. (Attachments: # 1 Affidavit Declaration of Raj Gandhi) (Harrison, Geoffrey) (Entered: 10/03/2024) |
| 10/03/2024 | 415 | Opposed MOTION to Amend ( Motion Docket Date 10/24/2024.), MOTION to Modify Permanent Injunction by Trinseo, S.A., filed. (Attachments: # 1 Proposed Order Redlined Proposed Amendment-Modification to Permanent Injunction) (Hoffer, Stewart) (Entered: 10/03/2024) |
| 10/03/2024 | 416 | MOTION for New Trial by Trinseo, S.A., filed. Motion Docket Date 10/24/2024. (Attachments: # 1 Proposed Order) (Hoffer, Stewart) (Entered: 10/03/2024) |
| 10/09/2024 | 417 | Opposed MOTION to Modify the Protective Order [Doc. 26 in C.A. No. 4:20-cv-04051] by Trinseo, S.A., filed. Motion Docket Date 10/30/2024. (Attachments: # 1 Exhibit 1-J Duane Declaration, # 2 Exhibit 2-03.23.21 Hearing Transcript, # 3 Exhibit 3-Protective Order, # 4 Proposed Order) (Hoffer, Stewart) (Entered: 10/09/2024) |
| 10/11/2024 | 418 | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 411 Permanent Injunction, 412 Final Judgment by Trinseo, S.A. (Filing fee $ 605, receipt number ATXSDC-32325574), filed. (Hoffer, Stewart) (Entered: 10/11/2024) |
| 10/15/2024 | 419 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 418 Notice of Appeal. Fee status: Paid, filed. (Attachments: # 1 NOA) (dar1) (Entered: 10/15/2024) |
| 10/16/2024 | 420 | EMERGENCY MOTION by Kellogg Brown & Root, LLC, filed. Motion Docket Date 11/6/2024. (Attachments: # 1 Proposed Order) (Harrison, Geoffrey) (Entered: 10/16/2024) |
| 10/16/2024 | 421 | ORDER granting 420 EMERGENCY MOTION, 413 SEALED MOTION *to Suspend or Modify Injunction in Part Pending Appeal, or Alternatively to Temporarily Suspend or Modify Injunction in Part*. The Court partially stays its Order of Injunction (at docket entry no 411) (Signed by Judge Andrew S Hanen) Parties notified. (jld4) (Entered: 10/16/2024) |
| 10/18/2024 | 422 | NOTICE OF CROSS APPEAL to US Court of Appeals for the Fifth Circuit re: 411 Permanent Injunction, 412 Final Judgment by Kellogg Brown & Root, LLC (Filing fee $ 605, receipt number ATXSDC-32357182), filed. (Harris, Warren) (Entered: 10/18/2024) |
| 10/18/2024 | 423 | NOTICE OF CROSS APPEAL to US Court of Appeals for the Fifth Circuit re: 411 Permanent Injunction, 412 Final Judgment by Stephen Harper (Filing fee $ 605, receipt number ATXSDC-32357735), filed. (Foster, Benjamin) (Entered: 10/18/2024) |
| 10/21/2024 | 424 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 422 Notice of Appeal - Cross Appeal. Fee status: Paid. Reporter(s): N. Forrest, L. Smith, filed. (Attachments: # 1 Notice of Appeal) (sac1) (Entered: 10/21/2024) |
| 10/21/2024 | | Appeal Review Notes re: 422 Notice of Appeal - Cross Appeal. Fee status: Paid. The appeal filing fee has been paid.Hearings were held in the case. DKT13 transcript order form(s) due within 14 days of the filing of the notice of |

| | | |
|---|---|---|
| | | appeal.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 5. Pending the filing of trial exhibits, filed. (sac1) (Entered: 10/21/2024) |
| 10/21/2024 | 425 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 423 Notice of Appeal - Cross Appeal. Fee status: Paid. Reporter(s): N. Forrest, L. Smith, filed. (Attachments: # 1 Notice of Appeal) (sac1) (Entered: 10/21/2024) |
| 10/21/2024 | | Appeal Review Notes re: 423 Notice of Appeal - Cross Appeal. Fee status: Paid. The appeal filing fee has been paid.Hearings were held in the case. DKT13 transcript order form(s) due within 14 days of the filing of the notice of appeal.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 5. Pending the filing of trial exhibits, filed. (sac1) (Entered: 10/21/2024) |
| 10/22/2024 | | Notice of Assignment of USCA No. 24-20460 re: 418 Notice of Appeal, filed. (sac1) (Entered: 10/22/2024) |
| 10/24/2024 | 426 | RESPONSE to 415 Opposed MOTION to Amend MOTION to Modify Permanent Injunction filed by Kellogg Brown & Root, LLC. (Attachments: # 1 Exhibit, # 2 Proposed Order) (Harrison, Geoffrey) (Entered: 10/24/2024) |
| 10/24/2024 | 427 | RESPONSE to 416 MOTION for New Trial filed by Kellogg Brown & Root, LLC. (Attachments: # 1 Proposed Order) (Harrison, Geoffrey) (Entered: 10/24/2024) |
| 10/24/2024 | 428 | SEALED DOCUMENT by Kellogg Brown & Root, LLC, filed. (Harrison, Geoffrey) (Entered: 10/24/2024) |
| 10/24/2024 | 429 | RESPONSE in Opposition to 415 Opposed MOTION to Amend MOTION to Modify Permanent Injunction, filed by Stephen Harper. (Foster, Benjamin) (Entered: 10/24/2024) |
| 10/24/2024 | 430 | RESPONSE in Opposition to 416 MOTION for New Trial, filed by Stephen Harper. (Foster, Benjamin) (Entered: 10/24/2024) |
| 10/24/2024 | 431 | SEALED DOCUMENT by Stephen Harper, filed. (Foster, Benjamin) (Entered: 10/24/2024) |
| 10/25/2024 | 432 | DKT13 TRANSCRIPT ORDER REQUEST by Trinseo/Eric Grant. Transcript is already on file in Clerks office regarding Discovery Hearing on 12/19/23 before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Gayle Dye. This order form relates to the following: 250 Transcript, Discovery Hearing, 418 Notice of Appeal, filed. (Hoffer, Stewart) (Entered: 10/25/2024) |
| 10/25/2024 | 433 | DKT13 TRANSCRIPT ORDER REQUEST by Plaintiff Trinseo/Eric Grant. Transcript is already on file in Clerks office regarding Pretrial Conference (01/04/2024); Pretrial Conference Day 2 (01/05/2024); Trial (each day of trial from 01/08/2024 through end of trial) before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Lanie Smith. This order form relates to the following: Jury Trial,,, Jury Trial,,, Jury Trial,, 371 Transcript (Sealed), 369 Transcript (Sealed), 367 Transcript (Sealed), Jury Trial,, Jury Trial,,, 378 Transcript (Sealed), 376 Transcript (Sealed), 374 Transcript (Sealed), 375 Transcript (Sealed), 418 Notice of Appeal, 368 Transcript (Sealed), Pretrial Conference,, Jury Trial,, 370 Transcript (Sealed), Jury Trial,, Jury Trial,, Pretrial Conference, Jury Trial,,,, 372 Transcript (Sealed), 365 Transcript (Sealed), 373 Transcript (Sealed), 377 |

| | | |
|---|---|---|
| | | Transcript (Sealed), Jury Trial,, Jury Trial,,, <u>366</u> Transcript (Sealed), Jury Trial,,,, filed. (Hoffer, Stewart) (Entered: 10/25/2024) |
| 10/25/2024 | <u>434</u> | DKT13 TRANSCRIPT ORDER REQUEST by Plaintiff Trinseo/Eric Grant. Transcript is already on file in Clerks office regarding Trial (each day of trial from 01/08/2024 through end of trial) before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Nichole Forrest. This order form relates to the following: Jury Trial,,, <u>339</u> Transcript (Sealed), <u>344</u> Transcript (Sealed), Jury Trial,,, <u>348</u> Transcript (Sealed), <u>346</u> Transcript (Sealed), <u>341</u> Transcript (Sealed), Jury Trial,,, Jury Trial,, <u>418</u> Notice of Appeal, <u>340</u> Transcript (Sealed), <u>337</u> Transcript (Sealed), Jury Trial,, <u>347</u> Transcript (Sealed), <u>338</u> Transcript (Sealed), Jury Trial,, Jury Trial,, <u>336</u> Transcript (Sealed), Jury Trial,,,, <u>342</u> Transcript (Sealed), Jury Trial,,, <u>343</u> Transcript (Sealed), Jury Trial,, Jury Trial,,, <u>335</u> Transcript (Sealed), Jury Trial,,,, <u>345</u> Transcript (Sealed), filed. (Hoffer, Stewart) (Entered: 10/25/2024) |
| 10/30/2024 | <u>435</u> | DKT13 TRANSCRIPT ORDER REQUEST by KBR/Warren W. Harris. Transcript is already on file in Clerks office regarding Discovery Hearing on 12/19/2023 before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Gayle Dye. This order form relates to the following: Discovery Hearing, <u>422</u> Notice of Appeal - Cross Appeal, filed. (Harris, Warren) (Entered: 10/30/2024) |
| 10/30/2024 | <u>436</u> | DKT13 TRANSCRIPT ORDER REQUEST by KBR/Warren W. Harris. Transcript is already on file in Clerks office regarding 2/23/2023 Discovery Hearing before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Kathy Metzger. This order form relates to the following: <u>422</u> Notice of Appeal - Cross Appeal, Discovery Hearing,, filed. (Harris, Warren) (Entered: 10/30/2024) |
| 10/30/2024 | <u>437</u> | DKT13 TRANSCRIPT ORDER REQUEST by KBR/Warren W. Harris. Transcript is already on file in Clerks office regarding 6/16/2023 Discovery Hearing before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Kathleen Miller. This order form relates to the following: Discovery Hearing, <u>422</u> Notice of Appeal - Cross Appeal, filed. (Harris, Warren) (Entered: 10/30/2024) |
| 10/30/2024 | <u>438</u> | RESPONSE to <u>417</u> Opposed MOTION to Modify the Protective Order [Doc. 26 in C.A. No. 4:20-cv-04051] filed by Kellogg Brown & Root, LLC. (Attachments: # <u>1</u> Proposed Order) (Harrison, Geoffrey) (Entered: 10/30/2024) |
| 10/30/2024 | <u>439</u> | DKT13 TRANSCRIPT ORDER REQUEST by KBR/Warren W. Harris. Transcript is already on file in Clerks office regarding 01/04-05/2024 Pre-Trial Conf; 01/08-12/2024 Trial; 01/17-19/2024 Trial; 01/22-25/2024 Trial before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Lanie Smith. This order form relates to the following: Jury Trial,,, Jury Trial,,, Jury Trial,, Jury Trial,,, Pretrial Conference,, Jury Trial,, <u>422</u> Notice of Appeal - Cross Appeal, Jury Trial,, Jury Trial,, Pretrial Conference, Jury Trial,,,, Jury Trial,, Jury Trial,,, Jury Trial,,,,, filed. (Harris, Warren) (Entered: 10/30/2024) |
| 10/30/2024 | <u>440</u> | DKT13 TRANSCRIPT ORDER REQUEST by KBR/Warren W. Harris. Transcript is already on file in Clerks office regarding 01/08-12/2024 Trial; 01/16-19/2024 Trial; 01/22-23/2024 Trial; 01/26/2024 Trial before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Nichole Forrest. This order form relates to the following: Jury Trial,,, Jury Trial,,, Jury Trial,, Jury Trial,, Jury Trial,, <u>422</u> Notice of Appeal - Cross Appeal, Jury Trial,, Jury Trial,, Jury Trial,,,, Jury Trial,,, Jury Trial,, Jury Trial,,, Jury Trial,,,,, filed. (Harris, Warren) (Entered: 10/30/2024) |

| 10/30/2024 | 441 | DKT13 TRANSCRIPT ORDER REQUEST by KBR/Warren W. Harris. Transcript of hearing held 8/10/2021 is unnecessary for appeal purposes This order form relates to the following: 422 Notice of Appeal - Cross Appeal, filed. (Harris, Warren) (Entered: 10/30/2024) |
|---|---|---|
| 10/31/2024 | | (Court only) Set/Cleared Flags. Appeal_Nat flag cleared. (dlr1) (Entered: 10/31/2024) |
| 11/01/2024 | 442 | DKT13 TRANSCRIPT ORDER REQUEST by Stephan Harper, Steve Harper Consulting, Inc., and Polycarbonate Consulting Services, Inc. / Benjamin F. Foster. Transcript is already on file in Clerks office regarding Discovery Hearing on 12/19/23 before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Gayle Dye. This order form relates to the following: Discovery Hearing, 423 Notice of Appeal - Cross Appeal, filed. (Foster, Benjamin) (Entered: 11/01/2024) |
| 11/01/2024 | 443 | DKT13 TRANSCRIPT ORDER REQUEST by Stephan Harper, Steve Harper Consulting, Inc., and Polycarbonate Consulting Services, Inc. / Benjamin F. Foster. Transcript is already on file in Clerks office regarding 8/10/2021 Discovery Hearing; 01/08-12/2024 Trial; 01/16-19/2024 Trial; 01/22-23/2024 Trial; 01/26/2024 Trial before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Nichole Forrest. This order form relates to the following: Jury Trial,,, 339 Transcript (Sealed), 344 Transcript (Sealed), Jury Trial,,, 348 Transcript (Sealed), 346 Transcript (Sealed), 423 Notice of Appeal - Cross Appeal, 341 Transcript (Sealed), Jury Trial,,, Jury Trial,, 340 Transcript (Sealed), 337 Transcript (Sealed), Jury Trial,, 347 Transcript (Sealed), 338 Transcript (Sealed), Jury Trial,, Jury Trial,, 336 Transcript (Sealed), Jury Trial,,,, 342 Transcript (Sealed), Jury Trial,,, 343 Transcript (Sealed), Jury Trial,, Miscellaneous Hearing,, Jury Trial,,, 335 Transcript (Sealed), Jury Trial,,,, 345 Transcript (Sealed), filed. (Foster, Benjamin) (Entered: 11/01/2024) |
| 11/01/2024 | 444 | DKT13 TRANSCRIPT ORDER REQUEST by Stephan Harper, Steve Harper Consulting, Inc., and Polycarbonate Consulting Services, Inc. / Benjamin F. Foster. Transcript is already on file in Clerks office regarding 01/04-05/2024 Pre-Trial Conf; 01/08-12/2024 Trial; 01/17-19/2024 Trial; 01/22-25/2024 Trial before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Lanie Smith. This order form relates to the following: Jury Trial,,, Jury Trial,,, Jury Trial,, 371 Transcript (Sealed), 369 Transcript (Sealed), 367 Transcript (Sealed), Jury Trial,, Jury Trial,,, 378 Transcript (Sealed), 376 Transcript (Sealed), 374 Transcript (Sealed), 375 Transcript (Sealed), 368 Transcript (Sealed), Pretrial Conference,, Jury Trial,,, 370 Transcript (Sealed), Jury Trial,, Jury Trial,, Pretrial Conference, Jury Trial,,,, 372 Transcript (Sealed), 365 Transcript (Sealed), 373 Transcript (Sealed), 377 Transcript (Sealed), Jury Trial,, Jury Trial,,, 366 Transcript (Sealed), Jury Trial,,,,, filed. (Foster, Benjamin) (Entered: 11/01/2024) |
| 11/01/2024 | 445 | DKT13 TRANSCRIPT ORDER REQUEST by Stephan Harper, Steve Harper Consulting, Inc., and Polycarbonate Consulting Services, Inc. / Benjamin F. Foster. Transcript is already on file in Clerks office regarding 2/23/2023 Discovery Hearing before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Kathy Metzger. This order form relates to the following: 164 Transcript, 423 Notice of Appeal - Cross Appeal, Discovery Hearing,, filed. (Foster, Benjamin) (Entered: 11/01/2024) |
| 11/01/2024 | 446 | DKT13 TRANSCRIPT ORDER REQUEST by Stephan Harper, Steve Harper Consulting, Inc., and Polycarbonate Consulting Services, Inc. / Benjamin F. Foster. |

| | | |
|---|---|---|
| | | Transcript is already on file in Clerks office regarding 6/16/2023 Discovery Hearing before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Kathleen Miller. This order form relates to the following: Discovery Hearing, 423 Notice of Appeal - Cross Appeal, 205 Transcript,, filed. (Foster, Benjamin) (Entered: 11/01/2024) |
| 11/04/2024 | 447 | REPLY in Support of 416 MOTION for New Trial, filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 11/04/2024) |
| 11/04/2024 | 448 | REPLY in Support of 417 Opposed MOTION to Modify the Protective Order [Doc. 26 in C.A. No. 4:20-cv-04051], filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 11/04/2024) |
| 11/05/2024 | 449 | REPLY in Support of 417 Opposed MOTION to Modify the Protective Order [Doc. 26 in C.A. No. 4:20-cv-04051], filed by Trinseo, S.A.. (Hoffer, Stewart) (Entered: 11/05/2024) |
| 11/13/2024 | 450 | ORDER denying 416 motion for new trial on damages, denying 417 Plaintiff's motion to modify protective order and granting in part and denying in part 415 motion to amend permanent injunction. (Signed by Judge Andrew S Hanen) Parties notified. (rsh4) (Entered: 11/13/2024) |
| 11/13/2024 | | (Court only) ***Motion(s) terminated: 417 Opposed MOTION to Modify the Protective Order [Doc. 26 in C.A. No. 4:20-cv-04051], 416 MOTION for New Trial, 415 Opposed MOTION to Amend MOTION to Modify Permanent Injunction. (rsh4) (Entered: 11/13/2024) |
| 11/13/2024 | 451 | AMENDED PERMANENT INJUNCTION (Signed by Judge Andrew S Hanen) Parties notified. (rsh4) (Entered: 11/13/2024) |
| 11/19/2024 | 452 | Opposed AMENDED 417 MOTION, Amended MOTION to Modify the Protective Order [Doc. 26 in C.A. No. 4:20-cv-04051] ( Motion Docket Date 12/10/2024.) by Trinseo, S.A., filed. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order) (Hoffer, Stewart) (Entered: 11/19/2024) |
| 11/22/2024 | 453 | Amended NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 450 Order, 451 Permanent Injunction, 411 Permanent Injunction, 412 Final Judgment, 410 Sealed Order by Kellogg Brown & Root, LLC, filed. (Harris, Warren) (Entered: 11/22/2024) |
| 11/22/2024 | 454 | Amended NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 450 Order, 451 Permanent Injunction, 411 Permanent Injunction, 412 Final Judgment by Trinseo, S.A., filed. (Hoffer, Stewart) (Entered: 11/22/2024) |
| 11/25/2024 | 455 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 453 Notice of Appeal - Amended. Fee status: Paid, filed. (Attachments: # 1 Amended Notice of Cross Appeal) (mp1) (Entered: 11/25/2024) |
| 11/25/2024 | 456 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 454 Notice of Appeal - Amended. Fee status: Paid, filed. (Attachments: # 1 Amended Notice of Appeal) (mp1) (Entered: 11/25/2024) |
| 11/25/2024 | | Appeal Review Notes re: 454 Notice of Appeal - Amended, 453 Notice of Appeal - Amended. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has |

| | | |
|---|---|---|
| | | been granted.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 1, filed. (mp1) (Entered: 11/25/2024) |
| 11/26/2024 | | Electronic record on appeal certified to the Fifth Circuit Court of Appeals re: <u>418</u> Notice of Appeal, <u>422</u> Notice of Appeal - Cross Appeal, <u>423</u> Notice of Appeal - Cross Appeal USCA No. 24-20460, filed. (dlr1) (Entered: 11/26/2024) |
| 11/26/2024 | | Electronic Access to Record on Appeal Provided re: <u>418</u> Notice of Appeal, <u>422</u> Notice of Appeal - Cross Appeal, <u>423</u> Notice of Appeal - Cross Appeal to Matthew Allen, Matthew Behncke, Benjamin Foster, Eric Grant, Warren Harris, Geoffrey Harrison, Stewart Hoffer, Katherine James, Abigail Noebels, Jeffrey Oldham, Walter Simons. Attorneys of record at the Circuit may <u>download the record from the Court of Appeals</u>. (USCA No. 24-20460), filed. (dlr1) (Entered: 11/26/2024) |
| 12/02/2024 | | Electronic Access to Record on Appeal Provided re: <u>418</u> Notice of Appeal to Justin Braga. Attorneys of record at the Circuit may <u>download the record from the Court of Appeals</u>. (USCA No. 24-20460), filed. (dlr1) (Entered: 12/02/2024) |
| 12/04/2024 | <u>458</u> | Order of USCA re: <u>454</u> Notice of Appeal - Amended ; USCA No. 24-20460. It is Ordered that the Joint motion of the parties to view and obtain sealed documents, filed. (dar1) (Entered: 12/04/2024) |

Tab 2

**In the United States District Court
for the Southern District of Texas
Houston Division**

United States Courts Southern
District of Texas
FILED

*January 11, 2022*

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| Trinseo Europe GmbH, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| Stephen Harper (a/k/a Steve Harper), | § | Civil Action No. 4:20-cv-0478 |
| Steve Harper Consulting, Inc. and | § | |
| Polycarbonate Consulting Services, Inc., | § | |
| Kellogg Brown & Root, LLC, William | § | |
| Davis and Polycarbonate Resins | § | |
| Consulting, LLC, | § | |
| | § | |
| *Defendants.* | § | |

---

## Plaintiff's Second Amended Complaint (post consolidation)

Plaintiff Trinseo Europe GmbH ("Trinseo") brings this theft of trade secrets/confidential information case against Defendants who have earned millions of dollars selling stolen trade secrets to Chinese chemical companies that took more than a decade to develop and that Trinseo spent hundreds of millions of dollars to acquire and market. Without timely court intervention, Defendants will have unlawfully enriched themselves while enabling Trinseo's competitors to acquire an unlawful head start in the marketplace without paying the price in time, effort, or expense, thereby irreparably damaging Trinseo's lawfully acquired competitive advantages and goodwill.

EXHIBIT
**1**

24-20460.700

# I.
# Parties

1.      Plaintiff Trinseo Europe GmbH is a foreign corporation formed under the laws of Switzerland with its principal place of business located at Zugerstrasse 231, CH-8810, Horgen, Switzerland.

2.      Defendant Stephen Harper a/k/a Steve Harper ("Harper") is an individual who currently resides in the State of Tennessee.  Harper has appeared and answered in this case, so no service is necessary at this time.

3.      Defendant Steve Harper Consulting, Inc. ("SHC") is a dissolved corporation organized and formerly existing under the laws of the State of Colorado, with a former principal place of business in Colorado Springs, Colorado.  It has appeared and answered in this case, so no service is necessary at this time.

4.      Defendant Polycarbonate Consulting Services, Inc. ("PCS") is a corporation organized and existing under the laws of the State of Colorado, with a principal place of business in Colorado Springs, Colorado.  It has appeared and answered in this case, so no service is necessary at this time.

5.      Defendant Kellogg Brown & Root, LLC ("KBR") is a Delaware limited liability company with its principal place of business in Houston, Harris County, Texas. The sole member of KBR is KBR Holdings, LLC, which is a Delaware limited liability company with its principal place of business in Houston, Harris County, Texas.  KBR has appeared and answered in this lawsuit, so no service is necessary at this time.

24-20460.701

6.    Defendant William Davis ("Davis") is an individual resident of the State of Texas who resides in Brazoria County, Texas.  Davis has appeared and answered in this lawsuit, so no service is necessary at this time.

7.    Defendant Polycarbonate Resins Consultants, LLC ("PRC") is a limited liability company organized and existing under Texas law with its principal place of business in this District.  PRC has appeared and answered in this lawsuit, so no service is necessary at this time.

8.    At all relevant times, Harper owned, controlled, or was the actual agent of both SHC and PCS, and this Complaint collectively refers to Harper, SHC and PCS as the "Harper Defendants."   At all relevant times, Davis owned, controlled, or was the actual agent of PRC, so this Complaint collectively refers to Davis and PRC as the "Davis Defendants."

## II.
## Jurisdiction & Venue

9.    The Court has original subject matter jurisdiction over the entire action pursuant to the Court's federal question jurisdiction, 28 U.S.C. § 1331, because at least one cause of action arises under federal law – the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(c).  This Court has supplemental jurisdiction over claims based under state law.  28 U.S.C. § 1367.

10.    The Court independently has original subject matter jurisdiction over the entire action pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332(a)(2), because the matter in controversy exceeds the sum or value of $75,000, exclusive of

24-20460.702

interest and costs, Plaintiff Trinseo is a citizen of a foreign state, and all Defendants are citizens of one or more of the United States.

11.    The Court has personal jurisdiction over the Harper Defendants because they have purposefully established minimum contacts with the State of Texas sufficient to subject them to personal jurisdiction consistent with due process under the Fifth and/or Fourteenth Amendments to the United States Constitution, and the Court's exercise of jurisdiction over the Harper Defendants does not offend traditional notions of fair play and substantial justice.  In this regard, the Harper Defendants knowingly acquired some of Trinseo's confidential information/trade secrets from another individual who resides in Texas and, upon information and belief, obtained additional trade secrets and confidential information from a manufacturing facility located in Freeport, Texas.  In addition, Harper, both individually and as an actual agent for both SHC and PCS has, on multiple occasions, traveled to this Division and District and, while physically present in this Division or District, unlawfully used Trinseo's trade secrets and confidential information in interstate commerce to create the preliminary design packages from which Trinseo's competitors appear to have created basic engineering/design drawings for the construction of polycarbonate manufacturing plants, including KBR, which has its principal place of business in this Division and District.  In addition, Harper, both individually and while an agent for SHC and PCS, physically traveled to this District and, while physically present in this District, used Trinseo's trade secrets and confidential information to assist a China-based company in creating the basic engineering/design drawings for the construction of a polycarbonate manufacturing plant in China using

24-20460.703

Trinseo's polycarbonate manufacturing technology.  Because Trinseo's causes of action arise directly from the Harper Defendants' purposeful contacts with Texas, the Court has specific personal jurisdiction over the Harper Defendants

12.    The Court has both general and specific personal jurisdiction over KBR. The Court has general personal jurisdiction over KBR because it has its principal place of business in Texas and has purposefully established minimum contacts with the State of Texas sufficient to subject it to personal jurisdiction consistent with due process under the Fifth and/or Fourteenth Amendments to the United States Constitution, and the Court's exercise of jurisdiction over KBR does not offend traditional notions of fair play and substantial justice.  In addition, the Court has specific personal jurisdiction over KBR because KBR: (a) has its principal place of business in Texas; (b) knowingly acquired some of Trinseo's confidential information/trade secrets from the Harper and Davis Defendants who purposefully delivered the materials either while in Texas or via means of interstate commerce to KBR knowing that KBR was in Texas.  In addition, KBR unlawfully used Trinseo's trade secrets and confidential information in interstate commerce to create its infringing PCMAX design package and drawings for the construction of polycarbonate manufacturing plants.  Because Trinseo's causes of action arise directly from KBR's purposeful contacts with Texas, and because KBR has its principal place of business in this District and Division, the Court has general and specific personal jurisdiction over KBR.

13.    The Court has both general and specific personal jurisdiction over the Davis Defendants.    The Court has general personal jurisdiction over the Davis

Defendants because Davis resides in Texas and in this District, while PRC has its principal place of business in Texas and this District. The Davis Defendants have each purposefully established minimum contacts with the State of Texas sufficient to subject them to personal jurisdiction consistent with due process under the Fifth and/or Fourteenth Amendments to the United States Constitution, and the Court's exercise of jurisdiction over the Davis Defendants does not offend traditional notions of fair play and substantial justice. In addition, the Court has specific personal jurisdiction over the Davis Defendants because they: (a) either reside in or have their principal place of business in Texas and in this District; (b) knowingly acquired some of Trinseo's confidential information/trade secrets from individuals who purposefully delivered the materials either while in Texas or via means of interstate commerce, and the Davis Defendants used interstate commerce to unlawfully disclose Trinseo's trade secrets and confidential information to KBR knowing that KBR's principal place of business was in Texas. In addition, KBR unlawfully used Trinseo's trade secrets and confidential information that it received from Davis to create at least one critical component of its infringing PCMAX design package, as well as recipes or product formulations for different grades of polycarbonate. Because Trinseo's causes of action against the Davis Defendants arise directly from the purposeful contacts the Davis Defendants have with Texas, the Court has specific personal jurisdiction over the Davis Defendants.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant KBR and the Davis Defendants maintain their principal places of business in this District

24-20460.705

and Division and because a substantial part of the events giving rise to the causes of action asserted herein took place in this District and Division.

## III.
## Factual Background

**A.    Trinseo's Business and Polycarbonate Technology**

15.    Non-party Trinseo Public Limited Company ("<u>Trinseo PLC</u>") operates through its subsidiaries as a materials solutions provider and manufacturer of engineering plastics materials, feedstocks, styrenics, polystyrene, and base plastics including polycarbonates.  Polycarbonates are tough, thermoplastic, synthetic polymers that can be formed and molded under heat.  Because of their toughness, high impact resistance, and relative ease of molding, blending, and shaping, polycarbonates are used in many common products from eyeglass lenses, optical media, automotive headlamp lenses and even "bulletproof" glass, just to name a few.  Trinseo PLC has a domestic principal place of business in Berwyn, Pennsylvania, and employs over 3,000 employees in 30 countries worldwide.

16.    One Trinseo PLC's subsidiaries is Plaintiff Trinseo Europe GmbH ("<u>Trinseo</u>"), a wholly owned subsidiary that owns the intellectual property that is the basis of the lawsuit and collects revenue for the licensure of such intellectual property. Trinseo traces its roots in polycarbonate back to The Dow Chemical Company ("<u>Dow</u>"). In 2009, Dow announced its intention to form a new independent business unit called Styron.  As of April 1, 2010, this business unit became a separate legal entity with affiliates across the world (Styron LLC, Styron Holding B.V., Styron Europe GmbH and

24-20460.706

each of their respective affiliates, collectively termed "Styron").  Styron's business unit included the polycarbonate plastics business.  As of June 17, 2010, Styron was divested to an affiliate of Bain Capital Partners ("Bain Capital") with the intellectual property being held by Styron LLC.  Along with this sale, Bain Capital moved the intellectual property to Styron Europe GmbH.  Bain Capital subsequently changed the name of the business to Trinseo.  In 2016, Bain Capital sold all its remaining stock in the parent company of Trinseo (then known as Trinseo S.A.), resulting in Trinseo S.A.'s full independence as a public company, the stock of which has since its initial public offering in 2014 been publicly traded on the New York Stock Exchange under the ticker symbol "TSE."  In October 2021, Trinseo effected an internal corporate restructuring when Trinseo S.A. merged into Trinseo PLC, and Trinseo S.A. ceased to exist.  Trinseo PLC then became the registrant with the SEC and its stock continues to be publicly traded on the NYSE under the symbol TSE.

17.    The intellectual property that Trinseo owns relating to polycarbonate manufacturing can generally be described as: (a) preliminary design packages ("PDPs"), design drawings of manufacturing plants, process flow diagrams, equipment specifications, operating conditions for optimal polycarbonate production in the polymerization or "wet" side of a polycarbonate plant; (b) product formulations and recipes for different grades of high quality polycarbonate flake with differing melt flows specifically for Trinseo's Calibre™ line of polycarbonate, including specific information about the composition of each product grade with acceptable ranges of composition (including, among others, the optimal combination of tints, dyes, pigments, mold release

24-20460.707

and thermal stabilizers, UV stabilizers, and ignition resistant additives for desired product grade and performance characteristics); (d) the concept, design, materials, specifications, operating instructions, software, control algorithms and plans to safely and efficiently design, build, and operate interfacial polycarbonate flake manufacturing facilities; (e) the design of polycarbonate manufacturing plant components, such as the phosgene reactor, phosgene scrubber, dryers, devolatilization columns, piping and instrument design, wastewater stripping columns, along with the operating discipline, operating ranges, operating conditions, and flowrates that are part of the operating code for such components; (f) the components contained within the continuous pipe reactor's pressure vessel containment system; (g) specially designed atomization nozzles (also called mixing nozzles) used to atomize the polymer solution with high pressure steam without fouling or clogging the nozzle with polymer (including materials of construction, dimensions, tolerances, finishes, and optimal operating conditions and settings); (h) the design and optimal operating conditions for the "snake" and loop process used in the devolatilizing drying process, with associated critical venturi, drying tubes and collection header, all of which are crucial to the efficient production of high-quality flake polycarbonate with a minimum of fines; (i) the design of the MeCl2 stripper column that separates the polymer flake from the devolatilized methylene chloride solvent and devolatilizing steam; (j) the design of the unique steam devolatilization process used to recover polymer from the washed polymer/solvent solution; (k) the design of the thermal stabilizer system which allows for the easy addition of a thermal stabilizer to the polycarbonate prior to devolatilization; (l) techniques for identifying the various trace

24-20460.708

impurities that can adversely impact the production of high quality polycarbonate flake and the specifications used during the production process that ensures a sufficiently low concentration of impurities; and (m) techniques for manufacturing high-quality, marketable polycarbonate flake, including the positive and negative know-how that enables the cost-effective manufacture of high-quality polycarbonate and other confidential information regarding the design, commissioning, and optimization of interfacial polycarbonate manufacturing facilities, along with the techniques and positive and negative know-how learned from the start-up of other polycarbonate plants to optimize the efficient production of high-quality polycarbonate (which is a more marketable and higher margin product than lower-quality material (such as, for example, the design details and methods to avoid clogging the expensive snakes with polymer and the methods to avoid yellowing of the polycarbonate) (collectively, the "Polycarbonate Trade Secrets").  The Polycarbonate Trade Secrets were the result of an investment of many years and multiple millions of dollars and qualify as "trade secrets" under the Defend Trade Secrets Act.

18.    Trinseo is an "owner" of the Polycarbonate Trade Secrets as that term is used in 18 U.S.C. § 1839(4).

19.    Trinseo has taken reasonable measures to keep the Polycarbonate Trade Secrets a secret using, among other methods, nondisclosure agreements, licensing agreements with nondisclosure obligations, reasonable building security measures (badges and controlled access points), document security measures (controlled access to documents and data comprising the Polycarbonate Trade Secrets, the use of Tech Centers

to securely store trade secrets, and the use of confidential stamping protocols) and computer security measures (such as firewalls and password protocols). The Polycarbonate Trade Secrets derive actual economic value from not being generally known to, and not being readily ascertainable through proper means by, another person with the ability to obtain economic value from the disclosure or use of the Polycarbonate Trade Secrets. Through the investments of time and money into the development and continual improvement of Trinseo's Polycarbonate Trade Secrets, Trinseo has, at great cost and expense over many years, uniquely positioned itself as a market leader, in part because Trinseo effectively utilizes the Polycarbonate Trade Secrets to obtain an advantage over competitors that do not know or have access to them. Trinseo has invested, and will continue to invest, extensive time, effort, and expense in the development, maintenance, and confidentiality of its Polycarbonate Trade Secrets.

**B.    Stephen Harper and William Davis' background.**

20.    Stephen Harper is a former employee of Dow who was assigned to work at Dow's interfacial polycarbonate manufacturing plant located in Freeport, Texas (the "Freeport Plant"). Harper claims to have helped design the Freeport Plant and written the process control documents that governed the plant's operation. From 1988 until 1991, Harper was the Plant Manager of the Freeport Plant. By virtue of his position at Dow, Harper obtained copious access to the Polycarbonate Trade Secrets, as did other Dow employees at the Freeport Plant with whom Harper was acquainted, including Defendant William Davis, along with Lester "Chip" Melton, Bryce Koslan, Randy Smale, Richard Kirk, and others (collectively, the "Tech Team"). During their employment, Harper,

Davis, and the Tech Team were under confidentiality agreements, or were restricted by duties imposed by law, that protected the Polycarbonate Trade Secrets from unauthorized use or disclosure (both during their employment and thereafter). Harper, Davis and the Tech Team had full knowledge of the data relating to the Dow polycarbonate technology and plant designs that Dow considered confidential information or trade secrets. In approximately 1999, Harper retired from Dow Chemical Company, while the remaining members of the Tech Team retired in succession in the years that followed.

21.    In May 2013, Harper formed SHC, and began to provide process design and project management services to the polycarbonate manufacturing industry. To provide these services, Harper would affiliate with the Tech Team who, together with Harper, would provide design, process engineering, and start-up support for companies desiring to build or operate polycarbonate manufacturing plants. Like Harper, the other Tech Team members had copious access to the Polycarbonate Trade Secrets during their employment with Dow Chemical. Harper formed PCS in June 2017 specifically to hide the fact that he was performing polycarbonate consulting work for KBR so that Trinseo (and others) would not know that he was using and disclosing the misappropriated Polycarbonate Trade Secrets in his consulting work. Harper then dissolved SHC in 2018.

22.    Defendant William Davis was employed with Dow in a research chemistry role and, like the other Tech Team members, had copious access to the Polycarbonate Trade Secrets during his employment with Dow, including specific details regarding the confidential product formulations for different grades of polycarbonate flake and the design of the mixing nozzles that Davis was able to obtain from Tech Team members

24-20460.711

Richard Kirk, Randy Smale, and Roger Coday.  Davis formed PRC at the request of KBR so that KBR could retain the services of the Tech Team without having to go through Harper, since KBR and Harper wanted to hide their collective polycarbonate efforts from others.

**C.    The Harper and Davis Defendants misappropriate Trinseo's Polycarbonate Trade Secrets for the Luxi Project.**

23.    According to Harper, the most technologically advanced, best-in-class polycarbonate manufacturing plant in the world is a plant in South Korea which began as a joint venture between Dow Chemical Company and LG Chemical, Ltd. (the "LG Plant").  As part of this joint venture, Dow licensed its PC Technology to the joint venture, which then built and operated a limited number of manufacturing "trains." Through a series of transactions, Dow later sold its PC Technology to Trinseo and, thus Trinseo owns the intellectual property that the LG Plant uses to manufacture its specific, unique class of interfacial polycarbonate using those specified trains.  Trinseo's parent company also owns a manufacturing plant in Stade, Germany that includes a polymer production unit and a compounding facility that manufactures approximately 120 polycarbonate products for various applications.  The Stade Plant uses Trinseo's Polycarbonate Trade Secrets to produce and manufacture its products as well.

24.    Harper claims that every interfacial polycarbonate manufacturer "wants to be like LG."  As a result, Chinese interfacial polycarbonate producers have sought to "knock off" the unique interfacial polycarbonate that the LG Plant makes, while also mimicking material aspects of Trinseo's polycarbonate manufacturing process and

24-20460.712

products. Dow (and now Trinseo) have undertaken substantial efforts to ensure that Trinseo and its licensees were the exclusive source for its best-in-class unique interfacial polycarbonate material, but thanks to Defendants' unlawful conduct, intellectual property infringement has now occurred, both domestically and abroad, irreparably harming Trinseo in the process.

25.     In late 2012, a company called Prime 3 Group, LLC[1] approached Harper, SHC, and the Tech Team to provide the technical design components to help Chinese chemical company, Luxi Group, build a polycarbonate plant in China. Because Luxi specifically demanded its plant be a copy of the LG Plant, the Harper and Davis Defendants, along with other members of the Tech Team, either secretly retained from their employment at Dow, or began to secretly acquire from others who owed confidentiality obligations to Dow, electronically stored and hard copies of detailed design drawings that reflected the Polycarbonate Trade Secrets. The materials Harper and the Tech Team unlawfully acquired and commercially used included process flow diagrams ("PFDs"), heat material balance data, research reports, product formulations or recipes, flake transfer components, agglomeration component designs, start-up and commissioning reports from Trinseo's Stade Plant, early confidential deliverables from another polycarbonate project called the RTIP Project, and positive and negative know-

---

[1]   Prime 3 is a small company in Virginia that claims to have the in-house capability to design turn-key packages for many manufacturing processes. It has advertised the ability to provide the Process Design Package, Pilot Plant development and construction, Basic Engineering Package, Front End Engineering Design, and Final Engineering Package to enable customers to build chemical manufacturing facilities. In reality, Prime 3 acts basically as a broker, sourcing and obtaining agreements with American and European engineers, chemists, technicians, and engineering firms who then actually provide the services Prime 3 claims it has the capability of performing.

how relating to the design of the LG Plant, as well as additional materials that constitute "the PFD for a basic Dow technology polycarbonate plant." Harper, SHC, and several other members of the Tech Team used the Polycarbonate Trade Secrets in interstate commerce and while in the Southern District of Texas to assist Luxi in building its polycarbonate manufacturing plant and provided Prime 3 and Luxi access to subsets of the Polycarbonate Trade Secrets that Harper admits constitute a "priceless" "fortune of engineering data from a state-of-the-art Dow polycarbonate Plant" that will provide those who have access to them with a "high degree of probability for a successful startup and performance" of a polycarbonate manufacturing plant. Harper further admits that any competitor's use of the subsets of the Polycarbonate Trade Secrets that he and the Tech Team have used will provide a polycarbonate manufacturer a head start and a competitive advantage in the market, since having access to the information in those materials enables those polycarbonate manufacturers to more quickly produce and sell a higher quality polycarbonate without paying the price in time, effort, or expense that Dow and Trinseo spent over many years to gain their competitive advantages. Harper/SHC collected more than 2.9 million dollars for its assistance to Luxi, and paid some of it to William Davis.

26. The Davis Defendants acquired and used in the Luxi Project detailed mixing nozzle design drawings and product formulations or recipes (*see* WD0000646-68, 0000979). These are components of the Polycarbonate Trade Secrets that help polycarbonate manufacturers more quickly produce and sell a higher quality polycarbonate without paying the price in time, effort, or development costs that

Trinseo's predecessor spent and that Trinseo continues to spend. Davis collected thousands of dollars (if not substantially more) for his efforts during the Luxi project.

**D.    KBR gets a taste of the Polycarbonate Trade Secrets and tries to capitalize on a rapidly expanding polycarbonate manufacturing market.**

27.    In 2007, Dow and the Saudi-owned oil company Saudi Aramco created Sadara Chemical Company, a joint venture formed to establish, build, and operate in Saudi Arabia an integrated chemical manufacturing complex with 26 separate operating units. The initial plan for the complex included the design and construction of an interfacial polycarbonate manufacturing facility. KBR was selected to provide front-end engineering and design (FEED) engineering services for what became known as the "Sadara Project" or the "RTIP Project." As part of that project, Dow gave KBR access to aspects of the Polycarbonate Trade Secrets to assist KBR in providing the contemplated FEED work for the polycarbonate manufacturing facility, but only did so because KBR contractually agreed to comply with strict prohibitions against unauthorized use, disclosure, or retention of the portion of the Polycarbonate Trade Secrets to which KBR had been given access. The Sadara Joint Venture entity ultimately decided not to build the polycarbonate manufacturing facility at the Sadara Complex and, therefore, KBR had no legitimate reason to retain or use the Polycarbonate Trade Secrets that Dow shared with KBR solely for use during the Sadara Project. On information and belief, KBR or its agents have not only retained copies of confidential data containing aspects of the Polycarbonate Trade Secrets that KBR was required to destroy, but KBR has also

24-20460.715

unlawfully used that data without Trinseo's effective consent to further KBR's own business interests.

28.    At some point before April 2014, KBR decided it wanted to create and license to chemical manufacturers around the world an interfacial polycarbonate technology, engineering, and licensing package.  KBR believed that worldwide demand for interfacial polycarbonate feedstock was on a substantial upswing — especially in China and Russia where it intended to focus its initial marketing efforts given the proliferation of the manufacturing industries in China.  One obstacle to KBR's goal, however, was the fact that KBR did not have the time or expertise to design facilities that could manufacture high-quality, marketable interfacial polycarbonate flake.  KBR also knew that its effort to break into the polycarbonate manufacturing market would be difficult without commercially proven polycarbonate technology, especially with KBR's view that the window of opportunity to break into this new line of business was rapidly closing.  Consequently, KBR sought out a reputable polycarbonate technology owner with commercially proven polycarbonate technology with which KBR could partner.

29.    Hoping to gain access to the remainder of the Dow polycarbonate technology to which KBR had been given limited access during the Sadara Project, KBR first approached Styron (which was Trinseo's prior name and which was then the owner of the Polycarbonate Trade Secrets that Trinseo now owns) about a license of the Polycarbonate Trade Secrets to KBR.  Styron and KBR entered into a confidentiality and non-disclosure agreement as a pre-cursor to more in-depth discussions, and in April and May 2014, Styron and KBR began to explore a potential business relationship.  Because

24-20460.716

KBR entered into a nondisclosure agreement, Styron shared with KBR during those discussions some higher-level details of its Polycarbonate Trade Secrets and, importantly, also identified for KBR the information that Styron considered to be its confidential trade secrets. Through that process, KBR came to learn what data Styron believed were its trade secrets and knew well what was off limits to use. Ultimately, Styron decided not to enter into a licensing agreement with KBR, and those discussions ended sometime in late May 2014.

30.     Thereafter, KBR sought an alternative licensing arrangement with other polycarbonate technology owners, but those discussions bore no fruit, leaving KBR's business plans in jeopardy. Rather than admit defeat, and being pressured by its belief that the window to capitalize on the market opportunity was rapidly closing, KBR decided to develop a "knock-off" version of the Dow polycarbonate technology and needed to do it quickly. KBR thus began a zealous search for others who KBR believed might be able to provide KBR with access — legal or otherwise — to Dow polycarbonate technology that KBR could then counterfeit as its own. As described below, that search eventually led KBR to Harper, Davis, and the Tech Team.

**E.    KBR and the Davis and Harper Defendants join forces to misappropriate Trinseo's Polycarbonate Trade Secrets.**

31.     In late March 2017, KBR learned about Steve Harper and his Tech Team, and the services they were willing to provide for large fees. In April 2017, KBR contacted Lester "Chip" Melton, a Tech Team member, and asked if Melton would assist KBR in developing a polycarbonate Basic Engineering Design Package ("<u>BEDP</u>") and

24-20460.717

technology license package to be sold to customers across the globe for tens of millions of dollars apiece. Melton contacted Harper about the opportunity, so Harper traveled from Colorado to Houston and met at KBR's offices in downtown Houston with officers of KBR (including John Derbyshire, the president of KBR Technology and Consulting and an officer of KBR). At that point in time, KBR had been approached by LG about assisting it with an expansion of the existing LG Plant (the "LG Early Works Project"), and KBR believed that it had no chance to win that project without the stolen trade secrets that Harper, Davis and the Tech Team had, since KBR (a) perceived that it would be unable to effectively compete in the PC market using the assets and consultants it had put in place up to that point; and (b) knew it could only sell its technology if it could market it as a commercially proven technology. Harper wanted to hide his potential involvement in the LG Early Works Project (for fear of breaching an earlier exclusivity agreement between Harper and Prime 3/Luxi, among other reasons), so KBR agreed to let Davis and PRC execute the Individual Marketing and Technical Consulting Agreement in late June 2017 to help hide Harper's involvement. LG did not hire KBR for LG's plant expansion project, although KBR did collect $200,000 in revenue from invoices issued to LG in November and December 2017.

32.     In August 2017 while working on the LG Early Works project, KBR decided to replace the vendor it initially chose for polycarbonate technology and selected Harper and the Tech Team for that work. Therefore, in early August 2017, Harper and KBR began secretly negotiating an Amended and Restated Technical Consulting Agreement that would eventually govern the services that the Harper and Davis

24-20460.718

Defendants, and other members of the Tech Team would provide to assist KBR in misappropriating the Polycarbonate Trade Secrets.  On November 27, 2017, Harper and PCS secretly finalized their agreement with KBR to provide KBR with polycarbonate engineering and design services to assist KBR in developing and selling KBR's polycarbonate licensing package, which KBR later named the "PCMAX" package.  The PCMAX package includes materials on the technological manufacture of interfacial polycarbonates, as well as a basic engineering design package and "proprietary" equipment supply program.  Harper and PCS served as the technical team leader on the PCMAX package development team, while Davis and PRC were brought in for the compounding side of the operation to provide KBR with access to portions of Trinseo's confidential Calibre™ compounding recipes, extruder operating parameters, and other aspects of the Polycarbonate Trade Secrets/confidential information — all with the hope that KBR could exactly duplicate those commercially proven recipes and include them in the PCMAX package to sell to Trinseo's competitors.

33.    Harper and the Tech Team worked through PCS to provide a Preliminary Design Package, also known as a PDP, along with engineering drawings, process flow diagrams, and ongoing consulting services to support KBR's efforts to develop its PCMAX package, parts of which include the most critical aspects of the Polycarbonate Trade Secrets, without which the PCMAX package would be much less valuable, and perhaps worthless.  Davis and PRC also knowingly aided and abetted KBR's efforts to misappropriate Trinseo's trade secrets by unlawfully disclosing to KBR on February 17, 2019 nine compounding recipes, all of which comprised a portion of the Polycarbonate

24-20460.719

Trade Secrets that KBR misappropriated with the help of Harper, Davis, and their companies. [*See* KBR Subpoena 000930-80, 979; WD00002277-80]. Davis also provided to KBR detailed design information and drawings regarding the mixing nozzle that was key to the agglomeration of polycarbonate flake in the polymer production or "wet" side of a polycarbonate plant.

34.    In February 2018, KBR's parent company announced that KBR had sold its first allegedly "proprietary" PCMAX package to Chinese chemical manufacturer Cangzhou Dahua New Materials Co., Ltd. ("Cangzhou") so that Cangzhou could build a new, 100KTA polycarbonate plant in Cangzhou City, China. In the press release, KBR quoted the Chairman of Cangzhou as stating that the "polycarbonate market in China is booming" and "by using KBR's advanced technology, we can achieve the best quality of products and place ourselves in the leading position in this new market." In that same press release, KBR falsely claimed that its PCMAX package was "proprietary" and "unique" when, in fact, it is materially based in part upon Trinseo's misappropriated Polycarbonate Trade Secrets that KBR obtained from the Harper and Davis Defendants.

35.    In August 2018, KBR announced that it had been awarded a license, engineering, and proprietary equipment supply contract by China Pingmei Shenma Group ("Pingmei") to build two new 100KTA polycarbonate manufacturing trains in China using KBR's allegedly "proprietary" PCMAX technology, which KBR said would "empower Pingmei to be a market leader in the polycarbonate business." In that same press release, KBR falsely claimed that its PCMAX package was "proprietary" when, in

24-20460.720

fact, it is materially based in part upon Trinseo's misappropriated Polycarbonate Trade Secrets that KBR obtained from the Harper and Davis Defendants.

36.     Upon information and belief, KBR's Technology and Consulting Division booked approximately forty-two million dollars in revenue from the Cangzhou and Pingmei contract awards, along with the $200,000 in was paid by LG.

37.     While acting both individually and as an actual agent of SHC and PCS, Harper knew, or had reason to know, at the time he acquired the Polycarbonate Trade Secrets, that the person or persons who provided Harper with the Polycarbonate Trade Secrets acquired them using improper means[2] and that his use of the Polycarbonate Trade Secrets violated duties that Harper personally owed.[3]   Alternatively, the Harper Defendants have used or disclosed the Polycarbonate Trade Secrets without express or implied consent from Trinseo, and at the time the Harper Defendants engaged in their unauthorized use and/or disclosure of the Polycarbonate Trade Secrets, the Harper Defendants knew or had reason to know that their knowledge of the Polycarbonate Trade Secrets was: (a) derived from or through a person who used improper means to acquire the Polycarbonate Trade Secrets; (b) acquired under circumstances giving rise to a duty to maintain the secrecy of the Polycarbonate Trade Secrets; and/or (c) acquired by

---

[2]    Improper means is a catch-all concept that imposes liability for acts that " 'include theft, fraud, unauthorized interception of communications, inducement of or knowing participation in a breach of confidence, and other means either wrongful in themselves or wrongful under the circumstances of the case.' " *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 876 (5th Cir. 2013) (interpreting Texas law).

[3]    To show a breach of confidence, "no express agreement is necessary, but ... the confidence reposed in the other person must, in some way, be manifest—if not by words, then by the acts of the parties or the whole picture of their relationship." *GlobeRanger Corp. v. Software AG*, 27 F. Supp. 3d 723, 749 (N.D. Tex. 2014).

24-20460.721

accident or mistake, well before the Harper Defendants materially changed their position, and the Harper Defendants knew or had reason to know that the Polycarbonate Trade Secrets were Trinseo's trade secrets. Thus, the Harper Defendants have "misappropriated" Trinseo's Polycarbonate Trade Secrets as that term is used in 18 U.S.C. § 1839(5).

38.    While acting both individually and as an actual agent of PRC, Davis knew, or had reason to know, at the time he acquired aspects of the Polycarbonate Trade Secrets, that the person or persons who provided Davis with the Polycarbonate Trade Secrets acquired them using improper means and that Davis' use of the Polycarbonate Trade Secrets violated duties that Davis personally owed. Alternatively, the Davis Defendants have used or disclosed the Polycarbonate Trade Secrets without express or implied consent from Trinseo, and at the time the Davis Defendants engaged in their unauthorized use and/or disclosure of portions of the Polycarbonate Trade Secrets, the Davis Defendants knew or had reason to know that their knowledge of the Polycarbonate Trade Secrets was: (a) derived from or through a person who used improper means to acquire the Polycarbonate Trade Secrets; (b) acquired under circumstances giving rise to a duty to maintain the secrecy of the Polycarbonate Trade Secrets; and/or (c) acquired by accident or mistake, well before the Davis Defendants materially changed their position, and the Davis Defendants knew or had reason to know that the Polycarbonate Trade Secrets were Trinseo's trade secrets. Thus, the Davis Defendants have "misappropriated" Trinseo's Polycarbonate Trade Secrets as that term is used in 18 U.S.C. § 1839(5).

24-20460.722

39.     KBR has knowingly and intentionally, without Trinseo's authorization, obtained from the Harper and the Davis Defendants a critical mass of data from Trinseo's Polycarbonate Trade Secrets that enabled KBR to create its PCMAX program without paying the price in time, effort, or expense and with full knowledge that the data and information from the Harper and Davis Defendants was derived from misappropriated, critical portions of Trinseo's Polycarbonate Trade Secrets.  KBR deliberately did this because it knew that commercially proven technology was the only way it could quickly capitalize on the Chinese demand for polycarbonate.  KBR and its actual or apparent agents knew, or had reason to know, that KBR's access to the Polycarbonate Trade Secrets came from persons who acquired the Polycarbonate Trade Secrets using improper means and that those who supplied KBR with the Polycarbonate Trade Secrets violated legal duties that the suppliers owed to the trade secret owner.  Alternatively, KBR has used or disclosed the Polycarbonate Trade Secrets without express or implied consent from Trinseo, and in doing so: (a) KBR used improper means to acquire knowledge of the Polycarbonate Trade Secrets; and/or (b) at the time KBR engaged in its unauthorized use and/or disclosure of the Polycarbonate Trade Secrets, KBR knew or had reason to know that their knowledge of and access to the Polycarbonate Trade Secret data was either (i) derived from or through persons who used improper means to acquire the Polycarbonate Trade Secrets; and/or (ii) derived from or through persons who owed a duty to maintain the secrecy of the Polycarbonate Trade Secrets.  Alternatively, and well before KBR ever materially changed its position, KBR used or disclosed the Polycarbonate Trade Secrets without express or implied consent from Trinseo while KBR

knew or had reason to know that the information or data that the Harper and Davis Defendants, and other Tech Team members, were providing was derived from Trinseo's Polycarbonate Trade Secrets and that Harper, PCS, Davis, PRC, and the Tech Team had acquired knowledge of the trade secrets by accident or mistake. As a result, KBR has "misappropriated" Trinseo's Polycarbonate Trade Secrets, as that term is used in 18 U.S.C. § 1839(5).

**F.    Trinseo has been irreparably harmed.**

40.    Trinseo has been irreparably harmed by the conduct of all Defendants in misappropriating and using Trinseo's Polycarbonate Trade Secrets to enrich themselves, and others, at Trinseo's expense.

41.    Through their conduct, the Harper and Davis Defendants have enabled competitors to obtain — in the span of a few months — a competitive advantage it took Trinseo many years and millions of dollars to develop, maintain, and improve. In doing so, the Harper and Davis Defendants have destroyed competitive advantages that Trinseo legally acquired and developed over the years. The Harper and Davis Defendants have diluted the value of the Polycarbonate Trade Secrets and unlawfully enriched themselves at Trinseo's expense, by collecting millions of dollars in ill-gotten consulting fees that they would never have earned but for the misappropriation and use of Trinseo's Polycarbonate Trade Secrets. The events set forth above have caused irreparable harm and significant monetary damages to Trinseo.

42.    By engaging in the conduct discussed above, KBR has not only become a competitor to Trinseo in the interfacial polycarbonate licensing business, but it has also

enabled competitors to obtain — in the span of a few months — a competitive advantage it took Trinseo and its predecessor many years and millions of dollars to develop and maintain. By doing so, KBR has materially damaged Trinseo's competitive advantages and goodwill, while also diluting the value of the Polycarbonate Trade Secrets. KBR has also unlawfully enriched itself at Trinseo's expense, a benefit it was only able to obtain through the unlawful acquisition, use, and disclosure of information derived from, or materially based upon, Trinseo's Polycarbonate Trade Secrets. The events set forth above have caused irreparable harm and significant monetary damages to Trinseo.

## G. Defendant Harper has used SHC and PCS as a sham to perpetrate a fraud, and thus the Court should pierce the organization's limited liability veil and hold Harper individually liable for the benefits that PCS and SHC obtained.

43. Shareholder liability for corporate debts, pursuant to a veil-piercing or alter-ego theory, is determined by the law of the state of incorporation. *See Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 203 (5th Cir. 1995) (holding that a Texas federal district court sitting in diversity should rely upon Texas conflict of law principles, which generally defer to the substantive corporate law of the state of incorporation when addressing matters of shareholder liability); *Weaver v. Kellogg*, 216 B.R. 563, 585 (S.D. Tex. 1997). Both SHC and PCS were/are Colorado entities, and thus Colorado law applies to determine if their corporate veil should be pierced.

44. To determine whether it is appropriate to pierce the corporate veil, a court must make a three-part inquiry. *McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 74 (Colo. App. 2009). The first step is a determination of whether the corporate entity is the alter ego of the shareholder. *In re Phillip*, 139 P.3d 639, 644 (Colo. 2006). An alter-ego

24-20460.725

relationship exists when the corporation is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." *Krystkowiak v. W.O. Brisben Co., Inc.*, 90 P.3d 859, 867 n.7 (Colo. 2004). The second step is a determination of whether justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." *Contractors Heating & Supply Co.*, 432 P.2d 237, 239 (Colo. 1967). Third, the court must evaluate whether an equitable result will be achieved. *In re Phillip*, 139 P.3d at 644 (achieving an equitable result is the paramount goal of traditional piercing of the corporate veil).

45.    Both SHC and PCS were formed to be the alter ego of Harper and there is such a unity of interests between Harper and SHC and PCS that the separate character of the entities no longer exists, if it ever did. For instance, Harper has always been the sole shareholder, officer and director and the only person who ever directed the affairs of both SHC and PCS. Thus, the nature and form of the entity's ownership and control facilitated Harper's misuse of each. Both SHC and PCS were inadequately capitalized and were used as a mere instrumentality for the transaction of Harper's own affairs, and SHC, PCS, and Harper each paid the obligations of one another at various times without the cost accounting that normally accompanies such methods of operation For instance, Harper personally invoiced Prime 3 for amounts allegedly owed for work Harper did in the Luxi Project, but it appears Harper directed those payments to be placed in bank accounts registered to SHC, and Harper directed KBR to PCS even though it was Harper

24-20460.726

himself who provided the consulting services that have led to the claims asserted herein, clearly showing that Harper was attempting to shield himself from liability for his misconduct. In addition, Harper has caused the entities to directly pay, from their own assets, his personal expenses, such as his health insurance premiums, credit card bills, and cell phone charges. Harper has, upon information and belief, individually paid the attorney's fees that each entity has incurred to defend themselves in this lawsuit. Moreover, Harper caused SHC and PCS to pay invoices that other members of the Tech Team submitted to Harper individually, even though the other members of the Tech Team rendered no services to either SHC or PCS. Evidence thus far appears to indicate that SHC never sent any Internal Revenue Service Form 1099s to the other Tech Team members who supposedly provided services during the Luxi Project. Thus, neither SHC nor PCS observed corporate formalities or kept adequate corporate records.

46.     In a last-ditch effort to avoid the consequences of his tortious conduct, Harper contends that because his two entities were the only recipients of his ill-gotten consulting fees from his use and disclosure of the misappropriated Polycarbonate Trade Secrets, and thus nothing may be disgorged from him. By ensuring that the person responsible for the misappropriation of the Polycarbonate Trade Secrets is held accountable for his conduct and is not permitted to use the corporate fiction to evade recompense for his unlawful conduct, an equitable result will be achieved, and thus justice requires the Court to disregard the corporate fictions of SHC and PCS, as they are being used to defeat Trinseo's rightful claims.

24-20460.727

**H.    Defendant Davis has used PRC as a sham to perpetrate a fraud, and thus the Court should pierce the organization's limited liability veil and hold Davis individually liable for the benefits PRC obtained.**

47.    PRC has, at all times, been a Texas entity, and thus Texas law applies to determine if its limited liability veil should be pierced.  Texas law permits courts to disregard an entity's fiction when the entity has been used as part of a basically unfair device to achieve an inequitable result.  *See Ledford v. Keen*, 9 F.4th 335, 339 (5th Cir. 2021) (quoting *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008)); *see also Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443–44 (5th Cir. 2013). These same corporate veil-piercing theories also apply to limited liability companies like PRC.  *See Shook v. Walden*, 368 S.W.3d 604, 621 (Tex. App.—Austin 2012, pet. denied); *U.S. KingKing, LLC v. Precision Energy Services, Inc.*, 555 S.W.3d 200, 219 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("The statutory protections afforded to members and managers of an LLC give way only when a plaintiff can show that the LLC was used for the purpose of perpetrating, and did perpetrate, an actual fraud for the member or manager's direct personal benefit." (internal quotation marks omitted)).  To recover against a member of an LLC individually, the plaintiff must show dishonesty of purpose or intent to deceive.  *See Menetti v. Chavers*, 974 S.W.2d 168, 174 (Tex. App.—San Antonio 1998, no pet.).

48.    The only reason that Davis formed PRC was to help Harper hide his involvement in the KBR Project and to dishonestly shield Davis from the consequences of his premeditated, willful, and malicious theft of trade secrets and the other torts outlined herein.  For instance, Davis was the person providing the "consulting services"

24-20460.728

during the Luxi Project and thus was paid individually for his efforts.  But for the KBR Project, Davis formed PRC and had it issue the invoices, and PRC collected $486,455.19 in ill-gotten revenue for alleged work that Davis personally performed.  This clearly shows that Davis was attempting to shield his personal assets from liability for his unlawful conduct.

49.     Justice requires the disregard of the limited liability protection of PRC, as it is being used to defeat Trinseo's rightful claim and to actually defraud Trinseo for Davis' personal benefit.  It is believed that Davis will, in a last-ditch effort to avoid the consequences of his tortious conduct, contend that only PRC was paid money for services that Davis individually provided using the misappropriated Polycarbonate Trade Secrets, and thus nothing may be disgorged from him.  By ensuring that the person responsible for the misappropriation of the Polycarbonate Trade Secrets is held accountable for his conduct and is not permitted to use the LLC's fiction to evade recompense for his unlawful conduct, an equitable result will be achieved.

## I.     Defendants lack a valid statute of limitations or laches defense.

50.     To the extent that any Defendant contends that Trinseo's claims are barred by a statute of limitations, they are estopped from asserting that defense for a variety of reasons.  The discovery rule and the doctrine of fraudulent concealment apply to misappropriation claims.  *Aspen Tech., Inc. v. M3 Tech., Inc*., 569 Fed. Appx. 259, 264 (5th Cir. 2014).

51.     First, Defendants' efforts to simply consult in the polycarbonate industry does not constitute "discovery of the injury."  Trinseo must have known or have been

reasonably able to discover that Defendants had wrongfully injured Trinseo by using Trinseo's trade secrets and confidential information to assist Luxi and KBR in designing and constructing their plant and/or licensing package. Defendants have no such evidence. *See Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 Fed. Appx. 259, 264–65 and n.9 (5th Cir. 2014) (rejecting argument that trade secret owner was on inquiry notice by virtue of fact that ex-employees had defected to defendant's employ and were competing with and taking clients from trade secret owner; "the limitations period does not begin to run until a plaintiff knew or should have known 'that it was wrongfully injured," and there is nothing "wrongful in and of itself " for employees to "leave their employ and compete with their former employers.").

52.    As to KBR, KBR and its actual or apparent agents and employees fraudulently concealed their unlawful conduct during a time when KBR: (a) actually knew it was harming Trinseo (since it knew Trinseo owned the trade secrets through the 2014 discussions with Styron, Trinseo's prior company name); (b) maintained a duty to disclose its misconduct (by virtue of, among other things, the agreements between Styron and KBR in 2014 and the terms of the RTIP/Sadara agreements KBR signed) and (c) possessed a fixed purpose to conceal the wrong by, among other things, hiding the identity of the source of its polycarbonate technology in its public pronouncements and advertising, and by having its assistant general counsel deny the validity of Trinseo's concerns in a series of letters between Trinseo and KBR in August, September, and October 2019 while even KBR's Senior Vice President and others knew the work and materials being provided by Harper, Davis, their companies, and the Tech Team were

premised upon misappropriated trade secrets and confidential information that Trinseo owned and that Harper and his consultants had misappropriated from Dow.  KBR's fraudulent concealment tolled any statute of limitations until Trinseo could discover the claims, or could have discovered the underlying facts, with reasonable diligence.

53.    As for the Harper and Davis Defendants, they fraudulently concealed their unlawful conduct during a time when they knew they were harming Trinseo (since they knew Trinseo owned the trade secrets through their prior employment with Dow and had knowledge of the change in ownership) but acted to hide the true nature of their work with KBR.  The Harper and Davis Defendants' fraudulent concealment tolled any statute of limitations until Trinseo could discover the claims, or could have discovered the underlying facts, with reasonable diligence.

54.    Any purported limitations or laches defense is also barred by the discovery rule under the DTSA and under Texas law.  *See* 18 U.S.C. § 1836(d).  The discovery rule tolls the limitations period until the plaintiff knew or, exercising reasonable diligence should have known, of *facts* giving rise to the cause of action.  The events described in this lawsuit were inherently undiscoverable and the evidence of injury was not objectively verifiable until late 2019.  Even using reasonable due diligence, Trinseo could not have discovered facts leading a reasonable person to know that the causes of action made the basis of this lawsuit had accrued.

55.    As for Harper, in two different instances, he actively misled Trinseo's employees about the scope of his consulting activities and the materials he was using to perform them.  The fact that Harper and the other Tech Team members had retired from

24-20460.731

Dow — instead of going to work for a competitor — gave no one the expectation that former Dow employees would keep or use the Polycarbonate Trade Secrets.  The work that took place during the Luxi project was kept very secretive — so secretive that Luxi would not even allow the Tech Team to see various aspects of its plant design and component fabrication.  Even KBR was fooled about the source of Luxi's polycarbonate technology despite KBR's own competitive intelligence. The trade secrets that were misappropriated are not the type where the unlawful use thereof would readily reveal themselves in the marketplace, like products in the stream of commerce or computer code.  And the nature and timing of Luxi's development of its polycarbonate technology, the misdirection and efforts to conceal material aspects of the source of that technology, the fact that there is nothing inherently unlawful about people consulting, the nature and form of the trade secrets that were misappropriated and their methods of use, and the fact that reverse engineering of competing polycarbonate product could not and would not reveal any facts that would place a reasonable person on notice that a cause of action for misappropriation of trade secrets had accrued, are all facts that make Trinseo's injury inherently undiscoverable and not objectively verifiable.  Moreover, any knowledge that Defendants claim Dow had, or should have had, as to potential misappropriation of the Polycarbonate Trade Secrets is not imputable to Trinseo and is therefore irrelevant to the analysis.

56.    As for KBR, it did not tell Trinseo about the relevant facts even though it had signed two contracts that bore upon the issue, deliberately concealed facts when questioned about the matter, hid Harper's involvement by allowing the use of proxies to

document the services to be provide, had its in-house counsel mislead Trinseo's counsel in 2019 when Trinseo's counsel inquired about the relevant issues, and engaged in other conduct designed to conceal the nature and extent of Trinseo's injury.  Suspicions followed by misrepresentations calming those suspicions do not indicate that Trinseo knew or with reasonable diligence should have known of the events giving rise to the claims asserted in this lawsuit, especially where, as here, a defendant provides information over many years that might dispel, rather than support, any suspicion regarding injury. *See McManaway v. KBR, Inc*., CV H-10-1044, 2012 WL 12951713, at *9 (S.D. Tex. Aug. 17, 2012) (denying KBR's summary judgment based on statute of limitations made by the very same lawyer KBR hired for this case where evidence showed that information plaintiffs had dispelled notion of injury and the plaintiff's claims would have been "premature and speculative" because plaintiff evidence of harm at the time KBR claimed the cause of action accrued).

57.    Finally, any laches argument that any defendant may offer is barred by Defendants' own unclean hands in knowingly misappropriating Trinseo's intellectual property and fraudulently concealing it from Trinseo while under a duty to disclose those facts to Trinseo and because Defendants failed to detrimentally rely on any alleged delay.

58.    Trinseo contends that every factual allegation set forth above will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. FED. R. CIV. P. 11(b)(3).

# IV.
## Causes of Action

### Count 1
### Misappropriation of Trade Secrets in Violation of
### the Federal Defend Trade Secrets Act against All Defendants

59.     Trinseo re-alleges and incorporates by reference each and every allegation contained in the above paragraphs of this Complaint.

60.     Trinseo owns the Polycarbonate Trade Secrets.  The Polycarbonate Trade Secrets are related to a product or service used, or intended for use in, interstate or foreign commerce.  The Polycarbonate Trade Secrets meet the definition of "trade secrets" under 18 U.S.C. § 1839(3) because they constitute business, scientific, technical, economic, or engineering information (including patterns, plans, compilations, formulas, designs, methods, techniques, and processes).  Trinseo has taken reasonable measures to keep the secrecy of the Polycarbonate Trade Secrets, and the Polycarbonate Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who has the ability to derive or obtain economic value from the disclosure or use of the Polycarbonate Trade Secrets.

61.     Defendants have willfully and maliciously misappropriated critical data from the Polycarbonate Trade Secrets by acquiring, using and/or disclosing it in interstate and international commerce as described above, without Trinseo's express or implied consent, both to enrich themselves and to materially aid Trinseo's direct competitors. Defendants knew, or had reason to know, that the Polycarbonate Trade Secrets had been

24-20460.734

acquired by improper means, as set forth above. Defendants have therefore "misappropriated" Trinseo's Polycarbonate Trade Secrets, as that term is used in 18 U.S.C. § 1839(5).

62. The continued misappropriation of the Polycarbonate Trade Secrets by Defendants has caused, and unless enjoined as requested below will continue to cause, irreparable injury to Trinseo. Trinseo has no adequate remedy at law to ameliorate the harm caused by the existing and continued misappropriation of the Polycarbonate Trade Secrets. Accordingly, Trinseo seeks permanent injunctive relief as permitted by 18 U.S.C. § 1836(3)(A) as set forth below.

63. As a direct, proximate, and foreseeable result of KBR's actual and continued threatened misappropriation of trade secrets, and the material aid that the Harper Defendants and Davis Defendants rendered to Luxi and KBR to accomplish their unlawful scheme, Trinseo has been damaged in an amount not yet fully ascertained through the loss of business opportunities and corresponding profits, the unlawful head start that Luxi, KBR, and KBR's customers were able to obtain in the polycarbonate licensing/manufacturing industry, the potential diminution of the value of Trinseo's Polycarbonate Trade Secrets, and the enabling of Chinese polycarbonate manufacturers to quickly ramp up production at a much lower total investment cost, which has led to further flooding of the market with polycarbonate flake and a corresponding continued erosion of profits from its polycarbonate business. Defendants' conduct also threatens irreparable harm to Trinseo's goodwill and reputation as a market leader and exclusive source of the Polycarbonate Trade Secrets.

24-20460.735

64.     Defendants each acted willfully, maliciously, and with the deliberate intent to injure Trinseo's business, thereby entitling Trinseo to exemplary damages and/or attorneys' fees in an amount to be proven at trial.

### Count 2
### Common-Law Misappropriation of Confidential Information
### against all Defendants

65.     Trinseo incorporates the foregoing paragraphs by reference as if fully set forth herein.

66.     To the extent that the information all Defendants have wrongfully acquired and disclosed for their monetary benefit does not constitute "trade secrets" but instead constitutes confidential information, Trinseo hereby alternatively asserts this claim for common-law misappropriation of trade secrets under Texas law.  Texas law applies to this claim, and to the other tort claims asserted below because, with respect to the events that are the basis of those claims, Texas has the most significant relationship to the occurrence and the parties when considering the place where the conduct causing the injury occurred, the Defendant's principal place of business, and the unlawful benefits inuring to all Defendants while located in Texas.

67.     The data and documents described in Paragraph 16 also constitutes protected confidential information under Texas law, because they are compilations of information that Trinseo uses in its business, which gives Trinseo an opportunity to obtain an advantage over competitors that do not know or do not use the information. Trinseo owned this confidential information and took reasonable steps under the circumstances to keep that information substantially secret.

24-20460.736

68.     Defendants have unlawfully and through improper means misappropriated a large portion of Trinseo's confidential information and have commercially used that information in the course of a competing business, unlawfully enriching themselves while giving Luxi, KBR, and its customers and Trinseo's competitors, a head start in the marketplace without having to spend the time, effort, or expense that any honest business has to incur.  That unlawful head start will also contribute to the dramatic oversupply of competing interfacial polycarbonate flake in the marketplace from Chinese manufacturers, which will lead to the continued erosion of Trinseo's profits from its polycarbonate business unit.  Such conduct constitutes unlawful misappropriation of Trinseo's confidential information under Texas common law, and Texas law applies because the theft of the information, and the benefits Defendants enjoyed as a result, all occurred in this District.  As a consequence, Trinseo has suffered and will continue to suffer irreparable harm for which it hereby seeks injunctive relief and damages.

## Count 3
### Conversion against all Defendants

69.     Trinseo re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

70.     Trinseo owns trade secrets and confidential information relating to its interfacial polycarbonate flake business as described in Paragraph 16 above.  KBR, the Davis Defendants, and the Harper Defendants have unlawfully and without authorization assumed and exercised control over that property to the exclusion of, or inconsistent with, Trinseo's rights as an owner of that property.  At the time that these Defendants assumed

## Count 7
## Constructive Trust

103.   Trinseo re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

104.   Trinseo requests the Court to impose a constructive trust over any money or property owned by KBR, Harper, SHC, PCS, Davis, and PRC that can be traced back to the ill-gotten gains from the schemes outlined above.

## VI.
## Prayer

Trinseo prays that Trinseo recovers judgment against KBR, Harper, SHC, PCS, Davis, and PRC, jointly and severally, as follows:

(a)   actual damages and disgorgement of unjustly obtained benefits;

(b)   an equitable accounting;

(c)   injunctive relief as outlined above and determined by the Court;

(d)   punitive damages;

(e)   reasonable attorneys' fees;

(f)   a constructive trust;

(g)   pre-judgment interest at the maximum non-usurious rate;

(h)   all taxable court costs; and

(i)   all other relief to which Trinseo may show itself entitled.

24-20460.751

Respectfully submitted,

**HICKS THOMAS LLP**
A REGISTERED LIMITED LIABILITY PARTNERSHIP

By: _____

**Stewart Hoffer (Attorney in Charge)**
Texas Bar No. 00790891
S.D. Tex. I.D. No. 20123
shoffer@hicks-thomas.com
700 Louisiana, Suite 2300
Houston, Texas 77002
713.547.9100 (Telephone)
713.547.9150 (Facsimile)

**Attorneys for Plaintiff Trinseo Europe GmbH**

## <u>Certificate of Service</u>

I hereby certify that a true and correct copy of this Plaintiff's Second Amended Complaint has been served this ___ day of November 2021 to the parties listed below via the Court's ECF noticing system or via email pursuant to the agreement of the parties.

| | | |
|---|---|---|
| | Geoffrey L. Harrison | |
| | gharrison@susmangodfrey.com | |
| | Matthew Behncke | Matt Allen |
| | mbehncke@susmangodfrey.com | Matt.allen@allenhavens.com |
| | Florence T. Chen | ALLEN & HAVENS, LLP |
| Mr. Steve Harper | fchen@susmangodfrey.com | 3701 Kirby Drive, Suite 1212 |
| stevemharper@msn.com | SUSMAN GODFREY L.L.P. | Houston, Texas 77098 |
| | 1000 Louisiana Street, Ste. 5100 | |
| | Houston, Texas 77002 | |

_____

**Stewart Hoffer**

24-20460.752

Tab 3

# JURY VERDICT

## QUESTION NO. 1

(Concerning the Existence of Trade Secrets)

**Instructions on Question No. 1**

*The burden of proof in Question No. 1 is on the Plaintiff.*

**Trade Secret.** A trade secret may take many forms, including all forms and types of financial, business, scientific, technical, economic, or engineering information. A trade secret may include patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes. A trade secret may be tangible or intangible. A trade secret does not have to be stored, compiled, or memorialized. But if it is, it does not have to be stored, compiled, or memorialized in any particular manner, such as physically, electronically, graphically, photographically, or in writing.

For a particular category of information to qualify as a trade secret, Trinseo must prove the following by a preponderance of the evidence.

1. The polycarbonate trade secret is not generally known to another person who can obtain economic value from the disclosure or use of the information;
2. Another person cannot readily discover that information through proper means;
3. That polycarbonate trade secret derives independent economic value, actual or potential, from not being known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information; and
4. Trinseo has taken reasonable steps to keep that polycarbonate trade secret secret.

14

**Question No. 1: Do you find by a preponderance of the evidence that any of the following are trade secrets?**

*While questioning Mr. Duane, counsel for the Plaintiff and counsel for the Defendants used different numbers to refer to the alleged trade secrets. There is no legal significance to the order listed below. The following questions are presented in the order that Plaintiff's counsel introduced the evidence and numbered the trade secrets. For ease of reference, Defendants' order and numbering is indicated on the right side.*

| Plaintiff's No. | | YES | NO | Defendants' No. |
|---|---|---|---|---|
| No. 1: | Process control strategy and Concepts and Control Algorithms | ✓ | | (1) |
| No. 2: | Raw Materials Specifications/Composition | | ✓ | (9) |
| No. 3: | Phosgene Reactor Design and Associated Pressure Vessel Containment | ✓ | | (2) |
| No. 4: | Continuous Plug Flow Oligomerization Reactor Inside Pressure Vessel Containment (with static mixer design) | ✓ | | (3) |
| No. 5: | Thermal Stabilizer Addition System | | ✓ | (8) |
| No. 6: | Steam Devolatilization Process | ✓ | | (7) |
| No. 7: | Polymer Solution Atomizer Nozzle | | ✓ | (4) |
| No. 8: | "Snake" Design | | ✓ | (5) |
| No. 9: | Polycarbonate Product Composition, Formulations or "Recipes" | | ✓ | (10) |
| No. 10: | Negative and Positive Knowledge | | ✓ | (11) |

*If you answered "yes" to any part of Question No. 1, then answer Question No. 2.*

*If you answered "no" to all parts of Question No. 1, then go to the last page where the foreperson should sign and date the verdict.*

## QUESTION NO. 2

(Concerning the Alleged Misappropriation of the Claimed Trade Secrets)

**Instructions on Question No. 2**

*The burden of proof for Question No. 2 and its subparts is on the Plaintiff.*

*You must answer Question No. 2 as it pertains to any of the alleged trade secrets for which you answered "yes" in Question No. 1.*

Trinseo claims that the Defendants misappropriated trade secrets belonging to Trinseo.

To prove its claims, Trinseo must prove the following facts by a preponderance of the evidence.

1. Trinseo owns the valid trade secret in question; and
2. That trade secret relates to a product or service used in, or intended for use in, interstate or foreign commerce, and
3. The Defendant misappropriated the trade secret.

You must answer specifically for each Defendant.

**Interstate or Foreign Commerce.** Trinseo claims that each of its trade secrets relates to a product or service used in, or intended for use in, interstate or foreign commerce. Use or intended use of the product or service in interstate commerce means that the product or service involves travel, trade, transportation, or communication between a place in one state and a place in another state. Use of the product or service in foreign commerce means that the product or service involves travel, trade, transportation, or communication between a place in the United States and a place outside of the United States.

16

**Misappropriation.** For Trinseo to prove that a particular Defendant misappropriated a

particular polycarbonate trade secret, Trinseo must prove the following facts by a preponderance

of the evidence.

1. The Defendant acquired the trade secret and knew or should have known that the trade secret had been acquired by improper means; or
2. The Defendant disclosed or used the trade secret without Trinseo's express or implied consent and the Defendant—
   i. Used improper means to acquire the trade secrets; or
   ii. At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was
      i. derived from a third person who had used improper means to acquire the trade secret;
      ii. acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or
      iii. derived from or through a third person who was under a duty to maintain the secrecy of or limit the use of the trade secret; or
   iii. Before a material change in the position of the Defendant, knew or had reason to know that the trade secret was a trade secret; and knowledge of the trade secret had been acquired by accident or mistake.

**Improper means** may include theft, bribery, misrepresentation, breach or inducement of

a breach of duty to maintain secrecy, and espionage through electronic or other means. Improper

means does not include reverse engineering, independent derivation, or any other lawful means

of acquisition.

**Use** means any exploitation of the trade secret that is likely to result in injury to the trade

secret owner or enrichment to the Defendant. Merely receiving trade secret information does not

constitute "use" of a trade secret. Misappropriation does not require that the Defendant use it in

exactly the form in which the Defendant received it. In other words, the trade secret owner does

not need to show direct copying. To find "use," you must find that the Defendant has actually put

the trade secret to commercial operation and has benefitted from the use of that secret in

17

commercial operation. For example, marketing goods that embody the trade secret, employing

the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate

research or development, or soliciting customers through the use of information that is a trade

secret all constitute "use."

**Question No. 2(a): Do you find by a preponderance of the evidence that *KBR*
misappropriated any of the following of Trinseo's claimed polycarbonate trade secrets?**

*Answer only for the claimed trade secrets for which you answered "yes" in Question No. 1. If
you answered "no" in Question No. 1 for any claimed trade secret, leave this question blank for
that claimed trade secret.*

*Again, there is no legal significance to the order listed below. The following questions are
presented in the order that Plaintiff's counsel introduced the evidence and numbered the trade
secrets. For ease of reference, Defendants' order and numbering is indicated on the right side.*

| Plaintiff's No. | | YES | NO | Defendants' No. |
|---|---|---|---|---|
| No. 1: | Process control strategy and Concepts and Control Algorithms | ✓ | | (1) |
| No. 2: | Raw Materials Specifications/Composition | | ✓ | (9) |
| No. 3: | Phosgene Reactor Design and Associated Pressure Vessel Containment | ✓ | | (2) |
| No. 4: | Continuous Plug Flow Oligomerization Reactor Inside Pressure Vessel Containment (with static mixer design) | ✓ | | (3) |
| No. 5: | Thermal Stabilizer Addition System | | ✓ | (8) |
| No. 6: | Steam Devolatilization Process | ✓ | | (7) |
| No. 7: | Polymer Solution Atomizer Nozzle | | ✓ | (4) |
| No. 8: | "Snake" Design | | ✓ | (5) |
| No. 9: | Polycarbonate Product Composition, Formulations or "Recipes" | | ✓ | (10) |
| No. 10: | Negative and Positive Knowledge | | ✓ | (11) |

24-20460.7549

**Question No. 2(b): Do you find by a preponderance of the evidence that *Stephen Harper* misappropriated any of the following of Trinseo's claimed polycarbonate trade secrets?**

*Answer only for the claimed trade secrets for which you answered "yes" in Question No. 1. If you answered "no" in Question No. 1 for any claimed trade secret, leave this question blank for that claimed trade secret.*

| Plaintiff's No. | | **YES** | **NO** | Defendants' No. |
|---|---|---|---|---|
| No. 1: | Process control strategy and Concepts and Control Algorithms | ✓ | | (1) |
| No. 2: | Raw Materials Specifications/Composition | | ✓ | (9) |
| No. 3: | Phosgene Reactor Design and Associated Pressure Vessel Containment | ✓ | | (2) |
| No. 4: | Continuous Plug Flow Oligomerization Reactor Inside Pressure Vessel Containment (with static mixer design) | ✓ | | (3) |
| No. 5: | Thermal Stabilizer Addition System | | ✓ | (8) |
| No. 6: | Steam Devolatilization Process | ✓ | | (7) |
| No. 7: | Polymer Solution Atomizer Nozzle | | | (4) |
| No. 8: | "Snake" Design | | | (5) |
| No. 9: | Polycarbonate Product Composition, Formulations or "Recipes" | | | (10) |
| No. 10: | Negative and Positive Knowledge | | | (11) |

**Question No. 2(c): Do you find by a preponderance of the evidence that *Steve Harper Consulting, Inc.* misappropriated any of the following of Trinseo's claimed polycarbonate trade secrets?**

*Answer only for the claimed trade secrets for which you answered "yes" in Question No. 1. If you answered "no" in Question No. 1 for any claimed trade secret, leave this question blank for that claimed trade secret.*

| Plaintiff's No. | | **YES** | **NO** | Defendants' No. |
|---|---|---|---|---|
| No. 1: | Process control strategy and Concepts and Control Algorithms | ✓ | | (1) |
| No. 2: | Raw Materials Specifications/Composition | | | (9) |
| No. 3: | Phosgene Reactor Design and Associated Pressure Vessel Containment | ✓ | | (2) |
| No. 4: | Continuous Plug Flow Oligomerization Reactor Inside Pressure Vessel Containment (with static mixer design) | ✓ | | (3) |
| No. 5: | Thermal Stabilizer Addition System | | | (8) |
| No. 6: | Steam Devolatilization Process | ✓ | | (7) |
| No. 7: | Polymer Solution Atomizer Nozzle | | | (4) |
| No. 8: | "Snake" Design | | | (5) |
| No. 9: | Polycarbonate Product Composition, Formulations or "Recipes" | | | (10) |
| No. 10: | Negative and Positive Knowledge | | | (11) |

20

**Question No. 2(d): Do you find by a preponderance of the evidence that *Polycarbonate Consulting Services, Inc* misappropriated any of the following of Trinseo's claimed polycarbonate trade secrets?**

*Answer only for the claimed trade secrets for which you answered "yes" in Question No. 1. If you answered "no" in Question No. 1 for any claimed trade secret, leave this question blank for that claimed trade secret.*

| Plaintiff's No. | | YES | NO | Defendants' No. |
|---|---|---|---|---|
| No. 1: | Process control strategy and Concepts and Control Algorithms | ✓ | | (1) |
| No. 2: | Raw Materials Specifications/Composition | | | (9) |
| No. 3: | Phosgene Reactor Design and Associated Pressure Vessel Containment | ✓ | | (2) |
| No. 4: | Continuous Plug Flow Oligomerization Reactor Inside Pressure Vessel Containment (with static mixer design) | ✓ | | (3) |
| No. 5: | Thermal Stabilizer Addition System | | | (8) |
| No. 6: | Steam Devolatilization Process | ✓ | | (7) |
| No. 7: | Polymer Solution Atomizer Nozzle | | | (4) |
| No. 8: | "Snake" Design | | | (5) |
| No. 9: | Polycarbonate Product Composition, Formulations or "Recipes" | | | (10) |
| No. 10: | Negative and Positive Knowledge | | | (11) |

21

**Question No. 2(e): Do you find by a preponderance of the evidence that** *William "Bill" Davis* **misappropriated any of the following of Trinseo's claimed polycarbonate trade secrets?**

*Answer only for the claimed trade secrets for which you answered "yes" in Question No. 1. If you answered "no" in Question No. 1 for any claimed trade secret, leave this question blank for that claimed trade secret.*

| Plaintiff's No. | | YES | NO | Defendants' No. |
|---|---|---|---|---|
| No. 7: | Polymer Solution Atomizer Nozzle | | | (4) |
| No. 9: | Polycarbonate Product Composition, Formulations or "Recipes" | | | (10) |
| No. 10: | Negative and Positive Knowledge | | | (11) |

**Question No. 2(f): Do you find by a preponderance of the evidence that** *Polycarbonate Resins Consulting, LLC* **misappropriated any of the following of Trinseo's claimed polycarbonate trade secrets?**

*Answer only for the claimed trade secrets for which you answered "yes" in Question No. 1. If you answered "no" in Question No. 1 for any claimed trade secret, leave this question blank for that claimed trade secret.*

| Plaintiff's No. | | YES | NO | Defendants' No. |
|---|---|---|---|---|
| No. 7: | Polymer Solution Atomizer Nozzle | | | (4) |
| No. 9: | Polycarbonate Product Composition, Formulations or "Recipes" | | | (10) |
| No. 10: | Negative and Positive Knowledge | | | (11) |

*If you answered "yes" to any part of Question No. 2, then answer the following question.*

*If you answered "no" to all of the subparts of Question No. 2 for **any** Defendant, then you do not need to answer the following questions **with respect to that Defendant**.*

*If you answered "no" to all of the subparts of Question No. 2 for **all** of the Defendants, then go to the last page where the foreperson should sign and date the verdict.*

## QUESTION NO. 3

(Concerning Compensatory Damages, if any)

**Instructions on Question No. 3**

*The burden of proof in Question No. 3 and all of its subparts is on the Plaintiff. Answer Question No. 3 only for those Defendants, if any, for whom you answered "yes" to some subpart of Question No. 2.*

If Trinseo has not proved its claim for misappropriation of trade secrets, your verdict must be for Defendants, and you do not consider damages.

If Trinseo has proved its claim for misappropriation of trade secrets, you must determine the amount of damages, if any, that Trinseo proved by a preponderance of the evidence it suffered because of any Defendants' misappropriation of its trade secrets. You should not interpret the fact that I am giving instructions about Trinseo's claim for damages as an indication in any way that I believe that Trinseo should, or should not, win this case. I am instructing you on damages only so that you will have guidance in the event you decide that a Defendant is liable and that Trinseo is entitled to recover money from the Defendant.

In a case like this, there are two ways of measuring damages, if any. Those are:

(1) The amount of Defendant's unjust enrichment that is a result of its misappropriation of the polycarbonate trade secrets, even if that amount is more than the actual damages suffered by Trinseo; or

(2) the amount of a reasonable royalty for the Defendant's unauthorized disclosure or use of the polycarbonate trade secrets

These will be described in detail below. Against the Harper and Davis Defendants, Trinseo only seeks unjust enrichment damages. Against KBR, Trinseo seeks a reasonable royalty and, alternatively, unjust enrichment. You are to answer both questions set out below for KBR, but you should not include any damages in one answer that you have included in another. For example, do not include damages awarded in your response to 3(a) in your response to any other subpart of Question No. 3.

24

**Reasonable royalty**. A royalty is a payment made to the owner of a trade secret by another person in exchange for the right to use that trade secret. In this context, a reasonable royalty is the amount of the royalty payment to which Trinseo and KBR would have agreed in a hypothetical negotiation taking place at the time KBR's alleged misappropriation first began. In considering this hypothetical negotiation, you should focus on what the expectations of Trinseo and KBR would have been if had they entered into an agreement at that time, and if they had they acted reasonably in their negotiations. In determining a reasonable royalty, you must assume that both Trinseo and KBR believed that the misappropriated information qualified as trade secrets, and that both parties were willing to enter into an agreement. The reasonable royalty that you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty that either Trinseo or KBR would have preferred. Although evidence of the actual profits that KBR made from the misappropriation of Trinseo's trade secrets may be used to determine KBR's anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on KBR's actual profits. A reasonable royalty compensating Trinseo for damages must reflect the value attributable to the misappropriated technology, and no more.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time that KBR's alleged misappropriation began. The factors that you may consider in making your determination include:

1. The resulting and foreseeable changes in the parties' competitive posture; and
2. The royalty prices that past purchasers may have paid; and
3. The total value to Trinseo of the misappropriated trade secrets, including the cost to develop the trade secrets and the importance of those secrets to Trinseo's business; and
4. The nature and extent of the use that the Defendant intended for the misappropriated secrets; and

25

5. Any other unique factors that might have affected the parties' agreement, such as the ready availability of alternative processes.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors that in your mind would have increased or decreased the royalty that KBR would have been willing to pay and that Trinseo would have been willing to accept, acting as normally prudent businesses.

**Unjust enrichment** is the net profit to the Defendant resulting from its/his alleged misappropriation of Trinseo's trade secrets. When determining a Defendant's net profits for unjust enrichment, you should consider only profits caused by trade secrets misappropriated by that Defendant.

In the following questions, do not reduce the amount in your answer to one question based on the amount in your answer to any other question, but do not include damages in the answer to any subpart that you have already included in an answer to another.

Answer the following in dollars and cents.

**Question No. 3(a): As to *KBR's* misappropriation of trade secrets, what sum of money, if any, do you find by a preponderance of the evidence would be a reasonable royalty at the time for that misappropriation?**

$ *50,000,000*

26

Question No. 3(b): As to *KBR's* misappropriation of trade secrets, what sum of money, if any, do you find by a preponderance of the evidence is the unjust enrichment to *KBR* caused by that misappropriation?

$ 21,206,132

Question No. 3(c): As to *Steve Harper's* misappropriation of trade secrets, what sum of money, if any, do you find by a preponderance of the evidence is the unjust enrichment to *Steve Harper* caused by that misappropriation?

$ 0

Question No. 3(d): As to *Steve Harper Consulting, Inc.'s* misappropriation of trade secrets, what sum of money, if any, do you find by a preponderance of the evidence is the unjust enrichment to *Steve Harper Consulting, Inc* caused by that misappropriation?

$ 2,930,817

Question No. 3(e): As to *Polycarbonate Consulting Services, Inc.'s* misappropriation of trade secrets, what sum of money, if any, do you find by a preponderance of the evidence is the unjust enrichment to *Polycarbonate Consulting Services, Inc.* caused by that misappropriation?

$ 2,549,706

Question No. 3(f): As to *William "Bill" Davis's* misappropriation of trade secrets, what sum of money, if any, do you find by a preponderance of the evidence is the unjust enrichment to *William "Bill" Davis* caused by that misappropriation?

$ _____

24-20460.7558

**Question No. 3(g): As to *Polycarbonate Resins Consulting, LLC's* misappropriation of trade secrets, what sum of money, if any, do you find by a preponderance of the evidence is the unjust enrichment to *Polycarbonate Resins Consulting, LLC* caused by that misappropriation?**

$ _____

*If you awarded any compensatory damages against any Defendant in response to any subpart of Question No. 3, then answer Question No. 4 only for those Defendants.*

*If you did not award any damages in response to any subpart of Question No. 3, then go to the last page where the foreperson should sign and date the verdict.*

24-20460.7559

## QUESTION NO. 4

(Concerning Exemplary Damages, if any)

**Instructions on Question No. 4**

*The burden of proof on Question No. 4 and all of its subparts is on the Plaintiff.*

If Trinseo proved by a preponderance of the evidence that a Defendant has misappropriated Trinseo's alleged polycarbonate trade secrets willfully and maliciously, then you may award "exemplary" damages, that is, damages meant to make an example of that Defendant. Exemplary damages are sometimes referred to as punitive damages.

The purpose of punitive damages is to punish and deter, not to compensate. Punitive damages serve to punish a Defendant for willful and malicious conduct and, by doing so, to deter others from engaging in similar conduct in the future. You are not required to award punitive damages. If you do decide to award punitive damages, you must use sound reason in setting the amount. Your award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. It should be presumed that Trinseo has been made whole by compensatory damages, so punitive damages should be awarded only if the Defendant's misconduct is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

If you decide to award punitive damages, the following factors should guide you in fixing the proper amount:

1. the reprehensibility of the Defendant's conduct, including but not limited to whether there was deceit, cover-up, insult, intended or reckless injury, and whether the Defendant's conduct was motivated by a desire to augment profit;
2. the ratio between the punitive damages you are considering awarding and the amount of harm that was suffered by Trinseo or with which Trinseo was threatened;

You may consider the financial resources of the Defendant in fixing the amount of punitive damages. You may impose punitive damages against one or more of the Defendants and not others. You may also award different amounts against the Defendants.

29

**Willful and Malicious Misappropriation** is defined as intentional misappropriation resulting from the conscious disregard of the rights of the owner of the trade secret.

**Question No. 4(a): Do you find by a preponderance of the evidence that any of the following Defendants willfully and maliciously misappropriated Trinseo's polycarbonate trade secrets?**

*Answer only as to those Defendants for whom you awarded compensatory damages in Question No. 3.*

|  | YES | NO |
|---|---|---|
| **KBR:** | | ✓ |
| **Stephen Harper:** | | ✓ |
| **Steve Harper Consulting, Inc:** | | ✓ |
| **Polycarbonate Consulting Services, Inc:** | | ✓ |
| **William "Bill" Davis:** | | ✓ |
| **Polycarbonate Resins Consulting, LLC:** | | ✓ |

*If your answer is "yes," for any part of Question No. 4(a), then you may answer Question No. 4(b). If you answered "no" for all subparts of Question No. 4(a), then go to Question No. 5.*

24-20460.7561

**Question No. 4(b): What sum of money, if any, do you find by a preponderance of the evidence should be assessed as exemplary damages for the conduct you found in Question 4(a)?**

*Answer only as to those parties for whom you answered "yes" in Question No. 4(a).*

Answer in dollars and cents as to each Defendant.

| | |
|---|---|
| **KBR:** | $_____ |
| **Stephen Harper:** | $_____ |
| **Steve Harper Consulting, Inc:** | $_____ |
| **Polycarbonate Consulting Services, Inc:** | $_____ |
| **William "Bill" Davis:** | $_____ |
| **Polycarbonate Resins Consulting, Inc:** | $_____ |

*Go on to Question No. 5.*

## QUESTION NO. 5

(Concerning When Trinseo Discovered, or Through Reasonable Diligence Should Have Discovered, the Alleged Misappropriation)

**Instructions on Question No. 5**

*The burden of proof for Question No. 5 and all of its subparts is on the Defendants.*

Defendants claim that Trinseo's lawsuit was not filed within the time set by law, which is within three years after Trinseo discovered, or should have discovered through the exercise of reasonable diligence, the alleged misappropriation. To succeed on this defense, Defendants must prove by a preponderance of the evidence that Trinseo discovered, or should have discovered through the exercise of reasonable diligence, that each Defendant's first alleged misappropriation of the polycarbonate trade secrets occurred before the following dates: February 12, 2017 for Harper, November 27, 2017 for KBR, and May 14, 2018 for Davis. In answering this question, you should not consider evidence regarding events that took place after May 14, 2018, as any event occurring after that date would be within the limitations periods.

**Question No. 5(a): Do you find by a preponderance of the evidence that Trinseo discovered, or should have discovered through the exercise of reasonable diligence, Harper's first alleged misappropriation before February 12, 2017?**

YES _____     NO ✓

**Question No. 5(b): Do you find by a preponderance of the evidence that Trinseo discovered, or should have discovered through the exercise of reasonable diligence, KBR's first alleged misappropriation before November 27, 2017?**

YES _____     NO ✓

32

**Question No. 5(c): Do you find by a preponderance of the evidence that Trinseo discovered, or should have discovered through the exercise of reasonable diligence, Davis's first alleged misappropriation before May 14, 2018?**

<u>YES</u>       <u>NO</u>

_____        ✓

*Go on to Question No. 6.*

33

24-20460.7564

## QUESTION NO. 6

(Concerning Laches)

**Instructions on Question No. 6**

*The burden of proof for Question No. 6 and all of its subparts is on the Defendants.*

Defendants assert that the defense of laches applies to Trinseo's misappropriation of alleged trade secrets claims. Laches regarding the misappropriation of alleged trade secrets claim is an equitable defense with three elements: (1) a delay in asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted.

Two kinds of prejudice may support a defense of laches: (1) the delay has resulted in the loss of evidence; or (2) Defendants have changed their position in a way that would not have occurred if Trinseo had not delayed.

If Trinseo delayed in asserting its right, that delay is not excusable, and that delay caused prejudice to the Defendant, then the defense of laches may apply to Trinseo's claim.

**Question No. 6(a): Do you find by a preponderance of evidence that the defense of laches applies to Trinseo's claims for trade secret misappropriation against *KBR*?**

<u>YES</u>          <u>NO</u>

_____          ✓

**Question No. 6(b): Do you find by a preponderance of evidence that the defense of laches applies to Trinseo's claims for trade secret misappropriation against *Stephen Harper*?**

<u>YES</u>          <u>NO</u>

_____          ✓

**Question No. 6(c): Do you find by a preponderance of evidence that the defense of laches applies to Trinseo's claims for trade secret misappropriation against *Steve Harper Consulting, Inc*?**

<u>YES</u>          <u>NO</u>

_____          ✓

34

**Question No. 6(d):** Do you find by a preponderance of evidence that the defense of laches applies to Trinseo's claims for trade secret misappropriation against *Polycarbonate Consulting Services, Inc*?

YES
_____

NO ✓
_____

**Question No. 6(e):** Do you find by a preponderance of evidence that the defense of laches applies to Trinseo's claims for trade secret misappropriation against *William "Bill" Davis*?

YES
_____

NO ✓
_____

**Question No. 6(f):** Do you find by a preponderance of evidence that the defense of laches applies to Trinseo's claims for trade secret misappropriation against *Polycarbonate Resins Consulting, LLC*?

YES
_____

NO ✓
_____

*Go on to Question No. 7.*

## QUESTION NO. 7

(Concerning Harper and His Relationship to SHC and PCS)

### Instructions on Question No. 7

*The burden of proof on Question No. 7 is on the Plaintiff*

*If you answered any subpart of Question No. 3 in an amount greater than $0.00 as to the companies Steve Harper Consulting, Inc ("SHC") or Polycarbonate Consulting Services, Inc ("PCS"), then answer Question No. 7. Otherwise, go to Question No. 8.*

Trinseo has the burden of showing by a preponderance of the evidence that Stephen Harper is responsible for the conduct of SHC and/or PCS. Stephen Harper is responsible for the conduct of SHC and/or PCS if:

1. SHC and/or PCS were merely the alter egos of Stephen Harper;
2. The corporate form of SHC and/or PCS was used to perpetuate a fraud, wrongful act, or defeat a rightful claim; and
3. Disregarding the corporate form of SHC and PCS would achieve an equitable result.

**Alter Ego.** A corporation like SHC or PCS is the alter ego of a shareholder like Stephen Harper when the corporation is a mere instrumentality for the transaction of the shareholder's own affairs, and there is such unity of interest in the ownership that the separate personalities of the corporation and the shareholder no longer exist. To determine whether a corporation is an alter ego of its shareholder, you should consider a number of factors, including whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the corporation's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a mere shell, (7) the shareholder disregards legal formalities, and (8) the corporate funds or assets are used for noncorporate purposes.

36

**Question No. 7: Do you find by a preponderance of the evidence that Stephen Harper is responsible for the conduct of SHC and/or PCS?**

|       | YES | NO |
|-------|-----|----|
| SHC:  | ✓   |    |
| PCS:  | ✓   |    |

*Go on to Question No. 8.*

37

## QUESTION NO. 8

(Concerning Davis and His Relationship to PRC)

**Instructions on Question No. 8**

*The burden of proof in Question No. 8 is on the Plaintiff.*

*If you answered any subpart of Question No. 3 in an amount greater than $0.00 as to the company Polycarbonate Resins Consulting ("PRC"), then answer Question No. 8. Otherwise, go to the last page of this verdict where the foreperson should sign and date the verdict.*

Trinseo has the burden of showing by a preponderance of the evidence that William

"Bill" Davis is responsible for the conduct of PRC. William "Bill" Davis is responsible for the

conduct of PRC if:

### EITHER

PRC was organized and operated as a mere tool or business conduit of William Davis;

there was such unity between PRC and William Davis that the separateness of PRC had ceased;

and holding only PRC responsible would result in injustice.

In deciding whether there was such unity between PRC and William Davis that the separateness

of PRC had ceased, you are to consider the total dealings of PRC and William Davis, including

—

1. the degree to which PRC's property had been kept separate from that of William Davis;
2. the amount of financial interest, ownership, and control William Davis maintained over PRC; and
3. whether PRC had been used for personal purposes of William Davis.

### OR

William Davis used PRC as a sham to perpetrate a fraud, and holding only PRC responsible

would result in injustice.

38

**Question No. 8: Do you find by a preponderance of the evidence that William "Bill" Davis is responsible for the conduct of PRC?**

**YES**           **NO**

_____        _____

**Go to the last page and have the foreperson sign and date the verdict. Thank you for your service.**

24-20460.7570

This ends your deliberations. The foreperson should sign and date the verdict and inform the Court that a verdict has been reached.

We, the jury, have unanimously answered the above and foregoing special issues in the manner indicated in this verdict form and return these answers to the Court as our verdict.

ORIGINAL SIGNITURE ON
FILE IN OFFICE OF THE CLERK
_____                    Jan 26, 2024
FOREPERSON                                  _____
                                            DATE

24-20460.7571

Tab 4

United States District Court
Southern District of Texas
**ENTERED**
September 11, 2024
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TRINSEO, S.A., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-0478 |
| | § | |
| STEPHEN HARPER, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

### SEALED ORDER

The Court issues this Order following a jury trial in the above-styled matter. Plaintiff Trinseo Europe GmbH's ("Trinseo" or "Plaintiff") brought this lawsuit under the Defend Trade Secrets Act ("DTSA") alleging misappropriation of ten trade secrets related to polycarbonate manufacturing ("PC"). Trinseo sued Defendant Kellogg Brown & Root, LLC ("KBR"), Defendants Steve Harper, Steve Harper Consulting, Inc. ("SHC"), Polycarbonate Consulting Services, Inc.("PCS") (collectively, the "Harper Defendants"), and Defendants William Davis and Polycarbonate Resins Consulting, LLC ("PRC") (collectively, the "Davis Defendants"). Upon considering the parties' respective post-trial motions, the Court hereby **AFFIRMS** the jury's finding of liability as to KBR and the Harper Defendants, **VACATES** the jury's award of $50,000,000.00 in reasonable royalty damages against KBR, **VACATES** the jury's award of $21,206,132.00 in unjust enrichment damages against KBR, and **VACATES** the jury's award of $5,480,523.00 against the Harper Defendants. The Court will enter a separate take-nothing Final Judgment and will also enter a Permanent Injunction in separate orders.

## I.     Trial

After twelve days of trial and nearly three days of deliberation, the jury returned a unanimous verdict. (Doc. No. 321).

**Evidence.** There was evidence that clearly established that the Harper Defendants and KBR used confidential PC manufacturing drawings from the Dow Chemical Company ("Dow"). While primarily originating at Dow, that intellectual property eventually became Trinseo's, and at all pertinent times relating to the allegations herein, it remained Trinseo's intellectual property. These Dow drawings, designs, and specifications made up Dow's plant design package for PC manufacturing that was generally believed to be the best in the industry at the time it was created. The evidence demonstrated that various portions of this PC package design were taken by former employees without Dow's or Trinseo's permission. Also without permission, the Harper Defendants knowingly used the PC information in consulting and KBR used the PC information in designing their own PC manufacturing package ("PCMax"), which it ultimately licensed in two Chinese projects—Cangzhou and Pingmei. There is little to no doubt that Trinseo established liability in terms of misappropriation; the real question is whether that misappropriation caused Trinseo any damage and whether Trinseo has proved its damages as required by law.

**Liability.** The jury found that only four out of Trinseo's ten claimed trade secrets were in fact trade secrets. Specifically, the jury found the following to be trade secrets: (1) Process control strategy and Concepts and Control Algorithms, (2) Phosgene Reactor Design and Associated Pressure Vessel Containment, (3) Continuous Plug Flow Oligomerization Reactor Inside Pressure Vessel Containment (with static mixer design), and (4) Steam Devolatization Process.[1] The jury

---

[1] By contrast, the following six claimed trade secrets were found *not* to be trade secrets: Raw materials Specifications/Composition, Thermal Stabilizer Addition System, Polymer Solution Atomizer Nozzle, "Snake" Design, Polycarbonate Product Composition, Formulas, or "Recipes," and Negative and Positive Knowledge.

24-20460.38647

further found that KBR and the Harper Defendants had misappropriated these four trade secrets, while finding that the Davis Defendants had not misappropriated any trade secrets.

**Damages.** As for compensatory damages against KBR, the jury awarded $50,000,000.00 in reasonable royalty damages and $21,206,132.00 in unjust enrichment damages. As for compensatory damages against the Harper Defendants, the jury awarded $0 against Steve Harper, personally, $2,930,817.00 against SHC, and $2,549,706.00 against PCS in unjust enrichment damages. The jury did, however, find that Steve Harper was personally responsible for the conduct of SHC and PCS. The jury did not award any exemplary damages against any defendant.

**Defenses.** Finally, the jury did not find that either of the alleged affirmative defenses barred recovery. Specifically, the jury did not find that Trinseo discovered, or should have discovered through the exercise of reasonable diligence, the misappropriation before the statute of limitations ran, and the jury likewise did not find that the doctrine of laches applied.[2]

## II.    Pending Motions

After Trinseo had rested, Defendants filed several Motions for Judgment as a Matter of Law. (Docs. Nos. 292, 295, 300). Defendants argued the merits of these motions outside the presence of the jury. The Court overruled the motions and permitted the case to continue. Defendants then put on their evidence. After the Defendants rested and after three days of deliberation, the jury returned its verdict and was dismissed. The parties engaged in extensive briefings regarding the effect of the jury's findings. In total, there are five pending post-trial motions, each with responses, replies, and sur-replies. The pending motions are: **1)** KBR's Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial

---

[2] It is uncertain whether the common law doctrine of laches applies to claims for misappropriation under the DTSA. The Court notes that in submitting the question to the jury, it made no determination regarding whether the defense was, in fact, viable. Given that the jury answered the question "no" as to each Defendant, the Court need not reach this question.

24-20460.38648

Findings (Doc. No. 326); **2)** Harper Defendants' Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings (Doc. No. 334); **3)** KBR's Alternative Motion for New Trial or Remittitur (Doc. No. 350); **4)** Trinseo's Motion for Entry of Final Judgment (Doc. No. 328); and **5)** Trinseo's Motion for Entry of Permanent Injunction (Doc. No. 330). The Court will, to an extent, address the motions in the order listed above; however, many of these motions discuss overlapping issues. For example, the issue of apportionment is a common thread. While the Court will address each essential issue raised by the motions, it will not necessarily do so in the order in which the parties raised them.

### III.   Legal Standards

#### a.   Judgment as a Matter of Law

Judgment as a matter of law is appropriate if there is no "legally sufficient evidentiary basis" for "a reasonable jury . . . to find for the party on that issue" on which it prevailed at trial. Fed. R. Civ. P. 50(a); *Laxton v. Gap Inc.*, 333 F.3d 572, 577 (5th Cir. 2003). "Evidence is legally insufficient where the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins.*, 898 F.3d 461, 473 (5th Cir. 2018) (internal quotes and citation omitted).

Courts "accord great deference to the jury's verdict when evaluating the sufficiency of the evidence." *Thomas v. Tex. Dep't of Crim. Just.*, 220 F.3d 389, 392 (5th Cir. 2000). The court "must examine the evidence as a whole," *MultiPlan, Inc. v. Holland*, 937 F.3d 487, 494 (5th Cir. 2019), and "draw all reasonable inferences in the light most favorable to the verdict," *Allstate Ins. v. Receivable Fin. Co.*, 501 F.3d 398, 405 (5th Cir. 2007) (internal quotes and citation omitted). In that light, the court asks whether "the state of proof is such that reasonable and impartial minds

4

could reach the conclusion the jury expressed in its verdict." *Am. Home Assur. Co. v. United Space All., LLC*, 378 F.3d 482, 487 (5th Cir. 2004) (same). In doing so, the court must "credit[ ] the non-moving party's evidence and disregard[ ] all evidence favorable to the moving party that the jury is not required to believe." *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019) (same). It "may not make credibility determinations or weigh the evidence, as those are jury functions." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016) (same).

### b. Motion for New Trial

Rule 50 also provides that a party "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b); *Long v. Shultz Cattle Co.*, 881 F.2d 129, 132 (5th Cir. 1989) (An alternative motion for a new trial "may be granted even if the moving party is not entitled to judgment as a matter of law."). Rule 59(a) provides that a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Though undefined by the Rule, a district court may grant a new trial if, for example, it finds that "the verdict was against the weight of the evidence," or "the damages awarded were excessive." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 784 (5th Cir. 2018) (brackets, internal quotes, and citation omitted). "A motion for a new trial should not be granted unless the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence." *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 497 (5th Cir. 2002).

The decision to grant or deny a motion for a new trial, including the determination of whether a verdict is against the great weight of the evidence, is a question committed to the district court's sound discretion. *Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 230 (5th Cir. 2020); *Foradori v. Harris*, 523 F.3d 477, 503–04 (5th Cir. 2008). This discretion is even broader

24-20460.38650

when the district court denies, rather than grants, such a motion. *Compare Cates v. Creamer*, 431
F.3d 456, 460 (5th Cir. 2005) ("Where a motion for a new trial is granted, we scrutinize that
decision more closely," because "the broad discretion allowed to the trial court is tempered by the
deference due to a jury" (internal quotes and citation omitted)), *with Whitehead v. Food Max of
Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) ("It goes without saying that review of the denial of
a new trial motion is more limited than when one is granted. The denial will he affirmed unless,
on appeal, the party that was the movant in district court makes a clear showing of an absolute
absence of evidence to support the jury's verdict, thus indicating that the trial court had abused its
discretion in refusing to find the jury's verdict contrary to the great weight of the evidence."
(internal quotes and citation omitted)).

## IV.    Analysis

### a.    KBR's Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings (Doc. No. 326)

In its omnibus 46-page motion, KBR manages to raise an inordinate number of issues with
the trial. While the Court appreciates KBR's thoroughness, it finds some of these issues more
meritorious than others and will only address those. Broadly speaking, KBR objects that there is
legally insufficient evidence to support the jury's finding of liability, reasonable royalty
compensatory damages, and unjust enrichment compensatory damages, and that the jury's findings
on the statute of limitations and laches defenses were contrary to the evidence.

#### i.    Objections Regarding Jury's Liability Findings: Trade Secret Status, Misappropriation, Statute of Limitations Defense, and Laches Defense

The Court first addresses what it considers to be KBR's *least* meritorious objections—
those regarding the jury's findings on liability. These include the jury's finding of the trade secret
status and misappropriation of the four found trade secrets, the inapplicability of the statute of

6

24-20460.38651

limitations defense, and the inapplicability of the laches defense, assuming it is a permitted defense. As noted above, the Court must draw all inferences in the light most favorable to the verdict. The presentation of testimony and exhibits in this case was extensive and time-consuming, and the jury was attentive and thorough. Moreover, the Court previously denied KBR's motion for summary judgment on many of the same issues it now raises (for instance, that Trinseo did not take reasonable measures to protect its trade secrets). (Doc. No. 238). Having heard evidence at trial, and having reviewed the trial transcript and exhibits, the Court finds that the jury's liability determinations and affirmative defense determinations are clearly supported by evidence.[3] In fact, these findings are supported by an abundance of evidence. The Court therefore denies KBR's motion as to its objections regarding the jury's finding of trade secret status, the jury's finding of misappropriation of those trade secrets, and the jury's finding that the affirmative defenses (statute of limitations and laches) did not bar Trinseo's claims.

ii. Objections Regarding Jury's Reasonable Royalty Award

The heart of KBR's objections, however, cannot be so easily addressed. These objections concern the jury's award of compensatory damages, both reasonable royalty damages and unjust enrichment damages, and whether those two awards are supported by appropriate evidence. Both in pretrial proceedings and at trial, Trinseo took an all-or-nothing approach to its damages models; it provided one lump sum for damages related to its entire PC technology package that included all ten alleged trade secrets.[4] Trinseo did not divide up the value of its PC package per trade secret or otherwise provide evidence that would enable the jury to place a dollar value to each

---

[3] *See* Trinseo's Response Brief (Doc. No. 354, 34-58) for its recounting of the specific supporting evidence refuting KBR's challenges.

[4] Thomas Pastore, Trinseo's damages expert, testified on cross examination: "I have not done an individual valuation of each of the trade secrets." (Jan. 17 p.m. at 158:10-11).

24-20460.38652

individually alleged trade secret.[5] Moreover, Trinseo did not provide a method for calculating the percentage of the total value of the PC package that would be attributable to each trade secret.[6] Prior to trial, the Court warned Trinseo that this approach would be a gamble, given that the jury could find (and subsequently did find) less than all ten trade secrets to have been misappropriated, in which case any damage figure may be unsupported. *See* (Doc. No. 224).

This is exactly what happened at trial. The jury rejected six of Trinseo's alleged trade secrets and found that only four of the ten were in fact trade secrets that had been misappropriated. While a jury, like the one here, may be properly instructed to award damages only for those trade secrets that it found to have been misappropriated, a proper instruction cannot automatically protect the jury's award if the jury had no evidentiary basis to reduce or apportion that award to account for four out of ten alleged trade secrets. That is what happened in this case. Now, the parties dispute whether, and to what extent, apportionment is required in a trade secrets case like this one, in which the jury finds liability on some but not all of the alleged trade secrets. KBR argues that apportionment is required unless the "entire market value" exception applies, and that Trinseo failed to provide the proof needed to invoke this exception to apportionment. Consequently, the jury's reasonable royalty award is unsupported by evidence. By contrast, Trinseo argues that strict apportionment is not generally required and/or that it otherwise satisfied the entire market value exception[7] to apportionment. Consequently, the jury's reasonable royalty award is supported by evidence.

---

[5] Q: "So if the jury is trying to find out what the value of Trinseo's alleged snake design trade secret is all by itself, they can't take your word for it, right?" A: "I've not done that. I've not done a separation of value. Trinseo doesn't sell a la carte its trade secrets." (Pastore cross examination, Jan. 17 p.m. at 155:24-156:5).

[6] Q: "I want the jury to understand whether or not you're offering them any opinion that would allow them if they don't find that each and every trade secret that Mr. Duane identified as a trade secret was in fact misappropriated by KBR, how are they supposed to determine a smaller amount of [damages] for that share of the trade secrets? You don't offer any opinion like that, do you Mr. Pastore?" A: "I don't have that opinion at this time." (*Id.* at 157:3-11).

[7] Though Trinseo does not actually use the term "entire market value" rule in its briefings until the sur-reply to KBR's Motion for New Trial/Remittitur, Trinseo presents arguments and cases that implicate the rule. The Court will

24-20460.38653

At a high level of generality, KBR argues that the jury's award is wholly unsupported by evidence because the only evidence of damages pertained to Trinseo's entire PC technology package, rather than the individually alleged trade secrets contained therein. KBR maintains that apportionment is required in patent and trade secret cases alike to prevent an unjust award and to ensure that the plaintiff is compensated only for the misappropriated technology and nothing more. Consequently, it maintains that any attempt by the jury to isolate damages for only four trade secrets was necessarily guesswork. Finally, KBR argues that there is a well-defined exception to the apportionment rule, called the entire market value rule (which allows a plaintiff to recover damages on the entire product rather than just the patented/trade-secreted portion only when the patented/trade-secreted portion drives consumer demand for the entire product), and that Trinseo failed to satisfy the requirements of this rule. Specifically, KBR contends that there is no (or insufficient) evidence that any of the four found trade secrets drove the entire consumer demand for the PC package, given that the jury heard evidence that *other* alleged trade secrets (which were not found to be trade secrets) were the "value drivers" and the "core" of the technology.

Meanwhile, Trinseo does not appear to believe that strict apportionment (as discussed in patent cases) has obvious applicability in a trade secret context like this one. It maintains that the reasonable royalty award is appropriate because there was evidence that, in a hypothetical negotiation, Trinseo would only license its entire PC package and would not sell the trade secrets *a la carte.* It further argues that the jury selected a reasonable royalty figure that was 37.5% lower than its expert Thomas Pastore's $80 million figure.[8] Thus, it maintains that the Court should

---

therefore refer to Trinseo's arguments using this phrase as it is the legally correct characterization of its arguments. Moreover, the Court will address certain arguments and cases raised in the New Trial/Remittitur briefing in this section so as to address all issues related to apportionment at once.

[8] This conclusion is totally speculative. Nevertheless, even if one were to accept the premise, there does not appear to be any convincing explanation for why the jury reduced liability for the claimed trade secrets by 60% (10 to 4) yet reduced the damage figure by only 37%. It does not appear that the jury applied a clean fraction (i.e. by reducing Pastore's damage figure by 60%). If the jury reduced its damages based on its partial liability finding (as it was

24-20460.38654

assume that the jury followed the instructions and reduced its damages figure (from the figure suggested by Pastore) to account for its finding that only four out of the ten alleged trade secrets were trade secrets that had been misappropriated. At the same time, Trinseo argues that the entire market value exception is more elastic, and that in cases where the trade-secreted portion is so closely integrated with the entire product such that it is impossible to isolate its value, the plaintiff is permitted to recover on the entire product. Even under the more rigid entire market value rule, though, Trinseo contends that there is sufficient evidence that two of the four found trade secrets— the Oligomerization Reactor and the Steam Devolatization system—satisfy the rule. Finally, Trinseo argues that the fact that the jury heard evidence that *other* alleged trade secrets were also valuable is irrelevant because the Oligomerization Reactor and the Steam Devolatization systems are "combination" trade secrets that encompass those other "value drivers."

As the summaries above show, the parties disagree about both the law and the facts at most every step of the analysis. Before addressing the parties' arguments regarding the evidence presented at trial, the Court must first resolve the parties' disputes regarding whether apportionment is required and what exactly the contours of the entire market value rule are. Accordingly, the Court begins its analysis with a careful examination of the law.

### Controlling Law

The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, clearly outlines the various forms of damages that a court may award.

> In a civil action brought under this subsection with respect to misappropriation of a trade secret, a court may . . . award—

---

instructed to do), then that reduction was arbitrary. Moreover, Pastore's $80 million figure was not the only reasonable royalty number in evidence, though. It is possible that the jury considered these other royalty estimations and decided that a lower number was more reasonable. Under this scenario, the jury would have awarded Trinseo damages representing all ten trade secrets despite finding liability on only four.

24-20460.38655

(i)     damages for actual loss caused by the misappropriation of the trade secret; and

(ii)    damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or

(iii)   in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret.

18 U.S.C. § 1836(b)(3)(B). First, damages may be measured by the actual losses sustained by the plaintiff caused by the misappropriation. This type of damages was not sought in this case and is not at issue here. Second, damages may be measured by the defendant's **unjust enrichment** caused by the misappropriation, to the extent that such damages are not duplicative of any damages awarded for actual loss. "This is measured by the profits the defendant obtained from using the trade secret." *Stanacard v. Rubarb LLC*, 2016 WL 6820741, at *1 (S.D.N.Y. Nov. 10, 2016). In short, this is a form of disgorgement. Third, regardless of whether the plaintiff has a contract right to such relief, a plaintiff may recover damages in the form of a **reasonable royalty** for misappropriation of a trade secret. In this case, Plaintiff sought damages for unjust enrichment and reasonable royalty. The Court will address these in reverse order.

In patent law, a reasonable royalty award attempts to measure a hypothetically agreed value of what the defendant wrongfully obtained from the plaintiff. A reasonable royalty may be calculated based on the supposed result of hypothetical negotiations between the plaintiff and defendant. *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1267 (Fed. Cir. 2013). The hypothetical negotiation "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). In *University*

11

*Computing*, the Fifth Circuit imported these damage principles from patent law into trade secret reasonable royalty law and held that "the proper measure of damages in the case of a trade secret appropriation is to be determined by reference to the analogous line of cases involving patent infringement." *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974).

### Apportionment

Looking then to patent law, it is a long-standing requirement that patent owners "*must* in every case give evidence tending to separate *or apportion* the defendant's profits and the patentee's damages *between the patented feature and the unpatented features*, and such evidence must be reliable and tangible, and not conjectural or speculative." *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (emphasis added). Indeed, in patent cases in the 140 years since *Garretson*, the Federal Circuit has strictly mandated that a reasonable royalty award must apportion the value of the patented features from the unpatented features of the accused product.

For example, in *Finjan, Inc. v. Blue Coat Sys., Inc.*, the court vacated a $24 million award of damages measured by reasonable royalty due to the failure to properly apportion damages evidence and explained that "[w]hen the accused technology does not make up the whole of the accused product, apportionment is required." 879 F.3d 1299, 1302, 1309 (Fed. Cir. 2018). Likewise, in *Ericsson, Inc. v. D-Link Systems, Inc*, the court vacated a $10 million award of damages measured by reasonable royalty for infringement of a standard essential patent ("SEP") and, citing *Garretson*, explained that "[a]s with all patents, the royalty rate for SEPs must be apportioned to the value of the patented invention." 773 F.3d 1201, 1207, 1232, 1235 (Fed. Cir. 2014).[9]

---

[9] *See also Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 287–90 (N.D.N.Y. 2009) (granting JMOL against a $184 million award of damages measured by reasonable royalty due to an expert's refusal to "heed [the]

While the Fifth Circuit does not appear to have encountered a case involving apportionment in trade secrets cases, other courts have grappled with how to apply this patent law requirement to trade secrets cases. Both KBR and Trinseo cite to case law supporting their position on the issue of whether apportionment is required on a per trade secret.[10]

On KBR's side, perhaps the most notable case is *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007). In *O2 Micro*, the plaintiff alleged misappropriation of eleven trade secrets and presented unjust enrichment evidence relating to all eleven in one lump sum ($16 million). 399 F.Supp.2d at 1067. The jury found that only five of eleven trade secrets were misappropriated and that only one of those (the transformer information) resulted in the defendant being unjustly enriched.[11] *Id.* The court found, and the Federal Circuit affirmed, that there'd was no reasonable basis for the jury to award $12 million in unjust enrichment damages for misappropriation of *just* the transformer information, despite there being some evidence that, in comparison with the other alleged trade secrets, the transformer information was the "heart" of the technology and could be 75-90% percent of its importance. *Id.* at 1077. Rather, the court found that "jury's award of unjust

---

court's warning" about apportionment that the royalty must account for the fact that the patent at issue was part of a multi-component product).

[10] When it comes to apportionment, there is an additional inherent difficulty in translating patent law to a trade secret trial, especially cases involving multiple alleged trade secrets. Setting aside a jury finding invalidating a patent, before trial in a patent case, the parties know which features of the accused product are patented and which are not (after all, there is a patent explicitly identifying its contours). By contrast, in cases involving multiple alleged trade secrets, it is not known until after the verdict which features of a product the jury finds to be trade-secreted and which it did not. Thus, in each trade secret case, the jury could return a mixed verdict on any number of the alleged trade secrets.

[11] The district court had warned the *O2* plaintiff of the dangers of bundling all of its alleged trade secrets damages together during the pretrial conference: "[I]t seems to me that if [the expert] is saying the damages are X dollars if they stole all our trade secrets, he can say that. But if the jury finds that he only stole 11 of them, then his testimony would be stricken and you would have no testimony because there'd be no basis upon which a jury could decide what the damages were from the theft of 11 secrets when they've heard testimony only about what the damages are from 12 secrets unless somehow he can say that no matter how many secrets are stolen, the same damages are accrued." *Id.* The same is true here. Not only did the Court warn Trinseo of this danger at the informal charge conference ("if you don't prevail on all ten trade secrets, you may lose the reasonable royalty verdict if you get one") (Jan. 18 p.m. at 100:5-10), it gave a similar warning in its earlier *Daubert* order (if "there is no evidence that one of the alleged trade secrets was appropriated," that "may undercut all of Pastore's purported testimony"). (Doc. No. 224 at 9 n.4).

13

24-20460.38658

enrichment damages was based on speculation and guesswork, not on evidence" and granted the defendant judgment as a matter of law. *Id.*

Likewise, in *Texas Advanced Optoelectronic Solutions, Inc v. Renesas Elecs. Am., Inc*, a jury found the defendant liable for misappropriation of three trade secrets, but the Federal Circuit's appellate panel vacated the grounds for liability on two of those three, leaving only one remaining. 895 F.3d 1304, 1311–15 (Fed. Cir. 2018). Turning to the damages award, the court concluded that, even though there was liability on one trade secret, the jury award could not stand because it was based on evidence valuing all three trade secrets together. It reasoned:

> [Plaintiff's] expert testified that the "trade secrets [were] the—the drivers of sales." But he did not explain which of the trade secrets contributed to what amount of profit to be disgorged; he assigned all profits to the misappropriation of all trade secrets. On this record, we have no basis to conclude that the remaining ground for liability—the photodiode structure trade secret—supports the entire award. This is one reason for vacating the award.

*Id.* at 1317. Thus, the court reasoned that the liability finding on one remaining trade secret cannot support a damages award based on multiple trade secrets, absent some evidence that certain trade secrets corresponded to certain profits (apportionment evidence) or evidence that the one trade secret supports the entire award (entire market value). In short, the all-or-nothing damages model failed when two out of three alleged trade secrets were ultimately found not to be trade secrets.

Similarly, a district court in the Eastern District of Michigan granted a defendant's motion for judgment as a matter of law, finding that the jury's damages award based on all-or-nothing evidence was not supported by sufficient evidence because the jury found liability on three of four alleged trade secrets.[12] *Versata Software, Inc. v. Ford Motor Co.*, No. 15-11264, 2023 WL 3175427 (E.D. Mich. May 1, 2023). The *Versata* court noted that the plaintiff's expert provided a

---

[12] This matter is currently on appeal before the Federal Circuit. *Versata Software, Inc. v. Ford Motor Company*, 24-1234. No opinion has been issued as of the date of this order.

24-20460.38659

damages model for head-start damages that included all four trade secrets. He did not apportion the damages for each individual trade secret or "give the jury the tools to make those determinations." *Id.* at 16. The court reasoned: "Without this information, the jury had no way to reliably determine how long it would have taken Ford to develop the three (out of four) trade secrets that it found to have been misappropriated. Under these circumstances, any development-time figure used by the jury . . . would necessarily have been pure speculation. For that reason, the jury's award of trade secret damages lacks a sufficient evidentiary foundation and cannot stand." *Id.*

Thus, KBR has provided plentiful legal authority applying patent apportionment principles to trade secret cases and vacating jury verdicts when the all-or-nothing damages approach fails. *See also Mgmt. & Eng'g Techs. Int'l, Inc. v. Info. Sys. Support, Inc.*, 490 F. App'x 30 (9th Cir. 2012) (vacating reasonable royalty award in trade secrets case when the expert "did not apportion value among the legally valid and the legally invalid alleged trade secrets" but rather based his hypothetically negotiated price based on what the defendant would have paid for *all* of the information alleged to be trade secrets.").

In response, Trinseo points to *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 389 (6th Cir. 2022), seemingly to argue that apportionment per trade secret is not required if the trade secrets are used as part of a larger product, liability is found on fewer than all of the alleged trade secrets, and the jury awards less than the total amount requested. *See* (Doc. No. 409 at 5). In *Caudill*, the Sixth Circuit affirmed a jury award for actual loss and unjust enrichment under the Kentucky Uniform Trade Secrets Act. 53 F.4th at 389. The plaintiff had alleged misappropriation of six trade secrets, though the jury found misappropriation for only Trade Secrets 1, 3, 4, and 5. The jury further found that plaintiff was only entitled to compensatory

24-20460.38660

damages as to Trade Secret 1 and not the others. On appeal, the defendant challenged these damages, arguing that the plaintiff's expert "based his damage predictions on the jury finding [the defendant] liable on all six trade secrets," even though the plaintiff recovered damages only on Trade Secret 1. *Id.* at 386. The Sixth Circuit panel overruled this objection, in part because the jury awarded less than the plaintiff asked for (suggesting that it decreased the award based on its partial liability finding) and because the plaintiff's expert had testified that all of plaintiff's research and development expenses had gone into Trade Secret 1.

In reaching this decision, the *Caudill* court distinguished *O2 Micro*. It stated:

> *O2* is not as persuasive as Jarrow thinks. The plaintiff's damages expert there took an all-or-nothing approach: his model turned on misappropriation of all the trade secrets without offering the jury a way to attribute value to each individual trade secret. But Caudill's expert gave the jury options. As explained above, although Caudill's expert's damages model assumed misappropriation of all six trade secrets, he testified that all of Caudill's research and development expenses went to broccoli seed research. That allowed the jury to calculate the value of Trade Secret 1 even while finding no misappropriation of Trade Secrets 2 and 6. Jarrow has presented no evidence convincing us that Kentucky's Supreme Court would take a more narrow view of the evidence that can support a trade-secrets damages award, and so we will adhere to the broader view that a court may flexibly award trade-secrets damages. *See* Melvin F. Jager, 1 Trade Secrets Law § 7:20 (Oct. 2021); *Acuity Brands Lighting, Inc.*, 2015 WL 12976104, at \*2 n.2. Jarrow also finds no refuge in Kentucky law . . .

*Id.* at 389.

The Court is not convinced that *Caudill* is necessarily in tension with the cases cited by KBR. The reasoning of *Caudill* did not contradict the reasoning of *O2 Micro*; rather, the court distinguished the cases on the different evidence presented by their damages experts, finding in *Caudill* there was evidence attributing value to Trade Secret 1. *See Versata*, 2023 WL 3175427 at \*18 ("Given this context, the Court declines to read *Caudill* as generally disapproving of the reasoning from *O2 Micro.*"). Moreover, the Court is not convinced that *Caudill* is particularly persuasive here. *Caudill* did not deal with federal law and so did not discuss the patent law

precedent requiring apportionment or the entire market value exception to that rule.[13] In applying Kentucky law, the Sixth Circuit noted that there was "no evidence convincing us that Kentucky's Supreme Court would take a more narrow view . . . and so we will adhere to the broader view." When applying federal law, however, there is an indication that the Federal Circuit, and by extension the Fifth Circuit, would take a more restrictive view—for example, it affirmed the *O2 Micro* decision and issued the *Texas Advanced Optoelectronics* opinion.

Therefore, upon examining the legal authority above, the Court agrees with KBR that apportionment is generally required in trade secrets cases involving multiple alleged trade secrets. Just as a patent owner is required to apportion the value of the patented feature from the unpatented feature, so must a trade secret plaintiff apportion the value of the trade-secreted features from the non-trade-secreted features. Given that it is often unknown which features are trade-secreted and which are not until *after* a jury verdict, a plaintiff must provide damage evidence on each trade secret (or else the plaintiff must suffer the consequences of its all-or-nothing approach). Specifically, the case law instructs that, to protect itself in the event that the jury finds liability on some, but not all, alleged trade secrets, a plaintiff[14] must provide either (1) evidence that apportions value per trade secret, or (2) evidence that provides some methodology or guidance for how the jury may do so itself.[15]  Otherwise, the jury is left to play a guessing game, or perhaps to apply its own formula to devise a fraction of the total damage figure (for example, awarding 1/3 of the damage figure after finding liability on only one out of three alleged trade secrets. Of course, doing

---

[13] While the opinion did not mention the entire market value exception by name, it appears that the rationale mirrors that of the entire market value exception.

[14] For argument's sake, the apportionment rule would be satisfied if the defendant offered this evidence rather than the plaintiff (though the Court is not sure why a defendant would do so). All that matters is that the jury has enough apportionment evidence on which to rely.

[15] The latter would be satisfied in situations involving the entire market value rule—that is, there would be evidence that the combined value of all alleged trade secrets is attributable to one or two key trade secrets.

24-20460.38662

so might be fine if there were testimony that each trade secret was equally valuable but would be unsupportable absent such evidence).

Having found that apportionment is generally required, the Court turns now to whether an exception to apportionment is applicable.

### Entire Market Value Exception

There is a narrow exception to the general rule requiring apportionment called the "entire market value" exception. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). This exception comes into play in circumstances where both the patented and unpatented components together are "analogous to components of a single assembly," "parts of a complete machine," or "constitute a functional unit." *Tec Air, Inc. v. Denso Mgf Michigan Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999). In such cases, the patent owner can obtain damages on the entire product (unpatented components and patented components) only if the infringing product substantially derives economic value from the patented feature and the patented feature is the "basis for customer demand." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (*en banc*). To invoke the rule, a plaintiff must show that "the patented feature drives the demand for an entire multi-component product." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 870 F.3d 1298, 1300 (Fed. Cir. 2017) (Stoll, J., concurring); *see also LaserDynamics*, 694 F.3d at 67–68 ("We reaffirm that in any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature."). Importantly, the entire market value rule is *not* appropriate where the unpatented components "have essentially no functional relationship to the patented invention and

18

24-20460.38663

. . . may have been sold with an infringing device only as a matter of convenience or business advantage." *Rite–Hite Corp.*, 56 F.3d at 1550.

This premise—requiring that the patented feature drives consumer demand—is by far the most widely cited standard for invoking the entire market value rule. Nevertheless, patent law, as this Court has come to understand, cannot be so easily summarized. While the majority of cases involving the entire market value rule require evidence that the patented/trade-secreted feature drove consumer demand for the entire product, Trinseo cites to a less-cited line of cases that discusses an alternative (or perhaps additional) means of proving the exception. *See* (Doc. No. 409 at 8–9). This second line of cases seems to ask whether the licensee (here, Trinseo) can "normally anticipate" the sale of the unpatented components with the patented components. These cases look to how closely integrated the unpatented components and the patented components are.

The clearest example of this second line is found in *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656 (Fed. Cir. 1985). In *Kori*, the Federal Circuit observed that "[t]he ultimate determining factor [for applying the entire market value rule] is whether the patentee or its licensee can **normally anticipate** the sale of the unpatented components with the patented components." *Kori*, 761 F.2d at 656 (affirming an award of damages based on the entire product when the district court found "no evidence" that the unpatented features were used or could have been used independently of the patented features) (emphasis added). The Federal Circuit later characterized the rule from *Kori* by stating that "the entire market rule is properly applied when the nonpatented devices cannot be sold without the patented feature." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989). The United States Court of Federal Claims similarly remarked that under the "entire market value rule" it is the "financial and marketing dependence on the patented item under standard marketing procedures" which

determines whether the non-patented features of a machine should be included in calculating compensation for infringement. *Leesona Corp. v. United States,* 599 F.2d 958, 974, 220 Ct.Cl. 234, 202 USPQ 424, 439 (1979).

Thus, citing these cases, Trinseo appears to believe that there exists an additional pathway to satisfy the entire market value rule—the first requiring that the patented feature drive consumer demand for the whole product, and the second requiring that unpatented components and the patented components be so financially and marketably dependent such that the licensee normally anticipates the sale of the unpatented and patented components together.[16]

The Court notes that while neither party expressly discusses the existence of these two different iterations of the entire market value rule (instead choosing to cite only to those cases that support their respective arguments), other district courts have identified the two articulations. Most notably, one court in the Northern District of New York discussed at length these two somewhat parallel lines of cases and stated that "[a] review of the many Federal Circuit cases decided under the entire market value rubric discloses the emergence of two separate though inter-related iterations of the rule, one of which focuses upon the **relationship between the patented feature and the unpatented components** together with which it is sold, with the second concentrating on the importance of the patented feature in **creating customer demand** for the larger product." *Cornell Rsch. Found., Inc. v. Hewlett-Packard Co.*, No. CIVA 501CV1974 NAM, 2007 WL 4349135 (N.D.N.Y. Jan. 31, 2007), *report and recommendation adopted sub nom. Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2007 WL 2791120 (N.D.N.Y. Sept. 24, 2007).

---

[16] Some courts have referred to this articulation as the "single functioning unit test." *See Cornell Rsch. Found., Inc. v. Hewlett-Packard Co.,* No. CIVA 501CV1974 NAM, 2007 WL 4349135 (N.D.N.Y. Jan. 31, 2007), *report and recommendation adopted sub nom. Cornell Univ. v. Hewlett-Packard Co.,* No. 01-CV-1974, 2007 WL 2791120 (N.D.N.Y. Sept. 24, 2007).

24-20460.38665

It is with this background that the Court must decide how to resolve this issue. In legal terms: Do these two lines of cases provide alternate ways to invoke the entire market value rule, or do they converge to create one rule? In practical terms: Can Trinseo avoid the fact that it (1) lacks apportionment evidence and (2) may lack consumer demand evidence by pointing to evidence that the PC package was designed to be marketed, licensed, and sold as one entire product? The Court finds that as a matter of law it cannot.

The Court cannot agree with Trinseo's reading of the law for several reasons. As an initial matter, it is true that some district courts have suggested that satisfying *either* test will suffice, meaning that a plaintiff may invoke the entire market value rule by showing either consumer demand or normal anticipation/single functioning unit. *See Interactive Health LLC v. King Kong USA, Inc.*, No. CV 06-1902-VBF(PLAX), 2008 WL 11342980 at \*2 (C.D. Cal. Dec. 1, 2008) (reasoning that "***another*** formulation of the entire market value rule would also support its application here" after describing the consumer demand formulation but before describing the normally-anticipates formulation) (emphasis added); *see also Heidelberger Druckmaschinen Ag v. Hantscho Com. Prod., Inc.*, No. 87 CIV. 4522, 1995 WL 693170 at \*2 (S.D.N.Y. Nov. 22, 1995) ("The entire market value rule permits recovery for the whole machine if the patent owner would normally expect that the patented and unpatented components would be sold together as one unit, ***or*** when the patented component is the basis for the demand of an apparatus containing several features" (cleaned up)).

Nevertheless, this Court concludes that the weight of legal authority requires that there must be sufficient evidence both that the patented/trade-secreted feature drives consumer demand *and* that the patented/unpatented features constitute a single functional unit. *See Cornell*, 2007 WL 4349135 at \*63 ("[w]hether the single functioning unit and customer demand tests are regarded as

24-20460.38666

two separate bases either of which could support application of the entire market value rule . . . or instead the two coalesce into a single analysis, **as the court believes better represents Federal Circuit authority . . ..**" (emphasis added)).

In reaching this conclusion, the Court relies heavily on the Federal Circuit's decision in *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51. Not only was *LaserDynamics* decided more recently than the line of cases cited by Trinseo, but it also specifically rejected the kind of argument raised by Trinseo.

In *LaserDynamics,* the defendant filed a motion for new trial arguing that the plaintiff's expert's testimony should have been excluded because he improperly applied the entire market value rule by "using the revenues from sales of the entire laptop computers as the royalty base without having established that the patented feature [the optical disc drive, or "ODD"] drives the demand for the entire laptop computer." *Id.* at 63. The district court agreed and granted the new trial; the Federal Circuit affirmed. In doing so, the Federal Circuit firmly stated that the entire market value rule was a "narrow" exception to the apportionment requirement and "reaffirmed" that a patentee cannot calculate damages based on sales of the entire product "without showing that the demand for the entire product is attributable to the patented feature." *Id.* at 67–68. The circuit recognized that that LaserDynamics had employed the entire market value rule when it expressly calculated the royalty rate as a percentage of the "value of the laptop rather than a patent practicing ODD alone." *Id.* at 68. In that case, however, employing the entire market value rule was impermissible because there was no evidence showing that the patented ODD drove demand for the laptop computers. The court elaborated on the entire market value rule, stating:

> **It is not enough to merely show that the disc discrimination method is viewed as valuable, important, or even essential to the use of the laptop computer. Nor is it enough to show that a laptop computer without an ODD practicing the disc discrimination method would be commercially unviable.** Were this

22

sufficient, a plethora of features of a laptop computer could be deemed to drive demand for the entire product. To name a few, a high resolution screen, responsive keyboard, fast wireless network receiver, and extended-life battery are all in a sense important or essential features to a laptop computer; take away one of these features and consumers are unlikely to select such a laptop computer in the marketplace. **But proof that consumers would not want a laptop computer without such features is not tantamount to proof that any one of those features alone drives the market for laptop computers**. Put another way, if given a choice between two otherwise equivalent laptop computers, only one of which practices optical disc discrimination, proof that consumers would choose the laptop computer having the disc discrimination functionality says nothing as to whether the presence of that functionality is what motivates consumers to buy a laptop computer in the first place. **It is this latter and higher degree of proof that must exist to support an entire market value rule theory**.

*Id.* Thus, even if a patented (or in this case, trade-secreted) feature is "valuable, important, or even essential," to the entire product, a patentee still cannot recover on the full price of the product without more. It is similarly not enough to show that the entire product would be "commercially unviable" without the patented feature.

Finally, and perhaps most significantly, the Federal Circuit *rejected* LaserDynamics' argument that *practical and economic necessity* required it to base its royalty figure on the entire product rather than the patented feature. LaserDynamics had argued that neither party sold ODDs independent from laptop computers; therefore, the value of the laptop computers was the only true market value of anything that they sold. The difficulty in isolating the value of one component from the value of a multi-component product, though, is not enough to invoke the entire market value rule.[17] Accordingly, the Circuit concluded by explicitly declining to "establish a necessity-based exception to the entire market value rule." *Id.* at 69.

---

[17] "That is, **if difficulty in precisely identifying the value of the ODDs is what justifies using complete laptop computers as the royalty base**, when it comes time to then apportion a royalty rate that accounts for the ODD contribution only, the exceedingly difficult and error-prone task of discerning the ODD's value relative to all other components in the laptop remains." *Id.* at 69 (emphasis added).

24-20460.38668

Going back to the arguments raised by Trinseo, the Court cannot agree that practical necessity, or the fact that it "normally anticipates" the sale of the entire product with its trade secrets, justifies applying the entire market value rule.[18] The Court reads *LaserDynamics* as an attempt to prevent district courts from applying anything other than the somewhat rigid consumer-demand standard when invoking the entire market value rule. With this, the Court determines that the only way for Trinseo to keep the jury's $50 million reasonable royalty award is if it presented evidence that any of the four trade secrets[19] drove consumer demand for the entire PC package.

### Evidence

Returning from its deep dive into the law, the Court must now consider the evidence. Trinseo alleged misappropriation of ten trade secrets relating to its polycarbonate technology: (1) Process control strategy and Concepts and Control Algorithms, (2) Raw Materials Specifications/Composition, (3) Phosgene Reactor Design and Associated Pressure Vessel Containment, (4) Continuous Plug Flow Oligomerization Reactor Inside Pressure Vessel Containment (with static mixer design), (5) Thermal Stabilizer Addition System, (6) Steam Devolatilization Process, (7) Polymer Solution Atomizer Nozzle, (8) "Snake" Design, (9)

---

[18] It is worthwhile to examine Trinseo's position on the entire market value rule in the broader context of the litigation. Trinseo did not request a jury instruction or question pertaining to any interpretation of the entire market value rule. In fact, it specifically argued *against* including KBR's proposed instruction on the issue. At the January 22nd charge conference, KBR requested an instruction on the entire market value rule: "As the Court has recognized, Trinseo has taken an all-or-nothing approach to damages . . . this approach is controlled by the entire market value rule, which requires the jury to find that Trinseo's alleged trade secrets are the sole driving factor for the customer's demand . . ." (Jan. 22 p.m. at 126:11-19). Trinseo objected, arguing that patent jury instructions cannot be so easily thrown into a trade secret cases because "we don't have an infringing product here. We don't have the smallest salable unit or other patent law concepts . . . so it's just – it's trying to fit a square peg in a round role [sic]." (*Id.* at 127:7-20). Consequently, the Court did not include, and Trinseo did not request, an instruction on the entire market value rule based on either line of cases. Thus, it waived its application. Trinseo even fought to avoid mentioning the rule or its applicability throughout most of its post-verdict briefing. It was not until Trinseo's sur-reply to KBR's motion for new trial/remittitur that Trinseo mentioned the rule by name, and even then, Trinseo did not acknowledge the consumer-demand standard—the most widely accepted articulation of the rule used in the vast majority of cases.

[19] (1) Process control strategy and Concepts and Control Algorithms, (3) Phosgene Reactor Design and Associated Pressure Vessel Containment, (4) Continuous Plug Flow Oligomerization Reactor Inside Pressure Vessel Containment (with static mixer design), and (6) Steam Devolatization Process.

24

24-20460.38669

Polycarbonate Product Composition, Formulations or "Recipes," (10) Negative and Positive Knowledge. The jury was given these ten items in a list and instructed to answer "yes" or "no" as to whether each of them constituted a trade secret. Of the ten claimed trade secrets, the jury found that only four were trade secrets—numbers (1), (3), (4), and (6). The jury then found that KBR and the Harper Defendants had misappropriated these four trade secrets.[20]

While there was some evidence that a handful of the trade secrets were particularly valuable or desirable (the "value drivers," "core," or "heart" of Trinseo's PC package), there was not sufficient or clear evidence any of the four found trade secrets were the drivers of consumer demand for the whole PC package. When Trinseo's technical expert Jerry Duane was asked if any of the ten alleged trade secrets "form the heart or the core of the value of Dow or now Trinseo's PC technology," he did not provide one key trade secret. Rather, he provided five. He answered: "If you look at the process, you look at what's there, you have the **oligomerization reactor**. You have the—with the containment system associated with it. You have the **entire devol process** and the elements of that. The specifics associated with the **steam atomization nozzle**. The **agglomerator**. And then in addition to that, you also have the **thermal stabilizer**." (Jan. 10 a.m. at 38:3–15) (emphasis added). While he did list two items that were ultimately found to be trade secrets (the oligomerization reactor and the devolatization system), he also listed three items that were not found to be trade secrets (the atomization nozzle, agglomerator,[21] and the thermal stabilizer). Thus, Duane failed to provide evidence that any one (or combination) of the four found trade secrets drove consumer demand such that Trinseo is entitled to the value of the entire PC

---

[20] As against the Davis Defendants, Trinseo alleged misappropriation of only three claimed trade secrets—number (7) (9) and (10). Given that the jury did not find that these items were trade secrets, the jury did not find the Davis Defendants liable for any misappropriation.

[21] The term "agglomerator" was sometimes used at trial to refer to the "snake" tube (alleged trade secret 8). (Trial Transcript 966:16–24).

24-20460.38670

package. Rather, his testimony only demonstrates that Trinseo considered five of the ten trade secrets to be their most unique, valuable, or important.

In fact, later in his testimony, Duane added two additional items, the raw materials and product compositions, to the list. He testified that "[t]he only other thing that would be—you know, I'm thinking about, what are really kind of the **core** and the **heart** of the process, and those are the main ones. I mean there's components that really enter into it, such as the **raw material**, **composition**, that type of thing, but those are the core ones." (Jan. 10 a.m. at 38:24–39:13). The jury found that neither the raw materials nor product compositions were trade secrets.

Trinseo's damages expert Pastore also stated "the oligomerization and agglomeration were the core and the key elements, especially the **snake**, the **nozzles**, and the **thermal stabilizer**." (Jan. 17 p.m. at 134:3–8). Like Duane, Pastore considered the snake, nozzle, and thermal stabilizer to be important, "core," trade secrets, and yet the jury did not find them to be. While the jury found that the oligomerization reactor was a trade secret, the jury found that the snake, nozzle, and thermal stabilizer were not.

Finally, Defendant Steve Harper also provided some testimony about the "heart" or the "core" of the PC technology. Harper's 2009 preliminary design package for nonparty Mustang stated that "[t]he **heart** of the technology is rooted in the steam: polymer mixer and polymer agglomeration unit," *i.e.,* the atomizer nozzle and the snakes. (PX43 at 7). He went on to testify that he referred to these as the "heart" of the technology because they were "[t]he most important part. It was—the part that was different for Dow. It was the part that we put a lot of time and effort into." (Jan. 11 p.m. at 73:14–23). Again, the jury did not find the nozzle or the snake to be trade secrets.

24-20460.38671

As shown above, there was inconsistent evidence at various points as to which, if any trade secret, was the "value driver," "core," or "heart" of the technology. There was evidence that five to seven of the ten alleged trade secrets were "value drivers" "core" or "heart" technology. The fact that the Steam Devolatization System and Oligomerization Reactor were part of that discussion is not enough to invoke the entire market value rule. Furthermore, the terms thrown around during trial—"value driver," "core," and "heart"—are somewhat nebulous and have little legal significance. In other words, what little evidence that may exist does not comport with the standard for invoking the entire market value rule. That these features were viewed as important to Trinseo (or even important to consumers) is not enough. As was made clear in *LaserDynamics*, the entire market value rule can only be applied when there is evidence that the trade secret drove consumer demand for the end product.

Here, Trinseo has not pointed to any evidence that consumer demand for the PC package was driven by any of its four trade secrets. Trinseo did not offer any consumer surveys, consumer testimony, or even expert testimony that one "secret" or a combination of "secrets" drove the entire market value of Trinseo's PC technology. In fact, it was clear at trial that Trinseo had tried to sell a license for its technology for years but had not successfully sold a PC package since 2010. (Jan. 17 p.m. at 78:8-12); *see also* (Jan. 10 a.m. at 84:17-21) (Duane admitted "Styron/Trinseo never entered into an agreement to sell or license its polycarbonate technology to any other company anywhere in the world"). Given this fact, it is questionable whether Trinseo could, hypothetically, provide any evidence of what drove consumer demand when there were no consumers of its alleged product.[22] Clearly, without any consumers, there was no evidence of consumer demand regardless of any so-called value drivers.

---

[22] The same result would occur even under Trinseo's alternative pathway (single functioning unit) to the entire market value exception. The allegations in this case concern a plan for an entire PC manufacturing plant. The jury was never

24-20460.38672

Lastly, the Court is unconvinced by Trinseo's final attempt to salvage its reasonable royalty award by introducing the idea of "compilation" trade secrets. The Court does not find this concept can remedy the lack of or inconsistent testimony regarding the five to seven "core" alleged trade secrets. In its briefing, Trinseo for the first time suggests that the Oligomerization Reactor and the Steam Devolatization Reaction are compilation trade secrets that encompass the other "value drivers" (the snake and nozzle). It maintains that these two trade secrets, particularly the Steam Devolatization Process, are compilation or catch-all trade secrets that satisfy the entire market value rule. Trinseo states that "the obvious way to reconcile the jury's affirmative answer to Trade Secret No. 6 (the entire Steam Devolatilization Process) and its negative answers to Trade Secret Nos. 5, 7, and 8 (three individual components of that process) is to apply the Fifth Circuit's express adoption of the *Restatement* regarding combination trade secrets." (Doc. No. 326 at 12). Thus, Trinseo argues that, because the Steam Devolatization Process is a compilation trade secret that encompasses the other "value drivers," the entire market value rule may properly be applied to the Steam Devolatization Process such that it may keep the $50 million reasonable royalty award without apportionment.

Trinseo quotes Fifth Circuit precedent to argue that "[t]here is little doubt that a 'compilation' qualifies as a trade secret" and that a compilation can be a trade secret even if its individual parts are not. *DHI Grp., Inc. v. Kent*, No. 21-20274, 2022 WL 3755782 (5th Cir. Aug. 30, 2022). There is no dispute that under certain circumstances a compilation of non-trade-secreted

---

asked whether the plant design was a single functioning unit or whether any single alleged trade secret was included within a single functioning unit. Moreover, testimony revealed that, since obtaining Dow's polycarbonate business and technology, Trinseo (or its predecessor Styron) had not built a PC plant, had not entered into a joint venture to build a PC plant, had not entered into any agreements to license its PC technology to another company to build a PC plant, and at the time of the trial, was not even attempting to market its PC technology. (Jan. 10 at 83:16–85:4). Therefore, there was no evidence for a finder of fact to conclude that Trinseo or its licensee "normally anticipates" the sale of trade secreted and nontrade-secreted components together when Trinseo had never sold or licensed the product.

24-20460.38673

information *may* be a trade secret. The question is whether here, the Court can *post hoc* find that the Steam Devolatization system and the Oligomerization reactor were compilation trade secrets that encompass the snake/nozzle such that the Court can apply the (already narrowly applied) entire market value rule. For several reasons, it cannot.

For instance, Trinseo's reliance on *Bishop v. Miller* is misguided. Trinseo points to *Bishop v. Miller*, 412 S.W.3d 758 (Tex. App.—Houston [14th Dist.] 2013, no pet.) to support its contention that the jury's finding of a compilation trade secret can excuse a plaintiff's failure to apportion and nevertheless allow the plaintiff to recover on the entire product. In *Bishop,* the Fourteenth Court of Appeals sitting in Houston overruled the defendant's argument that the trade secret damages figure was unreliable because the jury answered "no" to whether several items listed were trade secrets and the plaintiff failed to provide separate values for each of the items that the jury answered "yes" to, instead providing only one value for misappropriation. *Id.* at 777–780. The *Bishop* court overruled the defendant's objections because the jury had found that the plaintiff owned a "compilation" trade secret in some or all of the items listed in the jury charge. The *Bishop* court's entire discussion on the issue is reproduced below.

> [Defendant] begins by arguing that [Plaintiff's Finance Expert]'s damages calculations were unreliable because he failed to provide separate values for each of the items the jury found to be [Plaintiff]'s trade secrets and instead provided only one value for misappropriation. This argument, however, ignores the possibility that all of the discussed items were in fact part of [Plaintiff's] trade secret; the jury, after all, found [Plaintiff] owned a compilation trade secret comprised of some or all of the thirteen items listed in the jury charge. Moreover, [Plaintiff's Finance Expert] appears to have reasonably concluded that within [Plaintiff]'s trade secrets there exists a "tipping point" of sorts without which mining in the Ten Mile Area was not economically feasible. **Under that analysis, it would be illogical to assign a value to each separate piece of the compilation.** . . . In other words, [Defendant's] arguments do not account for the possibility that the value of [Plaintiff]'s plan may not fluctuate based on the number of individual items contained within the plan. If [Plaintiff]'s plan was the key that made potash mining in the Ten Mile Area economically feasible, as the jury may have reasonably determined, it would not necessarily matter that the plan had three components or

24-20460.38674

thirteen. **The jury could have determined the plan had the same value
regardless of how many component parts were involved or were trade secrets
on their own**.

*Bishop*, 412 S.W.3d at 777–78 and n. 28 (emphasis added).

The Court recognizes that this language is helpful for Trinseo and the facts of this case

appear analogous. The Court, however, sees several problems with applying *Bishop* here. First and

foremost, it is a Texas case applying Texas law, not the federal law under which Trinseo sued.

There is no mention of the entire market value rule exception or the general rule requiring

apportionment. In fact, the *Bishop* court cites no legal authority in its reasoning. This alone is

reason for this Court to question its value as precedent. Secondly, and just as importantly, there

was also a key difference in how the jury in *Bishop* was instructed. Like here, the *Bishop* plaintiff's

trade secrets were part of an entirety (its mining plan). Question 20 of the jury instructions listed

13 individual items within that mining plan and asked the jury to answer yes or no to whether that

item constituted a trade secret. Of those 13 items, the jury found that only three were trade secrets.

Unlike this case, however, there was a 14th item that asked the jury whether the plaintiff owned a

trade secret in "a compilation of any or all of the above items," and the jury answered "yes."

Charge of the Court at 25–27, *Bishop v. Miller*, 412 S.W.3d 758 (Tex. App.—Houston [14th Dist.]

2013, no pet.) (No. 08-29234) 2011 WL 10973159. Thus, the jury explicitly found a compilation

trade secret existed for plaintiff's mining plan made up of "any or all" of the individually alleged

trade secrets contained therein. This finding of a compilation trade secret was the basis of the

*Bishop* court's decision to allow the plaintiff to recover a damages amount based on the entire

plan.

Regardless of whether a compilation trade secret so undefined as to contain "any or all"

of a list of items would comply with federal trade secret precedent, the jury here simply was not

24-20460.38675

asked the question. Trinseo did not request this instruction. *See* (Doc. No. 228-4). No party did. The jury was asked ten questions as to whether Trinseo owned a trade secret in the alleged items; it was not asked an eleventh question of whether Trinseo owned a "compilation" trade secret comprising all ten of the above items. Therefore, even if the *Bishop* court's reasoning were applicable here, there is no equivalent jury finding of a catch-all combination trade secret that would allow recovery for damages based on the entire PC package.

Trinseo's attempt to shoehorn the sporadic and inconsistent evidence (unsupported by consumer demand or even sales) regarding the value drivers and core of the PC technology into a compilation trade secret is not enough to convince the Court to ignore the weight of precedent. The Court finds that the entire market value exception is not applicable, and even if it were applicable, was waived. There was no evidence for a jury to conclude that, without the nozzle and snakes, Trinseo's Oligomerization Reactor and Steam Devolatization System are the single-handed components of the entire PC technology package that drove consumer demand. Moreover, even if these two trade secrets were compilations of the other "value driver" trade secrets, there would still not be sufficient evidence to invoke the entire market value rule under *LaserDynamics*. It is not enough that the Steam Devolatization System and Oligomerization Reactor be "valuable, important, or even essential," to Trinseo's PC package, nor is it enough that the PC package be "commercially unviable" without them. There must be evidence that the Steam Devolatization System and Oligomerization Reactor trade secrets are the drivers of consumer demand for the entire PC package.[23] Without the entire market value rule being available, Trinseo's failure to apportion, combined with the jury's failure to find liability on all ten alleged trade secrets is fatal.

---

[23] The fact that Trinseo did not allege misappropriation of the Oligomerization Reactor and Steam Devolatization System—the two trade secrets it now claims are responsible for the entire market value of the PC package—against the Davis Defendants, and still sought damages against them, is also informative. Trinseo sought to recover hundreds of thousands of dollars from the Davis Defendants based on the alleged misappropriation of only three items, none of

31

As was the case in *LaserDynamics,* using a royalty rate based on the entire PC package would run counter to the policy underpinning the entire market value rule by overreaching and encompassing components not covered by the trade secrets. *See LaserDynamics*, 694 F.3d at 70 ("LaserDynamics' necessity argument also fails to address the fundamental concern of the entire market value rule, since permitting LaserDynamies to use a laptop computer royalty base does not ensure that the royalty rate applied thereto does not overreach and encompass components not covered by the patent.").

For these reasons, the Court finds that the jury's reasonable royalty award is unsupported by the law or the evidence. Given that it did not find liability on all alleged trade secrets, the jury had no evidentiary basis from which to allocate value per trade secret. Moreover, Trinseo's understanding of the entire market value rule appears to be legally incorrect. Nevertheless, even if correct, under either iteration of the rule the evidence does not support its application.

In sum, Trinseo failed to present evidence (1) that apportions value per trade secret *or* (2) that any of the four found trade secrets drove the entire consumer demand for its PC package, as would be required by law. That being the case, the Court hereby grants KBR's Motion for Judgment as a Matter of Law as to the reasonable royalty award. (Doc. No. 326).[24]

### iii.   Objections to the Jury's Unjust Enrichment Award.

The next hurdle the Court must address is whether there is a good reason to distinguish between the reasonable royalty award and the unjust enrichment award, if both are based on evidence concerning the value of the entire PC package and neither is supported by specific

---

which were ultimately found to be trade secrets. It seems somewhat inconsistent to take a position at trial that on the one hand argues that these three (non)trade secrets provided value, and on the other hand to argue, now, that their value is of such minimal importance to the entire package that Trinseo is excused from apportioning their value and may invoke the entire market value rule.

[24] KBR also argues that Trinseo's expert Pastore did not follow the *University Computing* factors. The Court need not address this question given its finding on apportionment—it is undisputed that the reasonable royalty figures were based on the entire PC package rather than the individual trade secrets.

24-20460.38677

apportionment evidence. After all, *O2 Micro* and *Texas Advanced Optoelectronics* both involved unjust enrichment awards and still their respective jury awards were vacated for failure to apportion.

The DTSA permits a court to award "damages for any unjust enrichment **caused by** the misappropriation of the trade secret that is not addressed in computing damages for actual loss." 18 U.S.C. § 1836(b)(3)(B)(i)(II) (emphasis added). "Deciding what constitutes unjust enrichment is a fact-intensive endeavor." *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 809 (2d Cir. 2024). "Because courts take a 'flexible and imaginative approach to damages calculation in trade secret misappropriation cases,' unjust enrichment can take several forms and cover a broad array of activity." *Id.* (quoting *GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 499 (5th Cir. 2016)). Perhaps most commonly, these damages include a "defendant's increased profits derived from its use of a misappropriated trade secret." David S. Almeling *et al.*, *Disputed Issues in Awarding Unjust Enrichment Damages in Trade Secret Cases*, 19 Sedona Conf. J. 667, 687 (2018).

KBR argues that the Court should not distinguish between unjust enrichment and reasonable royalty awards when applying apportionment principles. *See, e.g. Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108 F.4th 458, 488–90 (7th Cir. 2024) (finding that the district court erred by failing to apportion DTSA unjust enrichment damages but that the error was harmless because the plaintiff was entitled to a greater recovery in lost profit damages). Trinseo, not surprisingly, maintains its position that apportionment is not required in either case. It does, however, appear to emphasize that unjust enrichment awards traditionally encompass a more flexible damages measure. Trinseo highlights some evidence that but-for the misappropriation,

24-20460.38678

KBR would not have been able to create its PC technology package. In doing so, Trinseo cites

*University Computing*, which states:

> Our review of the caselaw leads us to the conclusion that every case requires a flexible and imaginative approach to the problem of damages. We agree with the Court of Appeals for the Sixth Circuit that 'each case is controlled by its own peculiar facts and circumstances,' *Enterprise Manufacturing Co. v. Shakespeare Co.*, 141 F.2d 916, 920 (6th Cir. 1944), and accordingly we believe that the cases reveal that most courts adjust the measure of damages to accord with the commercial setting of the injury, the likely future consequences of the misappropriation, and the nature and extent of the use the defendant put the trade secret to after misappropriation. Naturally in some cases the damages will be subject to exact measurement, either because the parties had previously agreed on a licensing price as in *Vitro Corp. v. Hall Chemical Co.*, supra, or because some industry standard provides a clear measure. Where the damages are uncertain, however, we do not feel that that uncertainty should preclude recovery; the plaintiff should be afforded every opportunity to prove damages once the misappropriation is shown.

504 F.2d at 538.

As noted in the reasonable royalty discussion, in this circumstance, patent law is perhaps an imperfect overlay. In the traditional patent case, it is relatively easy to isolate the patented features from the unpatented features. After all, the patented features are explicitly written in the patent. Here, however, it was not ten individual trade secrets that were misappropriated. Rather, it was virtually an entire PC manufacturing plant design, which was more or less one entire package consisting of many drawings, processes, and specifications. That being the case, to satisfy its burden of proof, Trinseo had to retroactively isolate and valuate the trade-secreted portions. Trinseo chose not to valuate the trade-secreted portions separately. While the Court is not privy to the reasons for this omission, it notes that there was some evidence introduced that, in the industry, the entire PC package, although made up of multiple components, was the product. In other words, PC packages are purchased or licensed in their entirety—there was no evidence that there ever was any *a la carte* sales of individual trade secrets within the package. Despite the fact that it had never

24-20460.38679

sold or licensed its PC package, there was testimony from Trinseo employees that confirmed that Trinseo would never have sold its PC package piecemeal.[25]

Of note, especially with regard to the unjust enrichment claim, there was evidence that but-for the so-called "tech team" (Steve Harper's consulting services group that, at least in part, was using Trinseo's trade secrets), KBR could not have finished its PCMax package. There was testimony from a KBR employee that KBR was 90% done with its own PC package but could not solve the final 10% without using the tech team. *See* (PX220) ("We have 90% of the design necessary but the final 10% is very complicated and we will need them [the tech team]."); *see also* (PX304) (internal KBR emails stating that "our ability to rely on the [tech team]'s advice is absolutely critical to success"). Finally, KBR's Steve Pringle admitted that "KBR was not able to come up with a marketable polycarbonate design on its own because KBR did not have the subject matter experts in polycarbonates." (Jan. 22 a.m. at 3584:10-14).

Can the unique facts of this case—including all the evidence described above—overcome the general rule requiring apportionment? While the Court is sympathetic to the difficulty Trinseo faces given the facts of this case and given the absence of Fifth Circuit authority supporting its position, the Court must answer this question in the negative. As described in detail above, the law (both relating to patent and trade secret cases) requires either apportionment of damages per trade secret or proof that the entire market value exception applies. Otherwise, the jury award is speculative and unsupported. While it is a harsh consequence, the alternative—awarding damages based on an entire product that contains non-trade-secreted material—would go against the policies articulated by the Federal Circuit. This is in line with *O2* and *Texas Advanced Optoelectronics*, both of which were trade secret cases where the court vacated the unjust

---

[25] There was also evidence that KBR did not sell its PC product in an *a la carte* fashion either—KBR licensed and sold an entire PC package.

24-20460.38680

enrichment award due to failure to apportion. Finding that the jury's unjust enrichment award is unsupported by proper evidence, the Court hereby grants KBR's Motion for Judgment as a Matter of Law as to the jury's unjust enrichment award. (Doc. No. 326).

The Court notes that there may be an open question of whether the Court should take the jury's response in the unjust enrichment context as merely advisory. *See Comput. Servs. Corp. v. Tata Consultancy, Inc.*, 3:19-cv-000970-X (N.D. Tex. June 13, 2024) (taking jury's unjust enrichment award as advisory in DTSA case). This Court reserved its right to do so.[26] The Court need not address this question because, were the Court to calculate its own unjust enrichment award, the Court's calculation would face the same problem. There was no evidence to measure any kind of damages attributable *just* to the four misappropriated trade secrets. Any effort by the Court to come up with an individual value for the four trade secrets found by the jury would simply be an unsupported guess.

### iv. Contingent Alternative Finding on Unjust Enrichment

The above ruling is premised on the notion that the patent law concept of apportionment applies to unjust enrichment awards in DTSA cases. By all indications, while seeming somewhat harsh, this is a correct interpretation of the law. If, however, the Fifth Circuit were to determine that the doctrine of apportionment taken from patent law (an area of law that does not typically award unjust enrichment damages) is not applicable to unjust enrichment awards in DTSA cases, the Court would find the jury's unjust enrichment award of $21,206,132.00 is unsupported by

---

[26] COURT: "Okay. Here's -- I said -- I thought I said early on that I was treating the unjust enrichment damage question as an advisory, didn't I?" TRINSEO: "I think you left it open, Your Honor." COURT: "Oh, okay, well I am." TRINSEO: "You would submit, but reserve your right --" COURT: "I am. I'm doing that. I'm submitting and I'm reserving my right." (Jan. 22 p.m. at 122:12-21).

24-20460.38681

evidence. It would grant KBR's request for remittitur and find Trinseo entitled to $10.5 million in unjust enrichment damages from KBR.[27]

This Court first notes that the liability evidence establishing Trinseo's right to unjust enrichment damages is substantial. Nevertheless, damages based upon an unjust enrichment claim must be *caused by* the misappropriation and must reflect the benefit conferred onto the defendant. In the trade secret context, the defendant's benefit often takes the form of (1) profits derived from the use of the trade secrets, or (2) the so-called "head start" that the defendant gained in terms of saving time and avoiding the research and development costs that it would have incurred in developing the trade secrets itself.[28]

When looking at profits-based unjust enrichment damages, the term "apportionment" can refer to at least three different axes. First, as described above, there is apportionment of damages *between* multiple trade secrets. That is, in a case involving multiple alleged trade secrets such that the jury could find liability on some but not all, there must be some evidence apportioning damages per trade secret. Having no such evidence, the Court held above that Trinseo is not entitled to any unjust enrichment award. Nevertheless, even if this per-trade secret apportionment rule is found not to apply to unjust enrichment damages, there are two other apportionment requirements that do. The second apportionment requirement is between any profits derived from trade secret misappropriation and any profits attributable to legitimate ventures (for example, engineering

---

[27] To the extent that the jury's finding was merely advisory, the Court disregards that finding and finds Trinseo entitled to $10.5 million in damages from KBR.

[28] *See, e.g. Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1127 (7th Cir. 2020) (affirming a form of head-start unjust enrichment damages based on the "value [defendants] received by avoiding research and development costs they would have incurred without the stolen information" in trade secrets case). Trinseo did not seek head-start damages and explicitly waived this form of unjust enrichment at the pretrial conference. (Jan. 4 at 117:15-16) ("Plaintiffs don't have a damage model for head start."); (*Id.* at 121:10-12) ("he's calculating this sort of head start damage that we're not seeking, which is what was the time period where they got a head start.").

24-20460.38682

services). Third, and most generally, there is the requirement that net profits must be apportioned, or separated, from total revenue.

If the Fifth Circuit ultimately decides that the requirement of per-trade-secret apportionment does not apply to an unjust enrichment claim, the Court would have to determine an unjust enrichment award that satisfies the second and third types of apportionment. Under that scenario, the Court hereby contingently finds Trinseo entitled to $10.5 million in unjust enrichment based on the evidence presented at trial.

Trinseo's expert Pastore testified that to calculate unjust enrichment, he obtained income statements from KBR for the Cangzhou and Pingmei projects demonstrating the licensing profits, engineering profits, and training profits over a several-year period. (January 17 a.m. at 2500). For Cangzhou, he concluded that $15,507,721 was the total profits figure KBR obtained from these three categories of activities. (Jan. 17 p.m. at 2562:15-18). He admitted that from this number, the next step would be "to exclude those labor expenses involved in the alleged misappropriation under the licensing category." (*Id.* at 2563:20-23). KBR had recorded that $7,423,000 was the Cangzhou labor cost for its engineers and the Harper Tech Team. Pastore concluded that "misappropriated labor is not an allowable deduction. So you have to add it back to get the profits attributable to the alleges misappropriation for unjust enrichment." Thus, he added *back* the labor expenses that KBR had deducted. After adding back in the labor expenses, Pastore arrived at $22,931,389 for Cangzhou. He applied the same methodology for Pingmei and arrived at $21,993,426. In total, he concluded that there was $44.9 million in damages attributable to Trinseo's unjust enrichment cause.

KBR's license fees to Cangzhou and Pingmei were $12.2 and $9.9 million, respectively. As explained above, Pastore included profits from these licensing fees as well as several millions

24-20460.38683

from KBR's engineering and design services to prepare a BEDP[29] package and related equipment. Pastore admitted that he did not deduct legitimate expenses, overhead, and engineering by KBR. *See* (Jan. 17 p.m. at 169:10–17); *see also* (*id.* at 169:18– 21, 170:17–23, 171:3–15, 171:16–172:3). Instead, he assumed that all profits from both ventures were attributable to misappropriation of Trinseo trade secrets. Not only that, but he affirmatively added back in labor and expenses that he assumed were attributable to the misappropriation—so essentially, he calculated something closer to revenue figures rather than true profits.

The Court finds fault in both assumptions and therefore cannot find Pastore's conclusion to be reliable. At best, it is a guess, and not a very good one. There was evidence that KBR produced, engineered, and designed parts of its PCMax package without the use of Trinseo/Dow's PC package. For example, there was testimony that KBR expended ~130,000 hours in developing various aspects of its PCMax technology. There was no competent evidence that would allow the Court to conclude that (1) all of KBR's profits from the projects, including licensing, engineering, and training, were derived from Trinseo's claimed trade secrets (let alone the four that the jury found) or (2) that ~$10 million in labor expenses from Cangzhou and Pingmei were so related to the misappropriation that they could be added back in to KBR's net profits. Thus, the Court finds that Pastore's figure ignores the second and third types of required apportionment, and thereby does not reflect net profits caused by misappropriation.

Normally, such a glaring omission might prove fatal, but the Court finds that the testimony of KBR's expert, David Leathers, filled in some of the gaps created by Pastore's assumptions such that a reliable measure of unjust enrichment damage may be reached. Leathers concluded that any

---

[29] There was testimony at trial regarding the difference between a PDP (Process Design Package) and a BEDP (Basic Engineering Design Package). *See* (Jan 9. a.m. at 810: 9-17) (Jerry Duane testifying that the PDP is the "lead-in" to a BEDP; if the BEDP were a book, the PDP might be Chapter 1).

24-20460.38684

profits caused by misappropriation would be reflected in the licensing fees. Thus, unlike Pastore, Leathers did not comingle the profits or revenues from KBR's engineering and training.[30] This was because there was testimony had KBR not licensed Cangzhou and Pingmei, these engineering and training personnel costs would have been allocated to another project.[31] Looking only to the licensing, KBR sold its PCMax technology license to Cangzhou ($12.2 million license fee) and Pingmei ($9.9 million license fee). Leathers concluded that KBR's profits associated with these license fees would be $10.5 million. (Jan. 23 p.m. at 80:15-20).[32]

Pastore acknowledged the difference between his and Leathers' calculation. He was asked on cross examination: "Setting aside apportionment for a minute, your disgorgement opinion differs from Mr. Leathers' opinion in at least two big ways. Number one, Mr. Leathers deducts costs for overhead and engineering, which you do not. And number two, you add back in costs that you say were somehow related to the misappropriation; correct?" "Correct." (Jan. 17 p.m. at 169:10-17).

Upon examining the evidence, the Court also finds that the jury's award of ~$21 million is unsupported by the evidence. Instead, the Court finds that the evidence demonstrates that Trinseo is entitled to $10.5 million from KBR in unjust enrichment damages. This number reflects the licensing profits that KBR enjoyed from selling its PCMax license to Cangzhou and Pingmei, and it is the maximum amount recoverable that the evidence supports. This number properly apportions profits from revenues, and properly apportions profits caused by trade secret misappropriation

---

[30] "So, essentially, you can separate the profits that KBR's making off of engineering and training from that licensing fee. And so what you see below is, is myself separating that out and doing just the profits that are associated with the license fee." (Jan. 23 p.m. at 80:1-6).

[31] Steve Pringle testified that KBR had a pool of engineers and had they not been tasked with working on PCMax, they would have been deployed elsewhere.

[32] In his direct examination, Leathers then reduced this $10.5 million profit figure to ~$3 million, testifying that this was the true "benefit" to KBR. The Court finds this further reduction is conclusory and not clearly supported by any evidence. Thus, $10.5 million is the amount it contingently awards based on the evidence.

24-20460.38685

from those attributable to other legitimate endeavors. The Court concludes that, subject to its earlier ruling on apportionment between trade secrets, the evidence supports an unjust enrichment award of $10.5 million.[33]

> b. *Harper Defendants' Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings. (Doc. No. 333)*

Like KBR, the Harper Defendants filed a Motion for FRCP 50(b) Judgment as a Matter of Law and Motion for FRCP 52(c) Judgment on Partial Findings. (Doc. No. 333). The jury returned a verdict with unjust enrichment awards of $2,930,817.00 against SHC and $2,549,706.00 against PCS. The jury also found that Steve Harper was personally responsible for the acts of SHS and PCS. The Harper Defendants raise several arguments as to why the Court should grant their motion and vacate the jury's unjust enrichment award of $2,930,817.00 against SHC and $2,549,706.00 against PCS. These arguments include: (1) that Trinseo failed to provide any evidence of net profits because it did not deduct legitimate expenses as required by *Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71 (2020), (2) that Trinseo failed to provide evidence that would allow the jury to calculate or apportion damages attributable only to the four found trade secrets, and (3) that there was legally insufficient evidence to support the jury's finding that Steve Harper is personally responsible for the acts of SHC and PCS.

Without addressing the first and third objections listed above, the Court hereby grants the Harper Defendants' motion for judgment as a matter of law on the issue of apportionment. As with KBR, Trinseo alleged misappropriation of all ten trade secrets against the Harper Defendants; the jury found liability on four. Trinseo's all-or-nothing damages model failed to provide evidence that would allow a jury to apportion per trade secret or find that *all* of the Harper Defendants'

---

[33] Of course, this analysis is not the Court's ultimate/final holding. It is only relevant in the event that the Fifth Circuit determines that apportionment by trade secret is not required to support an unjust enrichment award in DTSA cases involving multiple alleged trade secrets.

24-20460.38686

unjust enrichment was attributable to only the four trade secrets and no more. Thus, for the same reasons that the Court vacated the jury's damages against KBR, it must do the same for those against the Harper Defendants. Moreover, no other evidence fills in the gaps created by Trinseo's damages figure as to the Harper Defendants, so the Court cannot make a contingent alternative finding against the Harper Defendants. [34]

### c.  KBR's Motion for New Trial or Remittitur (Doc. No. 350)

KBR filed a Motion for New Trial or Remittitur in the alternative to its Motion for Judgment as a Matter of Law. Since the Court granted KBR's JMOL motion above, and motion for new trial was filed in the alternative, the Court hereby denies this motion as moot. (Doc. No. 350).

Again, however, if the patent law concept of apportionment per trade secret does not apply to unjust enrichment awards for DTSA cases, the Court partially grants KBR's motion for remittitur and finds Trinseo entitled to $10.5 million in unjust enrichment damages.

### d.  Trinseo's Motion for Entry of Final Judgment (Doc. No. 328)

#### i.  KBR

Trinseo asks the Court to enter final judgment against KBR for the full amount of the jury's reasonable royalty award—$50 million—plus prejudgment interest. Though KBR objects to the reasonable royalty award for the reasons discussed above, the parties dedicated most of their briefing on the issue of prejudgment interest. Since the Court granted KBR's JMOL motion above, the Court need not address prejudgment interest. It hereby denies Trinseo's motion for entry of

---

[34] Pastore testified that he used *revenue* statements—not profit statements—to assess damages against the Harper Defendants. While Leathers filled in the evidentiary gaps as to KBR, he did not do the same for the Harper Defendants. There was no evidence by either side apportioning the Harper Defendants' profits from revenues or deducting expenses. This is one more reason why any unjust enrichment award would be guesswork.

24-20460.38687

final judgment as to KBR. (Doc. No. 328). The Court will enter a separate order that Trinseo take nothing from KBR.

### ii. Harper Defendants

Trinseo asks the Court to enter final judgment against the Harper personally for the full amount of the jury's unjust enrichment award of $2,930,817.00 against SHC and $2,549,706.00 against PCS without prejudgment interest. Since the Court granted the Harper Defendants' JMOL motion above, the Court hereby denies Trinseo's motion for entry of final judgment as to the Harper Defendants. (Doc. No. 328). The Court's separate judgment will indicate that Trinseo takes nothing from the Harper Defendants.

### iii. Davis Defendants

Trinseo concedes that it should take nothing from the Davis Defendants in the final judgment. The Court's separate judgment will indicate that Trinseo takes nothing from the Davis Defendants.

### e. *Trinseo's Motion for Entry of Permanent Injunction (Doc. No. 330)*

Trinseo asks this Court to enter a permanent injunction against *all* Defendants, which would require the destruction of all Trinseo Trade Secrets and prohibit the use of such trade secrets in the future. Trinseo further asks for the appointment of an independent monitor. The Defendants object, arguing that Trinseo is not entitled to a permanent injunction under Supreme Court precedent in *eBay*, and that even if it were, the proposed injunction is overly oppressive and broad. As an initial matter, the Court denies Trinseo's motion for permanent injunction as to the Davis Defendants. The jury found that the Davis Defendants had not misappropriated any Trinseo trade secrets. Without proving liability, Trinseo has not and cannot show that it is entitled to any relief against the Davis Defendants.

24-20460.38688

The DTSA expressly authorizes injunctive relief to "prevent any actual or threatened misappropriation" of trade secrets. 18 U.S.C. § 1836(b)(3)(A)(i). Injunctions are "common relief" in trade secret cases. *Lightning Box Games Pty, Ltd. v. Plaor, Inc.*, 2017 WL 7310782, at *9 (N.D. Cal. Dec. 29, 2017). The parties agree that Trinseo must "satisfy *eBay*'s four-part balancing test to obtain a permanent injunction." (Doc. No. 357 at 2) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Under that test, Trinseo must show: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.*

i. Irreparable Harm

The parties dispute whether Trinseo has shown it will be irreparably harmed absent a permanent injunction. According to Trinseo, there exists a presumption of irreparable harm in trade secret cases where the jury found liability. By contrast, Defendants argue that liability does not equate to irreparable harm; rather, *eBay* requires the plaintiff to make a specific showing of irreparable harm. Defendants contend that Trinseo cannot show irreparable harm given the fact that Trinseo exited the PC licensing business nearly ten years ago and that, after the trial, Trinseo announced that "Trinseo will no longer produce virgin PC and will obtain PC for its downstream businesses entirely via external purchases." (Doc. No. 357, Exhibit 1).

In its 2006 decision in *eBay*, the Supreme Court held "[a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." 547 U.S. at 391 (emphasis added). The Court vacated a permanent injunction awarded to a patent owner that succeeded on its claim for patent infringement even

44

though the Patent Act (like DTSA) expressly authorizes injunctive relief. *See id.* at 394; *see also id.* at 392 n.2. Patent Act § 283 provides that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by a patent, on such terms as the court deems reasonable." Similarly, the DTSA § 1836(b)(3)(A) provides that courts "may grant an injunction to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable." Thus, the Court cannot agree that the DTSA's authorization of injunctive relief means that Plaintiff has satisfied the irreparable harm requirement simply by proving liability.

Nevertheless, regardless of whether a presumption of irreparable harm exists, the Court finds that Trinseo has demonstrated that it will suffer harm by the continued use of its trade secrets. Though the damages have been vacated for legal reasons, there was certainly evidence that the trade secrets had value, even if Trinseo failed to pinpoint that value on a per-secret basis. While Trinseo may not license its PC technology anymore, it has demonstrated that the technology at issue still provides economic value to the company, whether it be for research and development, manufacturing, procurement, etc. *See* (Doc. No. 387 at 9–10).

### ii. Other Remedies Are Inadequate

Trinseo has likewise shown that other remedies are inadequate to compensate it for future harm. Courts have long recognized that the "purpose of a permanent injunction is to protect trade secret owners from the ongoing damages caused by future use of trade secrets." *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 609 (7th Cir. 2001). As explained by Judge Mazzant in *ResMan, LLC v. Karya Prop. Mgmt., LLC*, 2021 WL 3423345 (E.D. Tex. Aug. 5, 2021), an injunction "does not go back in time and correct, or appropriately compensate for, the wrong.

24-20460.38690

Rather, an injunction prevents harm from occurring in the future." *Id.* at *4; *see also, e.g., PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 163–64 (3d Cir. 2022).

There was plenty of evidence at trial that KBR intended to continue licensing its PCMax technology. For example, KBR's Francis Tsang testified that "KBR expected it would sell potentially five licenses for five plants in ten years." (Jan. 12 p.m. at 1962:1–4). It is clear that KBR's technology includes some reliance on Trinseo's intellectual property. Thus, Trinseo has proven that, in order to protect it from future harm, injunctive relief is required.

### iii.  Balance of Hardships and Public Interest

The third and fourth requirements of *eBay* are similarly met. As Trinseo described in its reply brief, "the hardship to Trinseo is precisely that discussed above: in the absence of an injunction, Trinseo is faced with the irreparable harm of threatened future misappropriation of its trade secrets for which there is no adequate remedy at law." (Doc. No. 387 at 13). As for the hardship to KBR and Harper, Defendants primarily argue that Trinseo's requested injunction "would cost KBR and Harper millions in compliance costs." (Doc. No. 357 at 12). The injury that the Defendants "might suffer if an injunction were imposed may be discounted by the fact that [KBR and Harper] brought that injury upon [themselves]." *NeighborFavor Inc. v. Hey Favor, Inc.*, 2023 WL 2550120, at *11 (W.D. Tex. Jan. 6, 2023) (internal quotation marks omitted). The jury found that KBR and the Harper Defendants had misappropriated four valuable Trinseo trade secrets under the DTSA. Any cost of complying with an injunction is outweighed by the policy concerns underlying the DTSA and the harm endured, and likely to be endured, by Trinseo. Moreover, the Court has not included the vast majority of the most costly compliance measures. To the extent either defendant finds that there are costs inherent in not using Trinseo's trade secrets,

24-20460.38691

those costs are the very expenses that the law expects those who misappropriate trade secret to absorb.

Finally, a permanent injunction against further misappropriation of trade secrets serves the public interest because "legal protections afforded to trade secrets protect legitimate competition, encourage investment in business and innovation, and ultimately protect jobs." *CTCOA, LLC v. NSL Holdings, Inc.*, 2022 WL 19978294, at \*2 (S.D. Tex. Sept. 30, 2022) (Hanen, J.). Therefore, the Court concludes that Trinseo, as a prevailing party in its DTSA case, has shown it is entitled to injunctive relief.

iv.  Appropriate Breadth

Having found Trinseo entitled to a permanent injunction under *eBay*, the Court must determine the appropriate scope of the injunction. As a threshold matter, the Court does not find the appointment of an independent monitor necessary. The Court can enforce its own orders. The jury expressly found that the misappropriation was not willful or malicious and, with that finding, there is no reason to believe that KBR or Harper would willfully disregard this Court's orders after four years of litigation without an independent monitor.

In paragraph 1.f of its proposed "Permanent Injunction," Trinseo defines "**Trinseo Trade Secrets**" as "the four trade secrets found by the Jury in its January 26, 2024 verdict (Doc. No. 321) to be Trinseo's trade secrets, including the Polycarbonate Plant Process Control Strategy and Control Algorithms, the Polycarbonate Plant Phosgene Reactor Design and associated Pressure Vessel Containment Scheme, the Polyearbonate Plant Continuous Plug Flow Oligomerization Reactor Design Inside Pressurized Vessel Containment (with static mixer design), and the Polycarbonate Plant Steam Devolatilization Process." (Doc. No. 331-5 at 2).

47

The Court limits its injunction to these four Trinseo Trade Secrets given that Trinseo prevailed on the merits of these four trade secrets. The injunction is further restricted to any future use of these four trade secrets. The Court will enter a separate order of injunction in accordance with this ruling.

## V.     Conclusion

Upon considering the parties' respective post-trial motions and for the reasons above, the Court hereby **AFFIRMS** the jury's finding of liability as to KBR and the Harper Defendants, **VACATES** the jury's award of $50,000,000.00 in reasonable royalty damages against KBR, **VACATES** the jury's award of $21,206,132.00 in unjust enrichment damages against KBR,[35] and **VACATES** the jury's award of $5,480,523.00 against the Harper Defendants. The Court will, by separate order, enter a take-nothing judgment as to KBR and the Harper Defendants. The Court, in accordance with the jury's verdict, also finds Trinseo takes nothing as to the Davis Defendants. The Court will enter a separate take-nothing Final Judgment and will issue a Permanent Injunction.

In sum, KBR's JMOL Motion (Doc. No. 326) is granted. The Harper Defendant's JMOL Motion (Doc. No. 333) is granted. KBR's Motion for New Trial or Remittitur (Doc. No. 350) is contingently granted in part and denied in part. Trinseo's Motion for Entry of Final Judgment (Doc. No. 328) is denied. Trinseo's Motion for Permanent Injunction (Doc. No. 330) is granted. All other pending motions are hereby denied as moot.

SIGNED at this $11^{H}$ day of September, 2024.

Andrew S. Hanen
United States District Judge

---

[35] Should the Fifth Circuit decide that apportionment on a per-trade secret basis is not required to support unjust enrichment damages in DTSA cases involving partial liability and multiple alleged trade secrets, the Court contingently finds Trinseo entitled to $10.5 million in unjust enrichment damages against KBR.

24-20460.38693

Tab 5

United States District Court
Southern District of Texas

**ENTERED**

September 11, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TRINSEO, S.A., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-0478 |
| | § | |
| STEPHEN HARPER, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## FINAL JUDGMENT

The Court's rulings on all post-verdict motions are set out in an accompanying Order. For

the reasons set forth in the Court's Order, with the exception of the relief granted by this Court by

the issuance of a Permanent Injunction, Trinseo Europe GmbH shall take nothing from any

defendant, including Kellogg Brown & Root, LLC, Stephen Harper, Steve Harper Consulting, Inc.,

Polycarbonate Consulting Services, Inc., William Davis, and Polycarbonate Resins Consulting,

LLC. Each party must bear their own fees and costs.

SIGNED at this 11ᵗʰ day of September, 2024.

Andrew S. Hanen
United States District Judge

Tab 6

**In the United States District Court**
**for the Southern District of Texas**
**Houston Division**

| | | |
|---|---|---|
| **Trinseo Europe GmbH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-00478** |
| | § | *consolidated with* |
| **Stephen Harper (a/k/a Steve Harper),** | § | **Civil Action No. 4:20-cv-04051** |
| **Steve Harper Consulting, Inc. and** | § | |
| **Polycarbonate Consulting Services, Inc.,** | § | |
| **Kellogg Brown & Root, LLC, William** | § | |
| **"Bill" Davis and Polycarbonate Resins** | § | |
| **Consultants, LLC,** | § | |
| | § | |
| *Defendants.* | § | |

---

### Plaintiff's Notice of Appeal

---

Plaintiff Trinseo Europe GmbH appeals to the United States Court of Appeals for the Fifth Circuit from the final judgment entered on September 11, 2024 [ECF No. 412] and, to the extent necessary, the Permanent Injunction entered the same day [ECF No. 411].

24-20460.8295

DATED:  October 11, 2024                    Respectfully submitted,

**HICKS THOMAS LLP**
A REGISTERED LIMITED LIABILITY PARTNERSHIP

By: _____

**Stewart Hoffer**
Texas Bar No. 00790891
SDTX No. 20123
shoffer@hicks-thomas.com
**Eric Grant**
Texas Bar No. 12489510
SDTX No. 12676
grant@hicks-thomas.com
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 547-9100
Facsimile: (713) 547-9150

**Attorneys in Charge for Plaintiff
Trinseo Europe GmbH**

**Certificate of Service**

I hereby certify that on October 11, 2024, a true and correct copy of this document was served on the parties listed below electronically via the Court's CM/ECF noticing system and/or via email pursuant to the agreement of the parties.

Benjamin Foster
ben@fosteryarborough.com
Alisa Lipski
alisa@fosteryarborough.com
FOSTER YARBOROUGH, LLP
917 Franklin Street, Suite 220
Houston, Texas 77002

Geoffrey L. Harrison
gharrison@susmangodfrey.com
Matthew Behncke
mbehncke@susmangodfrey.com
Katherine Drews
kdrews@susmangodfrey.com
Abigail Noebels
anoebels@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Ste. 5100
Houston, Texas 77002

Matt Allen
Allen & Nunnally LLP
matt.allen@allen-nunnally.com
3701 Kirby Drive, Suite 1212
Houston, Texas 77098

_____
**Stewart Hoffer**

Tab 7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Trinseo Europe GmbH, | § | |
| Plaintiff, | § | |
| v. | § | |
| Stephen Harper (a/k/a Steve Harper), | § | |
| Steve Harper Consulting, Inc. and | § | |
| Polycarbonate Consulting Services, Inc., | § | |
| Defendants. | § | |
| | § | Civil Action No. 4:20-cv-478 |
| | § | Consolidated with |
| Trinseo Europe GmbH, | § | Civil Action No. 4:20-cv-4051 |
| Plaintiff, | § | |
| v. | § | |
| Kellogg Brown & Root, LLC, | § | |
| William Davis and Polycarbonate | § | |
| Resins Consulting, LLC, | § | |
| Defendants. | § | |

<u>Defendant Kellogg Brown & Root, LLC's Notice of Cross Appeal</u>

Notice is given that Kellogg Brown & Root, LLC, Defendant in the above-named cases,

appeals to the United States Court of Appeals for the Fifth Circuit from the Permanent Injunction

(Dkt. 411) and Final Judgment (Dkt. 412) entered in this action on September 11, 2024.

If necessary to state for the purposes of appellate jurisdiction, Defendant Kellogg Brown

& Root, LLC further appeals to the United States Court of Appeals for the Fifth Circuit from all

orders, opinions, adjudications, rulings, findings, and conclusions that preceded the Permanent

Injunction (Dkt. 411) and Final Judgment (Dkt. 412).

Dated: October 18, 2024

Respectfully submitted,

 /s/ *Geoffrey L. Harrison*
Geoffrey L. Harrison
Attorney-in-charge
Texas State Bar No. 00785947
S.D. Admissions No. 16690
gharrison@susmangodfrey.com
Matthew Behncke
Texas State Bar No. 24069355
S.D. Admissions No. 1121174
mbehncke@susmangodfrey.com
Abigail C. Noebels
Texas State Bar No. 24083578
S.D. Admissions No. 2209468
anoebels@susmangodfrey.com
Katherine E. Drews
Texas State Bar No. 24122052
S.D. Admissions No. 3748781
kdrews@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7807
Facsimile: (713) 654-6666

/s/ *Warren W. Harris*
Warren W. Harris
Texas State Bar No. 09108080
S.D. Admissions No. 11318
warren.harris@bracewell.com
Walter A. Simons
Texas State Bar No. 24098429
S.D. Admissions No. 3206734
walter.simons@bracewell.com
BRACEWELL LLP
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (800) 404-3970

*Counsel for Kellogg Brown & Root, LLC*

<u>Certificate of Service</u>

I certify that on October 18, 2024, this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

/s/ *Geoffrey L. Harrison*
Geoffrey L. Harrison

24-20460.8309

Tab 8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Trinseo Europe GmbH, | § | |
| Plaintiff, | § | |
| v. | § | |
| Stephen Harper (a/k/a Steve Harper), | § | |
| Steve Harper Consulting, Inc. and | § | |
| Polycarbonate Consulting Services, Inc., | § | |
| Defendants. | § | |
| | § | Civil Action No. 4:20-cv-478 |
| | § | Consolidated with |
| Trinseo Europe GmbH, | § | Civil Action No. 4:20-cv-4051 |
| Plaintiff, | § | |
| v. | § | |
| Kellogg Brown & Root, LLC, | § | |
| William Davis and Polycarbonate | § | |
| Resins Consulting, LLC, | § | |
| Defendants. | § | |

**Notice of Cross Appeal**

Defendants Stephen Harper (a/k/a Steve Harper), Steve Harper Consulting, Inc., and Polycarbonate Consulting Services, Inc., ("Harper Defendants"), Defendants in the above named cases, appeals to the United States Court of Appeals for the Fifth Circuit from the Permanent Injunction entered September 11, 2024 [ECF No. 411] and the final judgment entered on September 11, 2024 [ECF No. 412].

If necessary to state for the purposes of appellate jurisdiction, the Harper Defendants further appeals to the United States Court of Appeals for the Fifth Circuit from all orders, opinions, adjudications, rulings, findings and conclusions that proceeded the Permanent Injunction [ECF No. 411] and Final Judgment [ECF No. 412].

Dated: October 18, 2024

Respectfully submitted,

*/s/ Benjamin F. Foster*

Benjamin F. Foster
Texas State Bar No. 24080898
ben@fosteryarborough.com
Alisa A. Lipski
Texas State Bar No. 24041345
alisa@fosteryarborough.com
FOSTER YARBOROUGH, PLLC
917 Franklin, Suite 220
Houston, Texas 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202

*Counsel for Stephen Harper (a/k/a Steve Harper), Steve Harper Consulting, Inc. and Polycarbonate Consulting Services, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 18, 2024, this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Benjamin F. Foster*

Benjamin F. Foster

1

24-20460.8311

Tab 9

United States District Court
Southern District of Texas
**ENTERED**
November 13, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TRINSEO, S.A., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-0478 |
| | § | |
| STEPHEN HARPER, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**<u>ORDER</u>**

The Court hereby denies the Motion for a New Trial on Damages filed by Trinseo Europe GmbH ("Plaintiff"). (Doc. No. 416). Additionally, based on the limited information provided in Plaintiff's motion, the Court denies Plaintiff's Motion to Modify the Protective Order. (Doc. No. 417). While this Court understands the reluctance to share specifics concerning the project in which Mr. Duane desires to participate, that lack of information undermines the Court's ability to determine how and if Mr. Duane's consulting work affects the business of Defendants Kellogg Brown & Root, LLC ("KBR") or Steve Harper, Steve Harper Consulting, Inc., or Polycarbonate Consulting Services, Inc. (collectively, the "Harper Defendants"). That being the case, the Court finds that the most prudent is to maintain the status quo.

Finally, Plaintiff has filed a Motion to Amend the Permanent Injunction. (Doc. No. 415). The Court grants this motion in part and denies in part. The portions of this motion being denied are being denied without prejudice. If it so desires, Plaintiff may re-urge these portions after all appeals have been exhausted.

An Amended Permanent Injunction is being issued that incorporates the portions of the motion that the Court is granting. For the record, the Court grants Plaintiff's requested modifications to paragraphs 1(f), 2(a), 2(b), and portions of its requests concerning paragraphs

3(d) and 4(a). The amended injunction retains the language requiring KBR to destroy or delete certain documents, data, and information. Nevertheless, pursuant to this Court's order staying that portion of the original permanent injunction, (Doc. No. 421), that portion of the amended injunction is likewise stayed until a further order of this Court.

SIGNED at this 13th day of November 2024.

Andrew S. Hanen
United States District Judge

2

24-20460.8423

Tab 10

United States District Court
Southern District of Texas

**ENTERED**

November 13, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TRINSEO, S.A., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-0478 |
| | § | |
| STEPHEN HARPER, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

### AMENDED PERMANENT INJUNCTION

On the basis of the record and the jury's verdict, the Court finds that the conduct of Defendants Kellogg, Brown & Root, LLC ("KBR") and Stephen Harper, Steve Harper Consultants, Inc. and Polycarbonate Consulting Services, Inc. (collectively, the "Harper Defendants") conduct has caused, and will continue to cause, Trinseo Europe GmbH ("Trinseo") irreparable injury for which there is no adequate remedy at law and that a Permanent Injunction is necessary to address future harm to Trinseo.

Pursuant to the Court's inherent equitable powers, and the authority provided by the Defend Trade Secrets Act, 18 U.S.C. § 1836(b), the All Writs Act, 28 U.S.C. § 1651, and Federal Rule of Civil Procedure 65, there being no further issues of fact for the Court to resolve, and upon balancing the hardships on the parties and also taking into account the public interest, the Court ORDERS that the Enjoined Defendants are PERMANENTLY ENJOINED as set forth below.

**1. Definitions.**          The following definitions apply for purposes of this Permanent Injunction:

a.          "Trinseo" means Trinseo Europe GmbH.

b.          "KBR" means Defendant Kellogg, Brown & Root, LLC.

c.          The "Harper Defendants" means Defendants Stephen Harper, Steve Harper Consultants, Inc. and Polycarbonate Consulting Services, Inc.

d.          "Enjoined Defendants" means KBR and the Harper Defendants and any of their principals, members, managers, shareholders, owners, officers, directors, agents, servants, and employees. This excludes William B. Davis and Polycarbonate Resins Consulting, LLC.

e.          The "Trinseo Trade Secrets" means the four trade secrets found by the Jury in its January 26, 2024 verdict, (Doc. No. 321), to be Trinseo's trade secrets, including the Polycarbonate Plant Process Control Strategy and Control Algorithms, the Polycarbonate Plant Phosgene Reactor Design and associated Pressure Vessel Containment Scheme, the Polycarbonate Plant Continuous Plug Flow Oligomerization Reactor Design Inside Pressurized Vessel Containment (with static mixer design), and the Polycarbonate Plant Steam Devolatilization Process.

f.          The "Prohibited Information" means all documents, tangible items (including equipment, models, fixtures), or electronically stored information in the Enjoined Defendants' possession, custody, or control that describes, comprises, embodies, or is derived from the Trinseo Trade Secrets.

g.          "Effective Date" means the date this Permanent Injunction is signed and entered or, if enforcement or implementation of this Permanent Injunction or any term or terms thereof is

24-20460.8425

stayed by this Court, any Court of Appeals, or the United States Supreme Court, the date such stay is lifted.

**2.     Use of Trinseo Trade Secrets.**

a.     The Enjoined Defendants are enjoined in perpetuity from in any way acquiring, accessing, viewing, disclosing, transferring, disseminating, copying, storing, using, or exploiting the Prohibited Information without Trinseo's express prior written consent and/or except as expressly provided herein to facilitate compliance with this Permanent Injunction. This includes the current and future use of the four Trinseo Trade Secrets in any PCMax package or any similar KBR/Harper polycarbonate plant design.

b.     The Enjoined Defendants are also hereby ordered to delete and/or destroy all materials in their possession which encompass, replicate, are derived from, or describe any of the four Trinseo Trade Secrets as soon as reasonably feasible.

**3.     Information and Communication Requirements.**

a.     Within five business days of the Effective Date, the Enjoined Defendants shall designate one individual to serve as the point of contact for the Court or its designee. Each Enjoined Defendant shall authorize their designated individual to take all actions necessary to implement and comply with this Permanent Injunction on behalf of the Enjoined Defendant for which the individual is designated.

b.     Within thirty business days of the Effective Date, the Enjoined Defendants shall each provide to this Court a "Notice of Compliance" containing the steps that they have taken to ensure compliance with this Permanent Injunction, specifically Paragraphs 2(a) and 2(b).

24-20460.8426

c.     The Enjoined Defendants may access and view Prohibited Information already in their possession, custody, or control solely to the extent necessary to comply with the requirements of this Permanent Injunction.

d.     The Enjoined Defendants shall, no later than ten business days from the Effective Date, take commercially reasonable measures to convince any third parties to whom the Enjoined Defendants disclosed Prohibited Information to destroy any Prohibited Information that embodies the Trinseo Trade Secrets. Specifically, the Harper Defendants shall provide written notice to any consultant employed by the Harper Defendants, Mustang Engineering, Inc., Prime 3 Labs, LLC, Lucky Star, or Primestar Technologies (or any predecessor or successor entities of Mustang, Prime 3, Lucky Star, and Primestar) and Luxi Chemical Group Company. The Enjoined Defendants shall, no later than ten business days from transmission, serve upon Trinseo's counsel a copy of each such notice.

**4.     Notice of Permanent Injunction.**

a.     Immediately upon the Effective Date, in addition to and notwithstanding the requirements of the notices described above in Paragraph 3(d), the Enjoined Defendants shall undertake commercially reasonable steps to communicate the terms of this Permanent Injunction to their employees and agents, and to their vendors or licensees who are employed in the PC sector and with whom they are currently doing business, to ensure immediate compliance with this Permanent Injunction, including the destruction of the Prohibited Information in their possession and the communication of the terms of the Permanent Injunction to any third parties to whom the Trinseo Trade Secrets were or have been disclosed.

b.     The Enjoined Defendants must fully comply with the notice requirements of Paragraphs 3(d) and 4(a) within thirty business days from the Effective Date, and the Enjoined

24-20460.8427

Defendants shall inform the Court of their compliance with these sections in their Notice of Compliance. Specifically, the Enjoined Defendants (either individually or through an officer thereof) shall attest under penalty of perjury that each of the Enjoined Defendant has complied with these notice requirements. This Notice of Compliance shall be filed (with copies to counsel for Trinseo) no later than thirty business days from the Effective Date.

  c.  If the Notice of Compliance is not filed within thirty business days of the Effective Date, Trinseo may request an order from the Court to require any noncompliant Enjoined Defendant to show cause as to why they should not be held in contempt of this Permanent Injunction. The Enjoined Defendants shall bear all costs, fees, and expenses of such proceedings, including all costs, attorneys' and expert witness fees, and expenses that Trinseo may incur to seek or obtain such relief.

  d.  Each of the Enjoined Defendants shall provide such other notices or communications as the Court may deem necessary.

  **5.**  **Monitoring and Certification.**

  a.  On an annual basis for five years from the Effective Date, KBR shall undertake commercially reasonable efforts to prevent or uncover any potential violation of KBR's non-disclosure agreements with its licensees, suppliers, vendors, or contractors to whom KBR disclosed or provided access to documents or data that embodies, contains, comprises, or describes the Trinseo Trade Secrets. If KBR discerns any violations, KBR shall report to Trinseo any perceived violations no later than ten business days from the date KBR discerns any perceived violations. In addition, KBR shall (i) if necessary, join Trinseo as a party to any litigation/dispute resolution proceeding necessary to enforce compliance; or (b) assign Trinseo the right, but not necessarily the obligation, to enforce compliance with KBR's non-disclosure agreements. KBR

24-20460.8428

shall bear all costs, fees, and expenses of such proceedings, including all costs, attorneys' and expert witness fees, and expenses that Trinseo may incur by virtue of such proceedings.

b.      The Enjoined Defendants shall jointly and severally bear all costs, fees, and expenses of the Court or any vendor or agent the Court believes necessary to monitor the Enjoined Defendants' compliance with the provisions of this Permanent Injunction.

### 6.      Violations and Non-Compliance.

a.      If at any time the Court or any party discovers a violation of this Permanent Injunction any party may file with the Court a Notice of Non-Compliance specifying the violation.

b.      If, after the expiration of ten business days, the noncompliant conduct has not been cured, Trinseo may request an order from the Court to require any noncompliant Enjoined Defendant to show cause as to why they should not be held in contempt of this Permanent Injunction. The Enjoined Defendants shall hear all costs, fees, and expenses of such proceedings, including all costs, attorneys' and expert witness fees, and expenses that Trinseo may incur to seek or obtain such relief.

c.      Any violation of, or non-compliance with, the terms of this Permanent Injunction may he redressed by one or more of the following: (i) contempt proceedings, which may result in fines against the Enjoined Defendants payable to Trinseo; (ii) extending the time applicable to the term(s) of the Permanent Injunction with which the Enjoined Defendants failed to comply; (iii) modifying the terms of this Permanent Injunction, including by imposing additional constraints, monitoring requirements, or certification requirements; or (iv) any other measure the Court deems just and proper.

### 7.      The Enjoined Defendants shall take no action to circumvent the requirements of this Permanent Injunction.

24-20460.8429

**VIOLATION OF THIS PERMANENT INJUNCTION SHALL CONSTITUTE CONTEMPT OF COURT**, which will entitle Trinseo to seek, and the Court to grant, any and all appropriate relief. The Enjoined Defendants shall be liable for all expert witness and attorneys' fees, costs, and expenses incurred to enforce this Permanent Injunction, including all costs, attorneys' and expert witness fees, and expenses of Trinseo. All writs and processes for the enforcement of this Permanent Injunction may issue as necessary. The Court shall retain jurisdiction for enforcement of this Permanent Injunction.

**IT IS SO ORDERED.**

SIGNED at this _13_ day of November 2024.

Andrew S. Hanen
United States District Judge

7

24-20460.8430

Tab 11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Trinseo Europe GmbH, §<br>　　　Plaintiff, §<br>§<br>v. §<br>Stephen Harper (a/k/a Steve Harper), §<br>Steve Harper Consulting, Inc. and §<br>Polycarbonate Consulting Services, Inc., §<br>　　　Defendants. §<br>§<br>§<br>Trinseo Europe GmbH, §<br>　　　Plaintiff, §<br>§<br>v. §<br>Kellogg Brown & Root, LLC, §<br>William Davis and Polycarbonate §<br>Resins Consulting, LLC, §<br>　　　Defendants. § | Civil Action No. 4:20-cv-478<br>Consolidated with<br>Civil Action No. 4:20-cv-4051 |

<u>Defendant Kellogg Brown & Root, LLC's Amended Notice of Cross Appeal</u>

Notice is given that Kellogg Brown & Root, LLC, Defendant in the above-named cases, appeals to the United States Court of Appeals for the Fifth Circuit from the Sealed Order on the parties' post-trial motions (Dkt. 410), the Permanent Injunction (Dkt. 411), and the Final Judgment (Dkt. 412), all entered in this action on September 11, 2024.  Notice is given that Defendant Kellogg Brown & Root, LLC also appeals to the United States Court of Appeals for the Fifth Circuit from the Order granting in part plaintiff's Motion to Amend the Permanent Injunction (Dkt. 450) and the Amended Permanent Injunction (Dkt. 451), both entered in this action on November 13, 2024.

If necessary to state for the purposes of appellate jurisdiction, Defendant Kellogg Brown & Root, LLC further appeals to the United States Court of Appeals for the Fifth Circuit from all orders, opinions, adjudications, rulings, findings, and conclusions that preceded the Sealed Order (Dkt. 410), Permanent Injunction (Dkt. 411), Final Judgment (Dkt. 412), Order (Dkt. 450), and Amended Permanent Injunction (Dkt. 451).

Dated: November 22, 2024

Respectfully submitted,

 /s/ *Geoffrey L. Harrison*
Geoffrey L. Harrison
Attorney-in-charge
Texas State Bar No. 00785947
S.D. Admissions No. 16690
gharrison@susmangodfrey.com
Matthew Behncke
Texas State Bar No. 24069355
S.D. Admissions No. 1121174
mbehncke@susmangodfrey.com
Abigail C. Noebels
Texas State Bar No. 24083578
S.D. Admissions No. 2209468
anoebels@susmangodfrey.com
Katherine E. Drews
Texas State Bar No. 24122052
S.D. Admissions No. 3748781
kdrews@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7807
Facsimile: (713) 654-6666

/s/ *Warren W. Harris*
Warren W. Harris
Texas State Bar No. 09108080
S.D. Admissions No. 11318
warren.harris@bracewell.com
Walter A. Simons
Texas State Bar No. 24098429
S.D. Admissions No. 3206734
walter.simons@bracewell.com
BRACEWELL LLP
711 Louisiana, Suite 2300
Houston, Texas  77002
Telephone:  (713) 223-2300
Facsimile:   (800) 404-3970

*Counsel for Kellogg Brown & Root, LLC*

<u>Certificate of Service</u>

     I certify that on November 22, 2024, this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

<u>/s/ *Warren W. Harris*</u>
Warren W. Harris

Tab 12

**In the United States District Court
for the Southern District of Texas
Houston Division**

| | | |
|---|---|---|
| **Trinseo Europe GmbH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-00478** |
| | § | *consolidated with* |
| **Stephen Harper (a/k/a Steve Harper),** | § | **Civil Action No. 4:20-cv-04051** |
| **Steve Harper Consulting, Inc. and** | § | |
| **Polycarbonate Consulting Services, Inc.,** | § | |
| **Kellogg Brown & Root, LLC, William** | § | |
| **"Bill" Davis and Polycarbonate Resins** | § | |
| **Consultants, LLC,** | § | |
| | § | |
| *Defendants.* | § | |

---

## Plaintiff's Amended Notice of Appeal

---

Plaintiff Trinseo Europe GmbH appeals to the United States Court of Appeals for the Fifth Circuit from the final judgment entered on September 11, 2024 [ECF No. 412] and, to the extent necessary, the Permanent Injunction entered the same day [ECF No. 411].

Plaintiff Trinseo Europe GmbH also appeals to the United States Court of Appeals for the Fifth Circuit from the Order entered on November 13, 2024 denying Trinseo's motion for a new trial on damages [ECF No. 450] and from the Amended Permanent Injunction entered the same day [ECF No. 451].

DATED:  November 22, 2024                    Respectfully submitted,

**HICKS THOMAS LLP**
A REGISTERED LIMITED LIABILITY PARTNERSHIP

By: _____

**Stewart Hoffer**
Texas Bar No. 00790891
SDTX No. 20123
shoffer@hicks-thomas.com
**Eric Grant**
Texas Bar No. 12489510
SDTX No. 12676
grant@hicks-thomas.com
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 547-9100
Facsimile: (713) 547-9150

**Attorneys in Charge for Plaintiff
Trinseo Europe GmbH**

**Certificate of Service**

I hereby certify that on November 22, 2024, a true and correct copy of this document was served on the parties listed below electronically via the Court's CM/ECF noticing system and/or via email pursuant to the agreement of the parties.

| | | |
|---|---|---|
| Benjamin Foster | Geoffrey L. Harrison | Matt Allen |
| ben@fosteryarborough.com | gharrison@susmangodfrey.com | Allen & Nunnally LLP |
| Alisa Lipski | Matthew Behncke | matt.allen@allen-nunnally.com |
| alisa@fosteryarborough.com | mbehncke@susmangodfrey.com | 3701 Kirby Drive, Suite 1212 |
| FOSTER YARBOROUGH, LLP | Katherine Drews | Houston, Texas 77098 |
| 917 Franklin Street, Suite 220 | kdrews@susmangodfrey.com | |
| Houston, Texas 77002 | Abigail Noebels | |
| | anoebels@susmangodfrey.com | |
| | SUSMAN GODFREY L.L.P. | |
| | 1000 Louisiana Street, Ste. 5100 | |
| | Houston, Texas 77002 | |

_____
**Stewart Hoffer**

Tab 13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Trinseo Europe GmbH, | § |
|       Plaintiff, | § |
| | § |
| v. | § |
| Stephen Harper (a/k/a Steve Harper), | § |
| Steve Harper Consulting, Inc. and | § |
| Polycarbonate Consulting Services, Inc., | § |
|       Defendants. | § |
| | § |
| | §    Civil Action No. 4:20-cv-478 |
| | §    Consolidated with |
|  Trinseo Europe GmbH, | §    Civil Action No. 4:20-cv-4051 |
|       Plaintiff, | § |
| | § |
| v. | § |
| Kellogg Brown & Root, LLC, | § |
| William Davis and Polycarbonate | § |
| Resins Consulting, LLC, | § |
|       Defendants. | § |

**<u>Harper Defendants' Amended Notice of Cross Appeal</u>**

Defendants Stephen Harper (a/k/a Steve Harper), Steve Harper Consulting, Inc., and Polycarbonate Consulting Services, Inc., ("Harper Defendants"), Defendants in the above named cases, appeals to the United States Court of Appeals for the Fifth Circuit from the Sealed Order on the parties' post-trial motions [ECF No. 410], the Permanent Injunction entered September 11, 2024 [ECF No. 411] and the final judgment entered on September 11, 2024 [ECF No. 412]. Notice is given that the Harper Defendants also appeals to the United States Court of Appeals for the Fifth Circuit from the Order granting in part Plaintiff's Motion to Amend the Permanent Injunction [ECF No. 450] and the Amended Permanent Injunction [ECF No. 451] both entered in this action on November 13, 2024.

If necessary to state for the purposes of appellate jurisdiction, the Harper Defendants further appeals to the United States Court of Appeals for the Fifth Circuit from all orders, opinions, adjudications, rulings, findings and conclusions that proceeded the Sealed Order [ECF No. 410],

Permanent Injunction [ECF No. 411], Final Judgment [ECF No. 412], Order Granting in Part and Denying in Part Plaintiff's Motion to Amend the permanent Injunction [ECF No. 450] and Amended Permanent Injunction [ECF 451].

Dated:  December 5, 2024                    Respectfully submitted,

                                            /s/ Benjamin F. Foster
                                            Benjamin F. Foster
                                            Texas State Bar No. 24080898
                                            ben@fosteryarborough.com
                                            Alisa A. Lipski
                                            Texas State Bar No. 24041345
                                            alisa@fosteryarborough.com
                                            FOSTER YARBOROUGH, PLLC
                                            917 Franklin, Suite 220
                                            Houston, Texas 77002
                                            Telephone: (713) 331-5254
                                            Facsimile: (713) 513-5202

                                            *Counsel for Stephen Harper (a/k/a Steve Harper), Steve Harper Consulting, Inc. and Polycarbonate Consulting Services, Inc.*

### CERTIFICATE OF SERVICE

I certify that on December 5, 2024, this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

                                            /s/ Benjamin F. Foster
                                            Benjamin F. Foster